IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS (SHERMAN)

QUINTEL TECHNOLOGY LTD.                                                    PLAINTIFF

v.                                              CIVIL ACTION NO. 4:15-cv-00307-GHD-CMC

HUAWEI TECHNOLOGIES USA, INC.;
FUTUREWEI TECHNOLOGIES, INC.;
HUAWEI TECHNOLOGIES CO., LTD.; and
ZHENGXIANG MA                                                              DEFENDANTS

## MEMORANDUM OPINION GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

Presently before the Court is a motion to dismiss [25] brought pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure filed by Defendants Huawei Technologies USA, Inc.; FutureWei Technologies, Inc.; Huawei Technologies Co., Ltd.; and Zhengziang Ma (collectively, "Defendants"). Plaintiff Quintel Technology Ltd. ("Quintel") has filed a response, Defendants have filed a reply, and Quintel has filed a sur-reply. The matter is ripe for review. Upon due consideration, the Court finds that the motion to dismiss [25] should be granted in part and denied in part, as set forth below.

## I. Factual and Procedural Background

Quintel asserts eight counts against Defendants in its first amended complaint [20], which is the subject of the present motion to dismiss [25] before the Court: (I) breach of contract, (II) misappropriation of trade secrets, (III) unfair competition by misappropriation, (IV) common law fraud and fraud in the inducement, (V) promissory estoppel, (VI) unjust enrichment, (VII) accounting, and (VIII) correction of patent inventorship—35 U.S.C. § 256.

Quintel alleges the following facts. Quintel "designs, develops, and delivers advanced high-efficiency, high-performance antenna solution for mobile operators to improve their

delivery of wireless network services" and "has developed cutting-edge, proprietary antenna technology to better serve wireless network operators and users." Pl.'s Compl. [20] ¶ 10. Huawei[1] is "a telecommunications equipment maker and, among other things, manufactures base stations for wireless networks." *Id.* ¶ 11. David Barker, the chief technology officer and an employee of Quintel, "conceived of a concept to improve reception between an antenna providing cellular telephone and/or data services, and a mobile receiving telephone and/or data services from the antenna"; this concept was and is referred to as the "Per User Tilt Concept." *Id.* ¶¶ 12–13. Due to "potential synergies in their respective business models, Quintel and Huawei explored whether they might partner together to service mobile operators in the wireless network industry." *Id.* ¶ 14. Quintel advised Huawei at the outset of their discussions that "the parties must execute a non-disclosure agreement ('NDA') in advance of the meeting and sent a draft NDA to Huawei." *Id.* ¶ 16. The parties subsequently executed a NDA, which is attached to the first amended complaint and referenced therein, and provides in part that "the recipient of confidential information agrees to accept such information 'solely for use in connection with Recipient's business discussions with' the disclosing party concerning potential areas of cooperation.' " *Id.* ¶ 22 (quoting NDA [20-1] ¶ 2). Quintel alleges that after entering into the NDA, Quintel began to share confidential and proprietary information and trade secrets, including its proprietary antenna technology, with Defendants. *Id.* ¶¶ 20, 30–45. In particular, Quintel showed Defendants how the "Per User Tilt Concept" works and provided some additional confidential and proprietary information regarding Quintel's antenna technology, including information about Quintel's patents—all information Quintel contends was information protected under the NDA. Quintel alleges that the parties "ultimately could not

---

[1] Throughout the first amended complaint [20], Quintel refers to Defendants Huawei Technologies USA, Inc. and Huawei Technologies Co., Ltd. collectively as "Huawei." The Court will do the same throughout this memorandum opinion.

agree on final terms to any business or partnering relationship" and that "despite its professed interest, Huawei never intended to enter into a partnering relationship with Quintel." *Id.* ¶¶ 44–46.

Quintel next alleges that "[a]lthough Huawei had concealed it, Quintel recently learned that Defendant FutureWei Technologies, Inc. ['FutureWei'] filed a provisional patent application with the United States Patent and Trademark Office ('USPTO') . . . on or about October 30, 2009" wherein FutureWei "sought to establish priority for patent protection of an invention that is based on Quintel's confidential and proprietary antenna technology that Quintel had shared under the terms of the . . . NDA," including "a confidential Quintel slide that Quintel had provided to Dr. [Zhengxiang] Ma ['Dr. Ma']. . . ." *Id.* ¶ 49. Quintel additionally alleges that "Dr. Ma is listed as the sole inventor on the provisional patent application." *Id.* Quintel alleges that these actions came to light on March 16, 2015, when the European Patent Office rejected a patent application submitted by Quintel, citing the prior publication of FutureWei's United States application that resulted in the '647 Patent as prior art. *Id.* ¶ 54. Quintel maintains that the information was "fraudulently concealed" prior to that date, "in part by [Defendants'] continuing to feign interest in a partnership agreement." *Id.* ¶ 48.

On December 30, 2015, Defendants filed the present motion to dismiss [25] the first amended complaint. Subsequently, Quintel filed a response, Defendants filed a reply, and Quintel filed a sur-reply. The matter is now ripe for review.

## II.    Discussion and Analysis

Defendants argue the case should be dismissed on the following grounds: (1) the Court lacks personal jurisdiction over Dr. Ma; (2) six of the eight counts are time barred, specifically, Quintel's counts for breach of contract, misappropriation of trade secrets, unfair competition by

misappropriation, common law fraud and fraud in the inducement, promissory estoppel, and unjust enrichment; and (3) Quintel fails to state a claim upon which relief can be granted on all claims except the breach of contract claim against Huawei. Quintel maintains that all claims asserted in its first amended complaint are timely and sufficiently pled, and that the Court has personal jurisdiction over Dr. Ma or should allow jurisdictional discovery on the issue prior to deciding otherwise. The Court will address first the Rule 12(b)(2) challenge and then the Rule 12(b)(6) challenge.

## A. Rule 12(b)(2) – Personal Jurisdiction over Dr. Ma

Defendants move the Court under Rule 12(b)(2) to dismiss the claims against Dr. Ma for lack of personal jurisdiction. Based on the pleadings, the motion and responses, the record, and the applicable law, this Court orders jurisdictional discovery to determine whether this Court has personal jurisdiction over Dr. Ma. Therefore, Defendants' motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) is denied without prejudice and with leave to reurge with the results of this targeted discovery. The reasons for this ruling are as follows.

On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, "[t]he plaintiff bears the burden of establishing jurisdiction, but need only present prima facie evidence." *Patterson v. Aker Sols. Inc.*, 826 F.3d 231, 233 (5th Cir. 2016) (internal quotation marks and citation omitted). "Although the non-moving party bears the burden, '[w]hen a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, as in the present case . . . the nonmoving party need only make a prima facie showing, and the court must accept as true the nonmov[ant]'s allegations and resolve all factual disputes in its favor.' " *Id.* (quoting *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 625 (5th Cir. 1999)). The Court "must accept the plaintiff's uncontroverted allegations, and resolve in [its] favor all conflicts between

4

the facts contained in the parties' affidavits and other documentation." *See Patterson*, 826 F.3d at 233. The Court is not restricted to pleadings, but may consider affidavits, interrogatories, depositions, or any other appropriate method of discovery. *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994); *see Jobe v. ATR Mktg., Inc.*, 87 F.3d 751, 752 (5th Cir. 1996). A court may grant jurisdictional discovery when the plaintiff makes a preliminary showing of jurisdiction. *See Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005). A preliminary showing is less than a prima facie showing; if the plaintiff made a prima facie showing, jurisdictional discovery would be unnecessary.

In this Court's opinion, Quintel has made a preliminary—but not a prima facie—showing of personal jurisdiction over Dr. Ma, as more fully explained below.

"Historically the jurisdiction of courts to render judgment in personam is grounded on their de facto power over the defendant's person. Hence his presence within the territorial jurisdiction of court was prerequisite to its rendition of a judgment personally binding him." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945) (citing *Pennoyer v. Neff*, 95 U.S. 714, 733, 24 L. Ed. 565 (1877)). However, a court may exercise personal jurisdiction over a nonresident defendant if the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* "The minimum contacts inquiry is fact intensive and no one element is decisive; rather the touchstone is whether the defendant's conduct shows that it reasonably anticipates being haled into court." *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009), *cert. denied*, 131 S. Ct. 68 (2010) (internal quotation marks and citation omitted).

"A federal court may exercise personal jurisdiction over a nonresident defendant if (1) the forum state's long-arm statute confers personal jurisdiction over that defendant, and (2) the exercise of personal jurisdiction comports with the [d]ue [p]rocess clause of the Fourteenth Amendment." *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 212 (5th Cir. 2016) (internal quotation marks and citation omitted); *3D Sys., Inc. v. Aarotech Labs., Inc.*, 160 F.3d 1373, 1376–77 (Fed. Cir. 1998). "[T]he Texas long-arm statute extends as far as constitutional due process permits." *Int'l Energy Ventures Mgmt., L.L.C.*, 818 F.3d at 212. Therefore, for all claims in the case sub judice, the Court "simply need[s] to determine whether a suit in Texas is consistent with the due process clause of the Fourteenth Amendment." *See id.* (internal citation omitted).

Quintel argues that Dr. Ma has sufficient contacts with the State of Texas to establish specific personal jurisdiction.[2] Specific personal jurisdiction is claim-specific; that is, if a plaintiff's claims relate to different forum contacts of the defendant, then specific jurisdiction must be established for each claim. *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274-75 (5th Cir. 2006); *McFadin*, 587 F.3d at 759. With respect to Quintel's claim for correction of patent inventorship pursuant to 35 U.S.C. § 256, personal jurisdiction intimately relates to patent law, and Federal Circuit law governs the issue. *See Blue Spike, LLC v. Tex. Instruments, Inc.*, No. 6:12-CV-499, 2014 WL 11829322, at *1 (E.D. Tex. Mar. 31, 2014) (citing *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1201 (Fed. Cir. 2003)). Personal jurisdiction over the remaining counts, which are state law claims, is not governed by Federal Circuit law, but is

---

[2] Because Plaintiff does not assert that the Court has general personal jurisdiction over Dr. Ma, the Court does not perform a general jurisdiction analysis. "A court may assert general jurisdiction over [non-resident defendants] to hear any and all claims against them when their affiliations with the State are so ' continuous and systematic' as to render them essentially at home in the forum State." *Hazim v. Schiel & Denver Book Publishers*, No. 15-20586, 2016 WL 2609772, at *3 (5th Cir. May 5, 2016) (citing *Daimler AG v. Bauman*, —— U.S. ——, —— , 134 S. Ct. 746, 187 L. Ed. 2d 624 (2014)).

instead governed by Texas law. *See Silent Drive, Inc.*, 326 F.3d at 1201. In the case sub judice,

Quintel's claims against Dr. Ma relate to the same forum contacts of Dr. Ma with Texas.

The Fifth Circuit has instructed:

> Specific jurisdiction may be established where the defendant lacks "continuous and systematic contacts" but has instead some minimum contacts that establish (1) the defendant has "purposefully directed his activities at residents of the forum," and (2) that the plaintiff's alleged injury "arise[s] out of or relate[s]" to the defendant's contacts with the forum state. *Clemens v. McNamee*, 615 F.3d 374, 378–79 (5th Cir. 2010) (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 472, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)). Stated differently, there must be a sufficient nexus between the defendant's minimum contacts and the plaintiff's alleged injury. *Id.* at 379. Accordingly, "[w]hen a nonresident defendant commits a tort within the state, or an act outside the state that causes tortious injury within the state, that tortious conduct amounts to sufficient minimum contacts with the state by the defendant to constitutionally permit courts within that state, including federal courts, to exercise personal adjudicative jurisdiction over the tortfeasor and the causes of actions arising from its offenses or quasi-offenses." *Guidry*, 188 F.3d at 628.

*Dontos*, 582 F. App'x at 342–43. "The [C]ourt may assert specific personal jurisdiction over a

nonresident defendant whose contacts with the forum state are singular or sporadic only if the

cause of action asserted arises out of or is related to those contacts." *See Int'l Energy Ventures*

*Mgmt., L.L.C.*, 818 F.3d at 212 (internal footnotes and citations omitted; emphasis in original).

"[A] single communication directed at the forum can establish personal jurisdiction where it

gives rise to an intentional tort for which jurisdiction is sought." *Mattei v. Int'l Conference of*

*Funeral Serv. Examining Bds.*, No. 1-15-CV-139 RP, 2015 WL 5125799, at *11 (W.D. Tex.

Sept. 1, 2015) (citing *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999)).

"Conversely, there are not sufficient contacts with a forum state when [the defendant] does not

have a physical presence in the state; it did not conduct business in the state; and the contract

underlying the business transaction at issue in the lawsuit was not signed in the state and did not

call for performance in the state." *See Int'l Energy Ventures Mgmt., L.L.C.*, 818 F.3d at 212 (internal quotation marks, footnote, and citation omitted). "[P]ersonal jurisdiction is proper only when the relationship arises 'out of contacts that the defendant . . . creates with the forum state,' and not the defendant's contacts with the plaintiff or third parties." *Id.* at 213 (quoting *Walden v. Fiore*, — U.S. —, 134 S. Ct. 1115, 1122, 188 L. Ed. 2d 12 (2014)). "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden*, 134 S. Ct. at 1125.

Quintel, a United Kingdom company with a principal place of business in the United Kingdom, brings this suit against Dr. Ma, a New Jersey citizen; Huawei Technologies, USA, Inc., a Texas corporation; FutureWei, a Texas corporation; and Huawei Technologies Co., Ltd., a company incorporated under the laws of the People's Republic of China, headquartered in Shenzen, China that is also the parent company of Huawei Technologies USA, Inc. and FutureWei. Quintel alleges in its first amended complaint that the Court has personal jurisdiction over Defendants, including Dr. Ma, "because they are residents of this district, they have sufficient minimum contacts with the forum as a result of business conducted within the State of Texas and this district, and/or they have regularly and systematically transacted business in this district directly or through intermediaries." Pl.'s Am. Compl. [20] ¶ 8.

Quintel avers that Dr. Ma was principal engineer for Texas-based corporation Huawei/FutureWei and at all times played a pivotal role in the alleged events giving rise to the suit. As further illustration of this, Quintel also avers that Dr. Ma was a point of contact for Huawei/FutureWei throughout the discussions, emailing, conversing by telephone, and meeting in California to discuss the technology. Quintel maintains that Dr. Ma is a nonresident defendant who nevertheless is subject to the jurisdiction of this Court because of his specific alleged acts in

8

this case in negotiating a business deal and contracting with Quintel, and in subsequently improperly and tortiously seeking a patent using confidential and proprietary information obtained from Quintel and being listed as the sole inventor on the patent.

Quintel avers at one point during the business discussions, Dr. Ma sent an email to Joseph Veni, Quintel's Vice President of Sales in the Americas, carbon-copying other Huawei representatives, with the subject line "A few followup questions" and expressing "some reservation" about Quintel's technology. *Id.* ¶¶ 30–32. Quintel further avers that Mr. Veni responded, answering Dr. Ma's questions and "provided detailed confidential information about Quintel's antenna technology," responded to Huawei's request for a list of Quintel's U.S. patents, and closed by noting that Quintel was "look[ing] forward to hearing from [Dr. Ma] soon to continue [their] discussions regarding cooperation.' " *Id.* ¶¶ 33. Quintel maintains that subsequently Quintel's representatives including David Barker and Huawei including Dr. Ma "had a conference call '[t]o review possible collaboration between Huawei and Quintel' " during which Dr. Ma "expressed that Huawei executives in China had some concerns with Quintel's antenna technology." *Id.* ¶¶ 34–35. Quintel further maintains that subsequently Dr. Ma sent an email to Mr. Veni and the other participants in the conference call thanking the Quintel representatives for their time and stating " 'I have discussed with my colleagues and we would like to explore how to setup the cooperation. . . I look forward to hearing from you.' " *Id.* ¶ 36. Quintel next alleges that Dr. Ma continued to question Quintel about additional confidential information pertaining to Quintel's antenna technology and that Quintel responded to these inquiries. *Id.* ¶¶ 37–39. After a series of these question and answer sessions, Quintel alleges that Mr. Veni asked Dr. Ma when Huawei could make an informed decision about their business relationship and further that Dr. Ma asked Mr. Veni to be patient and expressed assurance that

the parties were on track to reach an agreement. *Id.* ¶¶ 40–41. After further question and answer sessions regarding Quintel's technology, the parties were unable to agree on final terms to a business or partnering relationship. *Id.* ¶¶ 42–45. Quintel avers that unbeknownst to Quintel, during the discussions which took place in 2009 and subsequently, Huawei and Dr. Ma used the confidential and proprietary information obtained from Quintel to pursue a patent and further their own commercial purposes, that that included in the application was "a confidential Quintel slide that Quintel had provided to Dr. Ma," and that "Dr. Ma is listed as the sole inventor on the provisional patent application [Application No. 61/256,663]." *Id.* ¶¶ 47–49. Quintel further alleges that in 2010 FutureWei filed a nonprovisional patent application with the USPTO that "claimed the benefit of its provisional patent application seeking protection of an invention based on the Quintel confidential and proprietary antenna technology that Quintel had shared under the terms of the . . . NDA [Application No. 12/915,525]." *Id.* ¶ 50. Quintel avers that subsequently in 2014, the USPTO issued FutureWei Patent No. US 8,891,647 B2 (the '647 Patent) entitled "System and Method for User Specific Antenna Down Tilt in Wireless Cellular Networks." *Id.* ¶ 52. Quintel further avers that "[t]he sole inventor of the patent is [Dr.] Ma of Summit, New Jersey, and FutureWei . . . of Plano, Texas is listed as the assignee of the patent." *Id.*

Quintel maintains that Dr. Ma misappropriated and fraudulently concealed that information to obtain a patent, and with full knowledge of this and the improper omission of David Barker as an inventor, Dr. Ma assigned the '647 Patent to his employer in Texas. Quintel maintains that Dr. Ma and FutureWei have a long-standing, continuing employer-employee relationship, not a sporadic relationship.

Defendants argue that the only allegation connecting Dr. Ma to the State of Texas is the allegation that "[u]pon information and belief, [Dr.] Ma has entered into various agreements with

Texas-based [FutureWei] to assign to that entity his inventorship rights," *see id.* ¶ 6, and that this contact is inadequate to establish the requisite minimum contacts. Defendants further argue that Quintel fails to allege any forum-related contacts, for instance, that any of Quintel's communications with Dr. Ma took place in Texas and point out that Dr. Ma was not a party to the NDA.

However, the Court finds that the contacts mentioned arose from the alleged facts giving rise to this suit and are related to the relationship between Dr. Ma and the forum state, as well as the alleged wrongful conduct directed at Quintel. Accepting as true the facts alleged by Quintel, it is not specifically alleged whether Dr. Ma's acts giving rise to Quintel's claims against it took place in Texas. However, Dr. Ma is alleged to be a primary engineer of Texas-based companies Huawei and FutureWei, the point of contact for these companies in the negotiations with Quintel, and the sole inventor listed on the patent sought by Texas-based FutureWei that Quintel maintains was improperly sought. The NDA between Quintel and FutureWei also provides that the agreement "shall be governed, construed[,] and interpreted in accordance with the laws of the State of Texas, without giving effect to principles of conflicts of law." NDA [20-1] ¶ 11.

Quintel has made a preliminary, but not prima facie, showing of acts by which Dr. Ma "purposefully availed [him]self of the privilege of conducting activities within the forum state of Texas, so as to invoke the benefits and protections of its laws." *See Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 222 (5th Cir. 2012). "[T]o establish that the [C]ourt has specific jurisdiction over [Dr. Ma], [Defendants] must show that [Dr. Ma] undertook some activity in, or purposefully directed some act at, Texas, and that its claims arise out of or relate to those acts." *See Maxxim Med., Inc. v. Michelson*, 182 F.3d 915, 1999 WL 423112, at *3 (5th Cir. 1999) (per curiam) (citing *Felch v. Transportes Lar-Mex SA de CV*, 92 F.3d 320, 325 (5th

Cir. 1996)). Dr. Ma's alleged wrongful actions, even if performed outside of Texas, may be sufficient for purposes of minimum-contacts analysis, if the actions "had foreseeable effects in the forum and were directed at the forum." *Wien Air Alaska, Inc.*, 195 F.3d at 212.

Jurisdictional discovery on the extent, if any, to which Dr. Ma's alleged acts giving rise to this suit took place in Texas and whether Dr. Ma purposefully directed emails and other communications into Texas must be completed by November 1, 2016. If the parties believe that jurisdictional discovery on topics not listed above is necessary and cannot agree on that additional discovery, they may motion the Court for leave to do so and ask for a pre-motion conference on that question. After the deadline for the jurisdictional discovery, Defendants may file another motion to dismiss pursuant to Rule 12(b)(2) to include the results of the discovery. The brief in support of the motion must specifically address, inter alia, the extent, if any, to which Dr. Ma's alleged acts giving rise to this suit took place in Texas; whether Dr. Ma purposefully directed emails and other communications into Texas; and whether Dr. Ma's contacts with Texas are sufficient for this Texas court to assert specific personal jurisdiction. Defendants must file any such motion by December 15, 2016.

For all of the foregoing reasons, Defendants' motion to dismiss is denied without prejudice to refiling on the Rule 12(b)(2) challenge. The Court now turns to Defendants' Rule 12(b)(6) motion.

### B. Rule 12(b)(6)

" '[A] motion to dismiss under 12(b)(6) is viewed with disfavor and is rarely granted.' " *Belanger v. Geico Gen. Ins. Co.*, 623 F. App'x 684, 686 (5th Cir. 2015) (per curiam) (quoting *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (citation and internal quotation marks omitted)). When deciding a Rule 12(b)(6) motion to dismiss, the Court is limited to the

allegations set forth in the complaint and any documents attached to the complaint. *Walker v. Webco Indus., Inc.*, 562 F. App'x 215, 216–17 (5th Cir. 2014) (per curiam) (citing *Kennedy v. Chase Manhattan Bank USA, NA*, 369 F.3d 833, 839 (5th Cir. 2004)).

"[A plaintiff's] complaint . . . 'must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." ' " *Phillips v. City of Dallas, Tex.*, 781 F.3d 772, 775–76 (5th Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007))). A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937 (citing *Twombly*, 550 U.S. at 556, 127 S. Ct. 1955). " '[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim.' " *Jingping Xu v. Univ. of Tex. M.D. Anderson Cancer Ctr.*, 595 F. App'x 341, 343 (5th Cir. 2014) (per curiam) (quoting *Wilson v. Birnberg*, 667 F.3d 591, 595 (5th Cir. 2012)). "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) (internal quotation marks and citations omitted).

"Dismissal is appropriate when the plaintiff has not alleged 'enough facts to state a claim to relief that is plausible on its face' and has failed to 'raise a right to relief above the speculative level.' " *Emesowum v. Hous. Police Dep't*, 561 F. App'x 372, 372 (5th Cir. 2014) (per curiam) (quoting *Twombly*, 550 U.S. at 555, 570, 127 S. Ct. 1955).[3]

---

[3] The Court notes that although the parties attached documentation to their motion papers that if considered may have effectively converted the motion to dismiss into a motion for summary judgment, the Court did not consider such attached documentation in its Rule 12(b)(6) determination. Therefore, the present motion was properly considered under the Rule 12(b)(6) standard.

As stated above, Quintel makes two arguments in its Rule 12(b)(6) challenge: (1) six of the eight counts are time barred, specifically, Quintel's counts for breach of contract, misappropriation of trade secrets, unfair competition by misappropriation, common law fraud and fraud in the inducement, promissory estoppel, and unjust enrichment; and (2) Quintel fails to state a claim upon which relief can be granted on all claims except the breach of contract claim against Huawei Technologies USA, Inc.; FutureWei; and Huwaie Technologies Co., Ltd. The Court addresses each set of arguments in turn.

### 1. **Statutes of Limitations**

Defendants first argue in their Rule 12(b)(6) challenge that six of Quintel's eight asserted claims are time-barred, specifically, the claims for (a) breach of contract, (b) misappropriation of trade secrets, (c) unfair competition, (d) fraud, (e) promissory estoppel, and (f) unjust enrichment. A statute of limitations defense may be properly asserted in a Rule 12(b)(6) motion to dismiss. *Nationwide Bi–Weekly Admin., Inc. v. Belo Corp.*, 512 F.3d 137, 141 (5th Cir. 2007). Under Texas law, "the party asserting a limitations defense bears the burden of proof to not only establish the applicability of the limitations statute, but also prove when the opponent's cause of action accrued in order to demonstrate the bar of limitations." *Hernandez v. Frazier*, No. CV SA:11-CV-0009-DAE, 2014 WL 1390887, at *3 (W.D. Tex. Apr. 9, 2014) (citing *Intermedics v. Grady*, 683 S.W.2d 842, 845 (Tex. App. 1984)).

Quintel apparently concedes that the statutes of limitations have run on these six claims. However, Quintel argues that the discovery rule and the fraudulent concealment doctrine toll the statutes of limitations.

" 'Generally, a cause of action accrues, and the statute of limitations begins to run, when facts come into existence that authorize a claimant to seek a judicial remedy.' " *Dell Computer*

*Corp. v. Rodriguez*, 390 F.3d 377, 389 (5th Cir. 2004) (quoting *Willis v. Donnelly*, 118 S.W.3d 10, 28 (Tex. App.—Hous. [14 Dist.] 2003, no pet.) (citing *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 514 (Tex. 1998))). "The discovery rule provides a 'very limited exception to statutes of limitations.' " *Beavers v. Metro. Life Ins. Co.*, 566 F.3d 436, 439 (5th Cir. 2009) (quoting *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 455 (Tex. 1996); *S.V. v. R.V.*, 933 S.W.2d 1, 5–6 (Tex. 1996)). "Courts apply the discovery rule in limited circumstances where 'the nature of the injury incurred is inherently undiscoverable and the evidence of injury is objectively verifiable.' " *Cosgrove v. Cade*, 468 S.W.3d 32, 36 (Tex. 2015), *reh'g denied* (Sept. 11, 2015) (quoting *Altai*, 918 S.W.2d at 456). "The purpose of these criteria is to prevent both stale and fraudulent claims from being asserted in contravention of the policies behind the statutes of limitations." *Beavers*, 566 F.3d at 439. " 'An injury is inherently undiscoverable if it is, by its nature, unlikely to be discovered within the prescribed limitations period despite due diligence.' " *Id.* (quoting *Wagner & Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 734–35 (Tex. 2001)). "The inquiry focuses categorically on the type of injury alleged rather than on the circumstances of the particular case." *Id.* (citing *Wagner & Brown, Ltd.*, 58 S.W.3d at 736); *Cosgrove*, 468 S.W.3d at 36. The Texas Supreme Court has stated: "While the Legislature's silence on accrual in most cases leaves that question to the courts, we have restricted the discovery rule to exceptional cases to avoid defeating the purposes behind the limitations statutes." *Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 313 (Tex. 2006).

" 'Fraudulent concealment tolls limitations "until the claimant, using reasonable diligence, discovered or should have discovered the injury." ' " *Thompson v. Deutsche Bank Nat'l Tr. Co.*, 775 F.3d 298, 307 (5th Cir. 2014) (quoting *Priester v. JP Morgan Chase Bank, N.A.*, 708 F.3d 667, 676 (5th Cir. 2013) (quoting *KPMG Peat Marwick v. Harrison Cnty. Hous.*

*Fin. Corp.*, 988 S.W.2d 746, 750 (Tex. 1999))). The Court "applies a four-prong test for fraudulent concealment under Texas law, under which the plaintiff must demonstrate: ' "(1) the existence of the underlying tort; (2) the defendant's knowledge of the tort; (3) the defendant's use of deception to conceal the tort; and (4) the plaintiff's reasonable reliance on the deception." ' " *Id.* (quoting *Priester*, 708 F.3d at 676) (quoting *Holland v. Thompson*, 338 S.W.3d 586, 596 (Tex.App.-El Paso 2010)).

"[T]he date a cause of action accrues is normally a question of law, and the exercise of reasonable diligence is usually a question of fact . . . ." *Cosgrove*, 468 S.W.3d at 39 (quoting *Hooks v. Samson Lone Star, Ltd. P'ship*, 457 S.W.3d 52, 58–59 (Tex. 2015), reh'g denied (May 1, 2015) (internal quotations marks and citations omitted)); *Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 348 S.W.3d 194, 216 (Tex. 2011); *Estate of Stonecipher v. Estate of Butts*, 591 S.W.2d 806, 809 (Tex. 1979). Three Texas district court cases are particularly instructive on the issue.

In *Motorola Mobility, Inc. v. TiVo Inc.*, No. 5:11-CV-053-JRG, 2013 WL 12040725 (E.D. Tex. Jan. 25, 2013), a patent infringement case, the statute of limitations defense was urged on a declaration of patent ownership claim in a Rule 12(b)(6) motion to dismiss. The Eastern District of Texas held that "[a]lthough circumstances may exist where issuance of a patent may suffice to place a party on notice of its injury, [the plaintiff] sufficiently pleads facts that permit an inference that the discovery rule may defer the running of the limitations period to a later date." *Id.* at *3 (internal citation omitted).

In *Versata Software, Inc. v. Internet Brands, Inc.*, No. 2:08-CV-313-WCB, 2012 WL 588790, at *2 (E.D. Tex. Feb. 22, 2012), the Eastern District of Texas held that tolling of the limitations issue could not be decided even at the summary judgment stage. In that case, the plaintiffs had filed a patent infringement action, and the defendants had filed suit against the

plaintiffs in state court claiming misappropriation of trade secrets, inter alia. 2012 WL 588790, at *2. The Eastern District of Texas summed up the parties' prior relationship as follows: "The plaintiffs and the defendants are both in the business of creating software to facilitate comparison shopping on the Internet, in particular the online comparison and purchase of automobiles. Each party sells its products and services to various automakers, which use those products to enable consumers to compare vehicles." *Id.* at *1. The parties entered into a confidentiality agreement. *Id.* In the defendants' suit, they alleged that during their brief period of collaboration with the plaintiffs, the plaintiffs had obtained the defendants' confidential information and passed it on as the plaintiffs' own inventions in a patent application. *Id.* The plaintiffs next filed a federal court action for a declaratory judgment that the plaintiffs had not breached any confidentiality agreement they had with the defendants, and that even if such a claim were viable, it would be barred by the statute of limitations. *Id.* On summary judgment, the plaintiffs raised a statute of limitations defense, and the Eastern District of Texas denied the motion. *Id.* at *4. The court held that "[t]he issuance of a patent may sometimes suffice to put the defendants on notice that it incorporates their misappropriated technology," but that the circumstances of the case rendered the issues unsuitable for resolution at the summary judgment stage. *Id.* Specifically, the plaintiffs contended that the defendants were on notice of any misappropriation because the defendants had expressed concern that the plaintiffs would steal their trade secrets; the defendants contended that the plaintiffs responded by reassuring them that their fears were not well founded. *Id.* The defendants argued that those assurances relieved them of any duty to investigate further. *Id.* The court could not determine on summary judgment whether the defendants' reliance on those assurances was reasonable and whether such reliance relieved them of a duty to investigate further. *Id.* (citing *Stark v. Advanced Magnetics, Inc.*, 29 F.3d 1570,

1577–78 (Fed. Cir. 1994) (observing that factors such as the existence of a relationship of trust between the parties or deliberate misrepresentation are pertinent to a determination of whether the issuance of a patent gave the defendants constructive notice of its content for purposes of statute of limitations)).

In *WesternGeco v. Ion Geophysical Corp.*, No. CIV.A. 09-CV-1827, 2009 WL 3497123 (S.D. Tex. Oct. 28, 2009), the plaintiff's predecessor entered into a confidential disclosure agreement with the defendant's predecessor to protect discussions and disclosures between the parties concerning teamer positioning technology. 2009 WL 3497123 at *1. Subsequently, the named inventor in four of the patents at issue in the case met with employees of the defendant's predecessor and was shown working prototypes of new lateral streamer steering devices being developed by the defendant's predecessor. *Id.* Next, that inventor requested an operational model of the steering device from the defendant's predecessor, which believed the model fell under the terms of the confidential disclosure agreement and was protected by the same. *Id.* Therefore, the defendant's predecessor provided the requested operational model to the inventor. *Id.* As in this case, the plaintiff alleged that the inventor subsequently filed a patent application using this protected information. *See id.* The Southern District of Texas began its analysis on this issue with the general principle that under Texas law "[a] person is charged with constructive notice of the actual knowledge that could have been acquired by examining public records." *Id.* at *4 (citing *Mooney v. Harlin*, 622 S.W.2d 83, 85 (Tex. 1981)). The court then stated that "[t]he issuance of a patent and its recordation in the PTO constitutes notice to the world of its existence." *Id.* (citing *Sontag Chain Stores Co. v. Nat'l Nut Co. of Calif.*, 310 U.S. 281, 295, 60 S. Ct. 961, 84 L. Ed. 1204 (1940); *Wine Ry. Appliance Co. v. Enter. Ry Equip. Co.*, 297 U.S. 387, 393, 56 S. Ct. 528, 80 L. Ed. 736 (1936); *Sessions v. Romadka*, 145 U.S. 29, 50,

12 S. Ct. 799, 36 L. Ed. 609 (1892)). The court concluded that the statute of limitations was tolled and the point at which the statute of limitations began to run again was the date that the patent application was published.

This Court's examination of Texas law reveals that generally a matter of public record is not inherently undiscoverable, and generally, the discovery rule would not toll the statute of limitations when the alleged wrongful conduct was a matter of public record. *See, e.g.*, *Cosgrove*, 468 S.W.3d at 38 (recorded deed is matter of public record and "establish[es] as a matter of law a lack of diligence" in the discovery of a mistaken omission in the deed; "obvious omissions [in a recorded deed] are not inherently undiscoverable" for purposes of the discovery rule); *Shell Oil Co. v. Ross*, 356 S.W.3d 924, 928 (Tex. 2011) (duty of diligence can include duty to monitor public records); *HECI Expl. Co. v. Neel*, 982 S.W.2d 881, 887 (Tex. 1998) ("filings and materials publicly available from the Railroad Commission are a ready source of information, and a cause of action for failure to provide that same information is not inherently undiscoverable"); *Mooney v. Harlin*, 622 S.W.2d 83, 85 (Tex. 1981) ("A person is charged with constructive notice of the actual knowledge that could have been acquired by examining public records," in this case, probate records). "Constructive notice is usually applied when a person knows where to find the relevant information but failed to seek it out." *Little v. Smith*, 943 S.W.2d 414, 421 (Tex. 1997). "A person is charged with constructive notice of the actual knowledge that could have been acquired by examining public records. When evidence of fraud may be disclosed by examination of public records this court has held limitations will begin to run from the time the fraud could have been discovered by the exercise of ordinary diligence." *Mooney*, 622 S.W.2d at 85 (citing *Sherman v. Sipper*, 152 S.W.2d 319, 321 (Tex. 1941)).

However, in the case sub judice, as in *Versata*, Quintel and Huawei had entered into a NDA; the very nature of the alleged wrongful conduct is disclosure of confidential information. Therefore, on these alleged facts, Quintel reasonably would not have known of the alleged wrongful conduct at the time it was allegedly committed. The publication of the '647 Patent application on May 5, 2011 may have constituted constructive notice of the breach such that the limitations clock resumed at that time, and at that time, the technology claimed by Quintel was no longer inherently undiscoverable, especially considering Quintel's active role in "develop[ing] cutting-edge, proprietary antenna technology to better serve wireless network operators and users" and strong interest in learning about progress and developments in that area, Pl.'s Am. Compl. [20] ¶ 10. Nevertheleee, "[a]lthough circumstances may exist where issuance of a patent may suffice to place a party on notice of its injury, [Quintel] sufficiently pleads facts that permit an inference that the discovery rule [or the fraudulent concealment doctrine] may defer the running of the limitations period[s] to a later date." *See Versata*, 2013 WL 12040725, at *3.

The Court finds that the discovery rule or fraudulent concealment doctrine may apply in the case sub judice, but the exercise of reasonable diligence is a question of fact and as such cannot be determined at this early stage in the proceedings, as more fully explained below with respect to each of the statutes of limitations challenged.

### a. Breach of Contract

Defendants move the Court to dismiss Quintel's breach of contract claim because the statute of limitations applicable to the claim has expired.[4] "Texas applies a four-year statute of

---

[4] Defendants further argue that the breach of contract claim as asserted against Dr. Ma in his individual capacity must be dismissed because Quintel fails to state a breach of contract claim against him. However, Quintel states in its response that it "is not alleging a breach of contract claim against Dr. Ma in his individual capacity." Pl.'s Resp. Opp'n to Defs.' Mot. Dismiss [30] at 23 n.6. Therefore, the Court need not address this argument, and to

limitations to breach of contract claims." *Beavers*, 566 F.3d at 439 (citing Tex. Civ. Prac. & Rem. Code § 16.051). " 'A breach of contract claim accrues when the contract is breached.' " *Cosgrove*, 468 S.W.3d at 44 (quoting *Stine v. Stewart*, 80 S.W.3d 586, 592 (Tex. 2002)). "The time at which a cause of action for breach of contract accrues is a question of law." *Dell Computer Corp.*, 390 F.3d at 389 (citing *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 351 (Tex. 1990)). On Quintel's allegations, the subject contract, the NDA, was breached on October 30, 2009, with Defendants' filing of the provisional patent application.

However, as stated above, the discovery rule or fraudulent concealment doctrine may apply and toll the statute of limitations, and thus, the limitations issue on the breach of contract claim cannot be resolved at this stage in the litigation. At this early juncture in the proceedings, there is an insufficient factual record upon which to base such a determination. Defendants' motion to dismiss shall thus be denied on this ground. Should discovery produce evidence otherwise, a motion for summary judgment may be appropriate in the future, and nothing about the Court's instant ruling forecloses that prospect. *See Motorola Mobility, Inc.*, 2013 WL 12040725, at *4.

### b. Misappropriation of Trade Secrets

Defendants next move the Court to dismiss Quintel's misappropriation of trade secrets claim because the statute of limitations applicable to the claim has expired. "A person must bring suit for misappropriation of trade secrets not later than three years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered." Tex. Civ. Prac. Rem. Code § 16.010. "A cause of action for trade-secret misappropriation accrues when the trade secret is actually used." *Sw. Energy Prod. Co. v. Berry-Helfand*, 491 S.W.3d 699, 721–

---

the extent Quintel's breach of contract claim was asserted against Dr. Ma in his individual capacity, the same is dismissed.

22 (Tex. 2016) (internal quotation marks and citation omitted). "Use of the trade secret means commercial use by which the offending party seeks to profit from the use of the secret." *Id.* (internal quotation marks and citation omitted); *see Gen. Universal Sys., Inc. v. HAL, Inc.*, 500 F.3d 444 450–51 (5th Cir. 2007) ("[A]ny exploitation of the trade secret that is likely to result in injury to the trade secret owner or enrichment to the defendant is a 'use' . . . [including] relying on the trade secret to assist or accelerate research or development . . . ." (quoting Restatement (Third) of Unfair Competition § 40 cmt. c)). On Quintel's allegations, the alleged misappropriation occurred on October 30, 2009 with Defendants' filing of the provisional patent application.

As similarly discussed in the breach of contract limitations section supra, the limitations issue on the misappropriation of trade secrets claim cannot be resolved at this stage in the litigation. At this early juncture in the proceedings, there is an insufficient factual record upon which to base such a determination. Defendants' motion to dismiss shall thus be denied on this ground. Should discovery produce evidence otherwise, a motion for summary judgment may be appropriate in the future, and nothing about the Court's instant ruling forecloses that prospect. *See Motorola Mobility, Inc.*, 2013 WL 12040725, at *4.

### c. <u>Unfair Competition by Misappropriation</u>

Next, Defendants move the Court to dismiss Quintel's unfair competition claim because the statute of limitations applicable to the claim has expired. "Claims for . . . unfair competition are governed by a three-year statute of limitations." *Target Strike, Inc. v. Marston & Marston, Inc.*, 524 F. App'x 939, 944 n.7 (5th Cir. 2013) (per curiam) (citing Tex. Civ. Prac. & Rem. Code Ann. § 16.010 (Vernon 2010). On Quintel's allegations, the alleged unfair competition by

misappropriation occurred on October 30, 2009, with Defendants' filing of the provisional patent application.

However, as stated above, the discovery rule or fraudulent concealment doctrine may apply and toll the statute of limitations, and thus, the limitations issue on the unfair competition by misappropriation claim cannot be resolved at this stage in the litigation. At this early juncture in the proceedings, there is an insufficient factual record upon which to base such a determination. Defendants' motion to dismiss shall thus be denied on this ground. Should discovery produce evidence otherwise, a motion for summary judgment may be appropriate in the future, and nothing about the Court's instant ruling forecloses that prospect. *See Motorola Mobility, Inc.*, 2013 WL 12040725, at *4.

### d. <u>Common Law Fraud and Fraud in the Inducement</u>

Next, Defendants move the Court to dismiss Quintel's common law fraud and fraud in the inducement claims because the statute of limitations applicable to the claims has expired. " '[W]here fraud is alleged, [the Texas Supreme Court] ha[s] granted the claimant the benefit of deferring the cause of action until the claimant discovered or should have discovered the fraud.' " *Goradia Family Interests, Ltd. v. Sunoco, Inc.*, No. CV H-16-0736, 2016 WL 4154462, at *11 (S.D. Tex. Aug. 4, 2016) (quoting *Altai*, 918 S.W.2d at 455). "In a fraud case the 'statute of limitations does not commence to run until the fraud is discovered or until it might have been discovered by the exercise of reasonable diligence.' " *Id.* (quoting *Little v. Smith*, 943 S.W.2d 414, 420 (Tex. 1997)). On Quintel's allegations, the alleged fraud occurred on October 30, 2009, with Defendants' filing of the provisional patent application.

However, as stated above, the limitations issue on the fraud and fraud in the inducement claim cannot be resolved at this stage in the litigation. At this early juncture in the proceedings, there is an insufficient factual record upon which to base such a determination. Defendants' motion to dismiss shall thus be denied on this ground. Should discovery produce evidence otherwise, a motion for summary judgment may be appropriate in the future, and nothing about the Court's instant ruling forecloses that prospect. *See Motorola Mobility, Inc.*, 2013 WL 12040725, at *4.

### e. Promissory Estoppel

Next, Defendants move the Court to dismiss Quintel's promissory estoppel claim because the statute of limitations applicable to the claim has expired. "The statute of limitations for a claim of promissory estoppel is four years." *Emerald City Mgmt., LLC v. Kahn*, No. 4:14-CV-358, 2016 WL 98751, at *31 (E.D. Tex. Jan. 8, 2016) (citing *Prestige Ford Garland Ltd. P'ship v. Morales*, 336 S.W.3d 833, 836 (Tex. App.—Dallas 2011, no pet.) (citing Tex. Civ. Prac. & Rem. Code Ann. § 16.051))). "[A] promissory estoppel cause of action accrues when the promisor breaches its promise to the promisee." *Prestige Ford Garland Ltd.*, 336 S.W.3d at 837. On Quintel's allegations, alleged breach of promise was made on October 30, 2009, with Defendants' filing of the provisional patent application.

However, as stated above, the discovery rule or fraudulent concealment doctrine may apply and toll the statute of limitations, and thus, the limitations issue on the promissory estoppel claim cannot be resolved at this stage in the litigation. At this early juncture in the proceedings, there is an insufficient factual record upon which to base such a determination. Defendants' motion to dismiss shall thus be denied on this ground. Should discovery produce evidence otherwise, a motion for summary judgment may be appropriate in the future, and nothing about

24

the Court's instant ruling forecloses that prospect. *See Motorola Mobility, Inc.*, 2013 WL 12040725, at *4.

### f. Unjust Enrichment

Next, Defendants move the Court to dismiss Quintel's unjust enrichment claim because the statute of limitations applicable to the claim has expired. "Claims for . . . unjust enrichment are governed by a two-year statute of limitations." *Target Strike, Inc.*, 524 F. App'x at 944 n.7 (citing *Elledge v. Friberg–Cooper Water Supply Corp.*, 240 S.W.3d 869, 870 (Tex. 2007). On Quintel's allegations, the unjust enrichment occurred on October 30, 2009, with Defendants' filing of the provisional patent application.

However, as stated above, the discovery rule or fraudulent concealment doctrine may apply and toll the statute of limitations, and thus, the limitations issue on the unjust enrichment claim cannot be resolved at this stage in the litigation. At this early juncture in the proceedings, there is an insufficient factual record upon which to base such a determination. Defendants' motion to dismiss shall thus be denied on this ground. Should discovery produce evidence otherwise, a motion for summary judgment may be appropriate in the future, and nothing about the Court's instant ruling forecloses that prospect. *See Motorola Mobility, Inc.*, 2013 WL 12040725, at *4. The Court now turns to Defendants' Rule 12(b)(6) challenges to the merits.

### 2. Merits

Defendants challenge the merits of all claims except the breach of contract claim. Accordingly, the Court addresses the merits challenges on the following claims: (a) misappropriation of trade secrets, (b) unfair competition by misappropriation, (c) common law fraud and fraud in the inducement, (d) promissory estoppel, (e) unjust enrichment, (f) accounting, and (g) correction of patent inventorship—35 U.S.C. § 256.

### a. Misappropriation of Trade Secrets

Defendants argue Quintel's misappropriation of trade secrets claim must be dismissed for failure to plead with sufficient particularity. Defendants further argue Quintel provides no substantive expansions on what trade secrets Quintel allegedly created or what Defendants misappropriated.

"To establish a cause of action for trade secret misappropriation under Texas law, a plaintiff must show that: (1) a trade secret existed; (2) the defendant acquired the trade secret through 'improper means'; and (3) the defendant disclosed the trade secret without the plaintiff's consent." *Educ. Mgmt. Servs., LLC v. Tracey*, 102 F. Supp. 3d 906, 914 (W.D. Tex. 2015) (citing *Wellogix, Inc. v. Accenture, L.L.P*, 716 F.3d 867, 874 (5th Cir. 2013); Tex. Civ. Prac. & Rem. Code § 134A.002)). A trade secret is "any formula, pattern, device or compilation of information which is used in one's business and presents an opportunity to obtain an advantage over competitors who do not know or use it." *Altai*, 918 S.W.2d at 455. "One who either discloses or uses another's trade secret, without a privilege to do so, can be liable for such disclosure or use if the disclosure or use constitutes a breach of confidence reposed in the party disclosing or using the trade secret." *Keane v. Fox Television Stations, Inc.*, 297 F. Supp. 2d 921, 938–39 (S.D. Tex. 2004), *aff'd*, 129 F. App'x 874 (5th Cir. 2005) (citing *IBP, Inc. v. Klumpe*, 101 S.W.3d 461, 472 (Tex. App.—Amarillo 2001, writ denied) (citing *Hyde Corp. v. Huffines*, 314 S.W.2d 763, 769–70 (Tex. 1958))).

Quintel alleges in pertinent part that it "owned and developed highly sensitive trade secrets, including but not limited to trade secrets related to [its] confidential and proprietary antenna technology, including, but not limited to, the Per User Tilt Concept and related documents and information[;] [its] Per User Tilt network simulation results[;] sample antenna

patterns[;] and schematics of a generic base station scheme for implementing the Per User Tilt Concept." Pl.'s Am. Compl. [20] ¶ 69. Quintel further details its competitive advantage over those who do not know or use trade secrets and the "significant time, effort, and money" it expended developing these trade secrets. *Id.* ¶¶ 70–71. For purposes of Rule 12(b)(6), the Court finds that Quintel has alleged that a trade secret existed.

Second, Quintel alleges that it "takes extensive precautions to limit disclosure and dissemination of this information, including by requiring that entities and individuals who receive such information, such as Huawei and Dr. Ma, sign [NDAs] prior to receiving such information," *id,* ¶ 72; that Defendants entered into the NDA so that they could "receive Quintel's confidential and proprietary information and trade secrets, including Quintel's confidential and proprietary antenna technology," *id.* ¶ 73; that Quintel "shared its trade secrets" listed above with Huawei and Dr. Ma, *id,* ¶ 74; and that Huawei and Dr. Ma were only authorized to use these trade secrets in connection with their business discussions with Quintel concerning the project, *id,* ¶ 75; but that Huawei and Dr. Ma misappropriated the trade secrets, "including, but not limited to, by improperly disclosing Quintel's trade secrets, including the Per User Tilt Concept and Quintel's Per User Tilt Simulation results, to a third party in violation of [their] confidential relationship with Quintel" in that Defendants disclosed the information to the USPTO for their "own gain without Quintel's consent—namely, to obtain protection of an invention based on Quintel's confidential and proprietary antenna technology," *id,* ¶¶ 77; and that this has caused Quintel "to sustain injury and actual damages," *id.* ¶ 79.

For purposes of Rule 12(b)(6), the Court finds that Quintel has alleged that Defendants acquired the trade secret(s) through improper means and disclosed the trade secret(s) without Quintel's consent. Therefore, the Court finds that Quintel has stated a claim for

misappropriation of trade secrets, and Defendants' motion to dismiss must be dismissed on this ground.

### b. **Unfair Competition**

Defendants next argue that Quintel's claim for unfair competition based on misappropriation must be dismissed for failure to plead the requisite misappropriation of a "unique pecuniary interest," and further because the claim is derivative. Defendants also argue that Quintel has failed to plead the existence of an independent substantive tort, specifically, misappropriation of trade secrets. For these reasons, Defendants argue Quintel's unfair competition claim should be dismissed.

"Unfair competition under Texas law 'is the umbrella for all statutory and nonstatutory causes of action arising out of business conduct which is contrary to honest practice in industrial or commercial matters.' " *Taylor Publ'g Co. v. Jostens, Inc.*, 216 F.3d 465, 486 (5th Cir. 2000) (quoting *Am. Heritage Life Ins. Co. v. Heritage Life Ins. Co.*, 494 F.2d 3, 14 (5th Cir. 1974)). Liability for unfair competition requires a finding of some independent substantive tort or other illegal conduct. *Hassan v. Greater Hous. Transp. Co.*, 237 S.W.3d 727, 734 (Tex. App.–Houston [1 Dist.] 2007); *RTLC AG Prods., Inc. v. Treatment Equip. Co.*, 195 S.W.3d 824, 832 (Tex. App.–Dallas, 2006); *Schoellkopf v. Pledger*, 778 S.W.2d 897, 904–05 (Tex. App.–Dallas 1989). "The category of unfair competition includes a number of types of objectionable trade practices, including trademark infringement, dilution of good will, misappropriation of business value, 'palming off,' and theft of trade secrets." *Healthpoint, Ltd. v. Allen Pharm., LLC*, No. SA-07-CA-0526-XR, 2008 WL 728333, at *3 (W.D. Tex. Mar. 18, 2008) (internal citation omitted).

Quintel apparently relies upon its trade secrets misappropriation claim as the independent tort supporting liability for unfair competition and alleges in pertinent part that "[Defendants] have engaged in and continue to engage in unfair competition with Quintel by misappropriating Quintel's trade secrets and confidential and proprietary business information, including Quintel's confidential and proprietary antenna technology, created through the expenditure of labor, skill[,] and money, and using them in competition against Quintel, thereby gaining an advantage in that competition, resulting in commercial damage to Quintel," while Defendants "were burdened with little or none of the expense incurred by Quintel in developing its trade secrets and confidential and proprietary business information, and even less risk." Pl.'s Am. Compl. [20] ¶ 82. The Court finds that Quintel has stated a claim for unfair competition by misappropriation in that it has adequately alleged business conduct which is contrary to honest practice in industrial or commercial matters upon the foundation of misappropriation of trade secrets. *See Taylor Publ'g Co.*, 216 F.3d at 486. Therefore, Defendants' motion to dismiss must be dismissed on this ground.

### c. **Common Law Fraud and Fraud in the Inducement**

Defendants next argue that Quintel's claim for common law fraud and fraud in the inducement should be dismissed for failure to satisfy the heightened pleading standard in Rule 9(b) of the Federal Rules of Civil Procedure.

The elements to prove common law fraud and fraud in the inducement are the same under Texas law, as follows: a material misrepresentation, which was false, and which was either known to be false when made or was asserted without knowledge of the truth, which was intended to be acted upon, which was relied upon, and which caused injury. *Wright v. Modern Grp., Ltd.*, No. 13-12-00293-CV, 2013 WL 4714930, at *9 n.8 (Tex. App. Aug. 30, 2013) (citing

*DeSantis v. Wackenhut Corp..*, 793 S.W.2d 670, 688 (Tex. 1990)). To satisfy Rule 9(b), Quintel must "state with particularity the circumstances constituting the fraud." *See* Fed. R. Civ. P. 9(b). "Put simply, Rule 9(b) requires the who, what, when, where, and how to be laid out." *Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*, 607 F.3d 1029, 1032 (5th Cir. 2010). "Although Rule 9(b) effectively modifies the general notice pleading requirements of Rule 8(a)(2), Rule 8(d)(1) still dictates that each averment of a pleading of fraud be 'simple, concise, and direct.' " *United States ex rel. v. Kanneganti*, 565 F.3d 180, 186 (5th Cir. 2009).

Defendants argue that Quintel fails to provide enough factual detail to sustain its claim and that its first amended complaint is "vague, internally inconsistent, and thoroughly lacking in specificity." Defendants argue that the claim should be dismissed due to "internally inconsistent allegations of fraudulent intent," including that "despite its professed interest, Huawei never intended to enter into a partnering relationship with Quintel," yet "intended to collaborate with Quintel in order to understand how Quintel's antenna technology could work with Huawei's knowledge of the base station." *See* Pl.'s Am. Compl. [20] ¶¶ 46–47. Defendants further maintain the assurances of confidentiality in the NDA alleged in the first amended complaint are "not evidence of fraudulent inducement to enter the NDA." Finally, Defendants argue that "[n]owhere does Quintel specify the time, place, and content of any representations it received and relied upon in executing the NDA, let alone the 'repeated' representations it claims took place."

Quintel argues in response that its first amended complaint adequately describes the NDA and the circumstances surrounding its formation, as well as its communications with Dr. Ma and "his multiple assurances to induce Quintel to continue providing confidential information." *See id.* ¶¶ 20–29, 32, 35–37, 39–41, 43, Ex. A. Quintel also argues that it alleges that throughout the

parties' collaboration, Defendants never told Quintel about their patent application and that Quintel reasonably relied on such representations and omissions at the time, given the parties' working relationship and the NDA. Quintel further argues inter alia that it has not made internally inconsistent allegations regarding Huawei's intent but instead alleges that Huawei never intended to partner with Quintel to service mobile operators in the wireless network industry but did collaborate with Quintel to misappropriate its confidential information. *See id.* ¶¶ 14, 46, 47. Quintel further argues that even if the statements were inconsistent they would not warrant dismissal.

In its first amended complaint, Quintel pleads that Huawei and Dr. Ma (**who**) made false statements to Quintel that they knew were false at the time that they made them regarding their intentions to do two separate things: (1) to partner with Quintel to service model operators in the wireless network industry, and (2) not to disclose confidential and proprietary information related to the antenna technology (**what**). *See id.* ¶ 87. Quintel alleges that those statements were made in the NDA on September 21, 2009 and in discussions leading up to and following the NDA in meetings (**when and where**), and the statements were made to induce Quintel to act upon them and provide confidential and proprietary information (**how**). *See id.* ¶ 90. Quintel further pleads that on multiple occasions in September, October, November, and December of 2009, as well as on other dates in 2010, Quintel provided Huawei and Dr. Ma with confidential and proprietary information regarding its antenna technology in reliance on Huawei's and Dr. Ma's representations, and that as a result of the fraud, Quintel has suffered damages. *Id.* ¶¶ 91, 92. In the opinion of this Court, these allegations are sufficient to satisfy Quintel's pleading requirements. *See Francis v. Api Tech. Servs., LLC*, No. 4:13-CV-627, 2014 WL 11462448, at

*3 (E.D. Tex. Apr. 30, 2014). Accordingly, Defendants' motion to dismiss is denied on this ground.

### d. Promissory Estoppel and Unjust Enrichment

Next, Defendants argue that both the promissory estoppel claim and the unjust enrichment claim are precluded as to the parties bound by the NDA. Defendants maintain that they are not contesting the validity of the NDA, but whether there was a material breach of the NDA, and that because the validity and enforceability of the written contract is not in issue in this case, promissory estoppel and unjust enrichment are precluded as against Defendants FutureWei, Huawei Technologies USA, and Huawei Technologies China. Defendants apparently do not dispute the claims with respect to Dr. Ma on this ground, as Defendants maintain Dr. Ma was not a party to the NDA.

Quintel argues that these claims can be pled in the alternative of its breach of contract claim based on Rule 8(d)(3) of the Federal Rules of Civil Procedure, which provides that "[a] party may state as many separate claims or defenses it has, regardless of consistency." *See* Fed. R. Civ. P. 8(d)(3). Quintel cites two Eastern District of Texas cases, one allowing a promissory estoppel claim to be brought in alternative of a breach of contract claim, and one allowing an unjust enrichment claim to be brought in alternative of a breach of contract claim.

Unjust enrichment "is an independent cause of action that allows recovery when there is no express contract covering the services rendered." *Nart v. Open Text Corp.*, No. A-10-CA-870 LY, 2011 WL 3844216, at *4 (W.D. Tex. Aug. 29, 2011) (citing *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 683-84 (Tex. 2000)). " 'Promissory estoppel and breach of contract may be mutually exclusive causes of action.' " *Meltzer/Austin Rest. Corp. v. Benihana Nat'l Corp.*, No. 1:11-CV-542-LY, 2013 WL 12093755, at *7 (W.D. Tex. Jan. 31, 2013) (quoting *Secure Comm,*

32

*Inc. v. Anderson*, 31 S.W.3d 428, 431 n.3 (Tex. App.—Austin 2000, no pet.)). "Nevertheless, 'a party to a contract may seek alternative relief under both contract and quasi-contract theories.' " *Woodcock v. Chase Home Fin., LLC*, Civ. A. No. H-11-1199, 2012 WL 393260, at *3 (S.D. Tex. Feb. 3, 2012) (quoting *In re Kellogg Brown & Root Inc.*, 166 S.W.3d 732, 740 (Tex. 2005)); *see also Tatum v. Tatum*, 606 S.W.2d 31, 33 (Tex. App.—Corpus Christi 1980, no writ) ("[T]here certainly is nothing to prevent plaintiff from pleading alternative theories of express contract and [unjust enrichment]."). Based on the foregoing, the Court finds that Quintel has adequately pled claims for unjust enrichment and promissory estoppel at the Rule 12(b)(6) stage.

### e. Accounting

Defendants next argue that Quintel's accounting claim should be dismissed for failure to state a claim. Quintel alleges in pertinent part that it "is entitled to an accounting from Huawei of the income realized from its unlawful use of Quintel's confidential and proprietary information and trade secrets, including Quintel's confidential and proprietary antenna technology," and that "Quintel has no adequate remedy at law to otherwise determine the amount of Huawei's ill-gotten income." Pl.'s Am. Compl. [20] ¶¶ 106–08. Quintel argues that it is entitled to an accounting because it has asserted other viable causes of action, and that consideration of this issue at the motion to dismiss stage would be premature.

Defendants argue that the Court should dismiss the accounting claim because it is conclusory, and that Quintel does not make any specific allegations concerning the complexity of the facts and accounts in issue or with respect to whether ordinary discovery would clarify the facts and accounts.

The Court finds that Quintel has not pleaded facts indicating that the accounts and facts in this case are so complex that adequate relief cannot be obtained through the separate causes of

action asserted in the first amended complaint, and thus, Quintel's accounting claim must be dismissed for failure to state a claim. *See Burbank v. Compass Bank*, No. 1:15-CV-60, 2016 WL 3618691, at *8 (E.D. Tex. Mar. 29, 2016). Therefore, the Court dismisses the accounting claim as a separate equitable cause of action, because Quintel has not shown that the requested accounting is so complex that adequate relief cannot be obtained by law. *See Peters v. JP Morgan Chase Bank, N.A.*, 600 F. App'x 220, 225 (5th Cir. 2015) (per curiam) (citing *Watson v. Citimortgage, Inc.*, 814 F. Supp. 2d 726, 737 (E.D. Tex. 2011) (citing *Brown v. Cooley Enters., Inc.*, No. 3:11–CV–0124–D, 2011 WL 2200605, at *1 (N.D. Tex. June 7, 2011))). Accordingly, the motion to dismiss is granted on this ground.

### f. Correction of Patent Inventorship—35 U.S.C. § 256

Finally, Defendants argue that Quintel's correction of patent inventorship claim pursuant to 35 U.S.C. § 256 must be dismissed for failure to state a claim. Under 35 U.S.C. § 256, "[w]henever . . . through error an inventor is not named in an issued patent, the Director [of the United States Patent and Trademark Office] may, on application of all the parties and assignees, with proof of the facts and such other requirements as may be imposed, issue a certificate correcting such error."[5] This statute " 'provides a private right of action to challenge inventorship[,] and such a challenge arises under [28 U.S.C.] § 1338(a).' " *Camsoft Data Sys., Inc. v. S. Elecs. Supply, Inc.*, 756 F.3d 327, 336 (5th Cir. 2014), *cert. denied*, 135 S. Ct. 1162, 190 L. Ed. 2d 914 (2015) (quoting *HIF Bio, Inc. v. Yung Shin Pharma. Indus. Co.*, 600 F.3d 1347, 1354 (Fed. Cir. 2010)). Under 35 U.S.C. § 256, "a co-inventor omitted from an issued

---

[5] The Court notes that prior to the most recent amendment in 2011, 35 U.S.C. § 256 provided in pertinent part that "[w]henever through error . . . an inventor is not named in an issued patent and such error arose without any deceptive intention on his part, . . ." *See* 35 U.S.C. § 256 (emphasis added). The 2011 amendment deleted the words "and such error arose without any deceptive intention on his part." One law review article posits that legislators removed the deceptive intent language in § 256 "to weaken the reach of inequitable conduct defense" and "so that all errors can be changed at any time." Katherine E. White, "There's a Hole in the Bucket:" the Effective Elimination of the Inequitable Conduct Doctrine, 11 J. Marshall Rev. Intell. Prop. L. 716, 732, n.162 (2012).

patent may be added to the patent by a court 'before which such matter is called in question.' "
*Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1461 (Fed. Cir. 1998) (quoting *Hess Advanced Cardiovascular Sys., Inc.*, 106 F.3d 976, 980 (Fed. Cir. 1997)). This statute "expressly empowers federal courts to correct inventorship errors relating to issued patents." *CamSoft Data Sys., Inc. v. S. Elecs. Supply, Inc.*, 638 F. App'x 255, 261 (5th Cir. 2015) (per curiam) (citing *E.I. Du Pont de Nemours & Co. v. Okuley*, 344 F.3d 578, 583–84 (6th Cir. 2003)).

Although the patent case law sheds light on what is required to ultimately sustain a 35 U.S.C. § 256 claim, the law is not clear on what is required to sustain the claim at the Rule 12(b)(6) stage. The Federal Circuit cases reviewing decisions on Rule 12(b)(6) motions to dismiss § 256 claims concern threshold issues that have not been raised in the case sub judice. *See, e.g.*, *Kamdem-Ouaffo v. Pepsico, Inc*, No. 2016-1668, 2016 WL 4151245, at \*3–\*4 (Fed. Cir. Aug. 5, 2016) (per curiam) (concerning standing); *Gillig v. Nike, Inc.*, 602 F.3d 1354, 1360–1363 (Fed. Cir. 2010) (concerning res judicata and standing). Despite the dearth of case law on the merits of a § 256 claim at the Rule 12(b)(6) stage, however, this Court is guided by Rule 12(b)(6) jurisprudence in general, as well as general principles of § 256 claims.

To ultimately prove a § 256 claim requires corroborating evidence of conception. *Burroughs Wellcome Co. v. Barr Labs., Inc.*, 40 F.3d 1223, 1228 (Fed. Cir. 1994). "Because 'conception is the touchstone of inventorship,' each joint inventor must generally contribute to the conception of the invention." *Id.* (quoting *Burroughs Wellcome Co.*, 40 F.3d at 1227–1228). However, contrary to Defendants' arguments, "a co-inventor need not make a contribution to every claim of a patent. A contribution to one claim is enough." *See Ethicon*, 135 F.3d at 1460 (internal citation omitted) (citing 35 U.S.C. § 116 and *SmithKline Diagnostics, Inc. v. Helena*

*Labs. Corp.*, 859 F.2d 878, 888 (Fed. Cir. 1988)). "Conception is defined as the formation in the mind of the inventor, of a definite and permanent idea of the complete and operative invention, as it is hereafter to be applied in practice." *Id.* (internal quotations omitted) (quoting *Hybritech Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1376 (Fed. Cir. 1986)). "Conception is complete when 'the idea is so clearly defined in the inventor's mind that only ordinary skill would be necessary to reduce the invention to practice, without extensive research or experimentation.' " *Id.* (quoting *Burroughs Wellcome*, 40 F.3d at 1228). The Federal Circuit has explained the test for conception as follows:

> [T]he test for conception is whether the inventor had an idea that was definite and permanent enough that one skilled in the art could understand the invention; the inventor must prove his conception by corroborating evidence, preferably by showing a contemporaneous disclosure. An idea is definite and permanent when the inventor has a specific, settled idea, a particular solution to the problem at hand, not just a general goal or research plan he hopes to pursue. The conception analysis necessarily turns on the inventor's ability to describe his invention with particularity. Until he can do so, he cannot prove possession of the complete mental picture of the invention. These rules ensure that patent rights attach only when an idea is so far developed that the inventor can point to a definite, particular invention.

*Burroughs Wellcome*, 40 F.3d at 1228 (internal citations omitted). The Federal Circuit has also instructed district courts to interpret § 256 " 'broadly' to protect the 'public interest of assuring correct inventorship designations on patents.' " *Pei-Herng Hor v. Ching-Wu Chu*, 699 F.3d 1331, 1336 (Fed. Cir. 2012) (quoting *Chou v. Univ. of Chi.*, 254 F.3d 1347, 1358 (Fed. Cir. 2001)). With these principles in mind, the Court turns to Defendants' motion to dismiss the § 256 claim.

Defendants argue Quintel's § 256 claim fails to put them on notice of any claims of the '647 Patent to which Quintel's employee, David Barker, made an inventive contribution,

including details of when the concept was developed, or how, or where the concept fits into the '647 Patent claims and how it is novel and non-obvious. Defendants maintain that the allegations at most plausibly suggest that David Barker had "the germ of an idea" not the required "definite and permanent idea of the complete and operative invention" necessary to be regarded as an inventor. *See Bianco v. Globus Med., Inc.*, 30 F. Supp. 3d 565, 579 (E.D. Tex. 2014); *Ethicon, Inc.*, 135 F.3d at 1460. Defendants further maintain that Quintel's first amended complaint fails to identify a single claim to which David Barker made an inventive contribution or how those inventions were conceived jointly with Dr. Ma. Finally, Defendants argue that the claim fails because Quintel does not present corroborating evidence of conception.

Defendants' arguments are not well taken. As Quintel points out, the first amended complaint pleads facts showing that David Barker, Quintel's chief technology officer, conceived of a contribution to the Per User Tilt Concept as described and claimed in the '647 Patent. Pl.'s Am. Compl. [20] ¶ 110. In particular, Quintel alleges that "David Barker . . . conceived of a concept to improve reception between an antenna providing cellular telephone and/or data services, and a mobile receiving telephone and/or data services from the antenna (the 'Per User Tilt Concept')" and that "[t]he Per User Tilt Concept invented by David Barker provided for an antenna to tilt its signals to a specific mobile receiving services." *Id* ¶ 13. Quintel further alleges that "[t]he '647 Patent includes claims for user specific antenna down tilt, which is a characteristic of the Per User Tilt Concept" and that "the '647 Patent includes one or more claims to which David Barker made an inventive contribution . . . ." *Id.* ¶ 52.

Furthermore, Quintel alleges "corroborating evidence of conception," *see Burroughs Wellcome*, 40 F.3d at 1228, by referencing and quoting numerous emails between Dr. Ma and Joseph Veni, Quintel's vice president of sales in the Americas, and other communications

between Dr. Ma and David Barker, wherein Quintel employees addressed Dr. Ma's requests for data concerning Quintel's antenna technology, "including, but not limited to, a full simulation package including Quintel's Per User Tilt network simulation results and sample antenna patterns" and "additional information and schematics concerning the Per User Tilt Concept," as well as "additional confidential and proprietary information regarding Quintel's antenna technology." *See* Pl.'s Am. Compl. [20] ¶¶ 32–33, 43.

Quintel avers that after David Barker shared his concept with Huawei and Dr. Ma, Huawei filed for the '647 Patent with the USPTO, listing the sole named inventor of the patent as Dr. Ma, Huawei's principal engineer, and claiming ownership of the '647 Patent in its entirety. *Id.* ¶¶ 110–11, 113. Quintel further avers that "[b]y virtue of David Barker's conception of the idea and sharing that conception with Huawei and Dr. Ma during the parties' collaboration, David Barker is and should rightfully be named as an inventor of the '647 Patent." *Id.* ¶ 112. Quintel alleges that it, "as assignee of the relevant rights held by David Barker, is entitled to an undivided interest in all rights, title[,] and interest as co-owner and tenant-in-common in and to the '647 Patent and any U.S. or foreign application or issued patents claiming priority therefrom or related thereto." *Id.* ¶ 114. Quintel further alleges entitlement to a declaratory judgment that David Barker is an inventor and Quintel is a co-owner of the '647 Patent and any and all U.S. or foreign applications or issued patents claiming priority therefrom or relating thereto. *Id.* ¶¶ 116–17.

Based on all of the foregoing, the Court finds that Quintel has alleged "enough facts to state a [§ 256] claim to relief that is plausible on its face" and has "raise[d] a right to relief above the speculative level." *See Twombly*, 550 U.S. at 555, 570, 127 S. Ct. 1955. In sum, Quintel's 35

U.S.C. § 256 claim survives the motion to dismiss; thus, Defendants' motion to dismiss is denied on this ground.

### III.    Conclusion

In sum, Defendants' motion to dismiss [25] is GRANTED IN PART AND DENIED IN PART AS FOLLOWS:

(1) The Rule 12(b)(2) challenges are DENIED WITHOUT PREJUDICE TO REFILING;

(2) Jurisdictional discovery is warranted pertaining to the issue of personal jurisdiction over Dr. Zhengxiang Ma, as explained more fully in the body of this memorandum opinion and the accompanying order;

(3) The Rule 12(b)(6) challenges pertaining to the statutes of limitations are DENIED WITHOUT PREJUDICE to being raised in a future motion for summary judgment; and

(4) The motion is GRANTED only with respect to the accounting claim and to the extent any breach of contract claim was asserted against Dr. Zhengxiang Ma in his individual capacity;

(5) The accounting claim is DISMISSED for failure to state a claim;

(6) The breach of contract claim, only insofar as it is asserted against Dr. Zhengxiang Ma in his individual capacity, is DISMISSED as conceded by Plaintiff Quintel Technology Ltd.;

(7) The motion to dismiss is DENIED in all other respects; and

(8) The following claims survive the motion to dismiss: (I) breach of contract claim against Defendants Huawei Technologies USA, Inc.; FutureWei Technologies, Inc.; and Huawei Technologies Co., Ltd.; (II) misappropriation of trade secrets claim

against all Defendants; (III) unfair competition by misappropriation claim against all Defendants; (IV) common law fraud and fraud in the inducement claim against all Defendants; (V) promissory estoppel claim against all Defendants; (VI) unjust enrichment claim against all Defendants; and (VII) correction of patent inventorship—35 U.S.C. § 256 claim against all Defendants.

A separate order in accordance with this opinion shall issue this day.

THIS, the 27ᵗʰ of September, 2016.

Glen H. Davidson

SENIOR U.S. DISTRICT JUDGE