IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| QUINTEL TECHNOLOGY, LTD. § <br> § <br> *Plaintiff,* § <br> § <br> V. § <br> § <br> HUAWEI TECHNOLOGIES USA, INC., ET § <br> AL. § <br> § <br> *Defendants.* § | CASE NO. 4:15cv307 <br> Judge Mazzant/Magistrate Judge Craven |

**ORDER ADOPTING REPORT AND**
**RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE**

Came on for consideration the report of the United States Magistrate Judge in this action, this matter having been referred to the United States Magistrate Judge pursuant to 28 U.S.C. § 636. On March 1, 2017, the Magistrate Judge issued a Report and Recommendation, recommending Defendant Zhengxiang Ma's Renewed Motion to Dismiss Plaintiff's First Amended Complaint (Doc. No. 49) be denied. Zhengxiang Ma filed objections to the Report and Recommendation, and Quintel Technology Ltd. ("Quintel") filed a response to the objections. The Court conducts a *de novo* review of the Magistrate Judge's findings and conclusions.

**BACKGROUND**

On May 15, 2015, Quintel filed the above case against Huawei Technologies USA, Inc., FutureWei Technologies, Inc., Huawei Technologies Co., Ltd. (collectively "Huawei"), and Zhengxiang Ma ("Defendant" or "Dr. Ma"). In its First Amended Complaint ("FAC") filed December 1, 2015, Quintel asserts the following claims against the defendants: (1) breach of contract; (2) misappropriation of trade secrets; (3) unfair competition by misappropriation; (4)

common law fraud and fraud in the inducement; (5) promissory estoppel; (6) unjust enrichment; (7) accounting; and (8) correction of patent inventorship—35 U.S.C. § 256.

The Court provides the following, as outlined in the Report and Recommendation. Quintel is a United Kingdom company that "designs, develops, and delivers advanced high-efficiency, high-performance antenna solutions for mobile operators to improve their delivery of wireless network services" and "has developed cutting-edge, proprietary antenna technology to better serve wireless network operators and users." FAC (Doc. No. 20), ¶¶ 2, 10. Futurewei and Huawei Technologies USA are Texas corporations, and Huawei Technologies China is a Chinese corporation. *Id*. ¶¶ 3-5. Collectively, Huawei is "a telecommunications equipment maker and, among other things, manufactures base stations for wireless networks." *Id.* ¶ 11.

Around July of 2008, David Barker, the chief technology officer and an employee of Quintel, "conceived of a concept to improve reception between an antenna providing cellular telephone and/or data services, and a mobile receiving telephone and/or data services from the antenna" (the "Per User Tilt Concept"). *Id.* ¶¶ 12–13. "In 2009, because of potential synergies in their respective business models, Quintel and Huawei explored whether they might partner together to service mobile operators in the wireless network industry." *Id.* ¶ 14. Quintel advised Huawei "the parties must execute a non-disclosure agreement ('NDA') in advance of [a September 15, 2009] meeting." It sent a draft NDA to Huawei. *Id.* ¶ 16.

On September 21, 2009, representatives from Futurewei and Quintel met in California and executed a mutual NDA. *Id.* ¶ 20. A copy of the NDA is attached to the FAC. (Doc. No. 20-1). Dr. Ma participated in this meeting by telephone from New Jersey. *Id.* ¶ 30. Among other things, the NDA provides that "the recipient of confidential information agrees to accept such information

2

'solely for use in connection with Recipient's business discussions with the disclosing party concerning potential areas of cooperation.'" *Id.* ¶ 22 (quoting Doc. No. 20-1, ¶ 2).

According to Quintel, after entering into the NDA, Quintel began to share confidential and proprietary information and trade secrets, including its proprietary antenna technology, with Huawei and Dr. Ma. *Id.* ¶¶ 20, 30–45. In particular, Quintel showed them how the "Per User Tilt Concept" works and provided some additional confidential and proprietary information regarding Quintel's antenna technology, including information about Quintel's patents—all information Quintel contends was information protected under the NDA. Quintel alleges the parties "ultimately could not agree on final terms to any business or partnering relationship" and that "despite its professed interest, Huawei never intended to enter into a partnering relationship with Quintel." *Id.* ¶¶ 44–46.

Quintel alleges that "[a]lthough Huawei had concealed it, Quintel recently learned that" FutureWei "filed a provisional patent application with the United States Patent and Trademark Office ('USPTO') . . . on or about October 30, 2009" wherein FutureWei "sought to establish priority for patent protection of an invention that is based on Quintel's confidential and proprietary antenna technology that Quintel had shared under the terms of the . . . NDA," including "a confidential Quintel slide that Quintel had provided to Dr. Ma on September 22, 2009." *Id.* ¶ 49. Quintel additionally alleges that "Dr. Ma is listed as the sole inventor on the provisional patent application." *Id.*

According to Quintel, approximately one year later, FutureWei filed a nonprovisional patent application with the USPTO, which claimed the benefit of its provisional patent application "seeking protection of an invention based on the Quintel confidential and proprietary antenna technology that Qunitel had shared under the terms of the . . . NDA." *Id.* ¶ 50. On November 18, 2014, the USPTO

3

issued FutureWei Patent No. US 8,891,647 B2 ("the '647 patent"), entitled "System and Method for User Specific Antenna Down Tilt in Wireless Cellular Networks." *Id.* ¶ 52. The sole inventor of the patent is listed as Zhengxiang Ma of Summit, New Jersey, and FutureWei Technologies, Inc. of Plano, Texas is listed as the assignee of the patent. The '647 patent includes claims for user specific antenna down tilt, which Quintel alleges is a characteristic of the Per User Tilt Concept. Specifically, Quintel alleges the '647 patent includes one or more claims to which David Barker made an inventive contribution, but the '647 patent failed to name David Barker as a joint inventor. *Id.*

Quintel alleges it had no reason to suspect that Huawei was misappropriating, using, and disclosing Quintel's confidential and proprietary antenna technology in contravention of the September 21, 2009 NDA, because Huawei concealed its actions and continued to engage Quintel in discussions about a potential business relationship. *Id.* ¶ 51. Quintel alleges the defendants' actions came to light on March 16, 2015 when the European Patent Office ("EPO") rejected a patent application submitted by Quintel, citing the prior publication of FutureWei's United States application that resulted in the '647 patent as prior art. *Id.* ¶ 54. Quintel maintains the information was "fraudulently concealed" prior to that date, "in part by [the defendants'] continuing to feign interest in a partnership agreement." *Id.* ¶ 48.

## MOTION TO DISMISS

On December 30, 2015, the defendants filed a motion to dismiss the FAC, asserting the Court lacks personal jurisdiction over Dr. Ma; six of the eight causes of action are time barred; and Quintel fails to state a claim upon which relief can be granted on all claims except the breach of contract claim against Huawei. (Doc. No. 25). On September 27, 2016, District Judge Davidson entered a Memorandum Opinion Granting in Part and Denying in Part Defendants' Motion to Dismiss. (Doc.

4

No. 42). Judge Davidson denied the part of the defendants' motion to dismiss regarding lack of personal jurisdiction without prejudice and with leave to reurge with the results of targeted jurisdictional discovery on the issue of whether the Court has personal jurisdiction over Dr. Ma.[1] Dr. Ma filed the current renewed motion to dismiss on December 15, 2016, asserting Quintel has failed to establish any basis for the exercise of personal jurisdiction over him in Texas.

## REPORT AND RECOMMENDATION

On March 1, 2017, the Magistrate Judge issued a Report and Recommendation, recommending Defendant's renewed motion to dismiss be denied. Noting Quintel relies on specific personal jurisdiction rather than general jurisdiction, the Magistrate Judge agreed with the earlier finding of Judge Davidson that "the alleged contacts between Dr. Ma and Texas arose from the alleged facts giving rise to this suit and are related to the relationship between Dr. Ma and the forum state, as well as the alleged wrongful conduct directed at Quintel."[2] Report and Recommendation

---

[1] Judge Davidson granted the motion only with respect to the accounting claim and to the extent any breach of contract claim was asserted against Dr. Ma in his individual capacity. The breach of contract claim against Huawei and the following claims against all defendants survived the motion to dismiss: (1) misappropriation of trade secrets; (2) unfair competition by misappropriation; (3) common law fraud and fraud in the inducement; (4) promissory estoppel; (5) unjust enrichment; and (6) correction of patent inventorship–35 U.S.C. § 256.

[2] Accepting as true the facts alleged by Quintel, Judge Davidson found Quintel had made a preliminary, but not prima facie, showing of acts by which Dr. Ma "purposefully availed [him]self of the privilege of conducting activities within the forum state of Texas, so as to invoke the benefits and protections of its laws." *See Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 222 (5th Cir. 2012). Judge Davidson ordered jurisdictional discovery and noted Quintel must show Dr. Ma undertook some activity in, or purposefully directed some act at, Texas, <u>and that its claims arise out of or relate to those acts</u>" in order to establish this Court has specific jurisdiction over Dr. Ma. Doc. No. 42 at pg. 11 (emphasis in original). According to Judge Davidson, Dr. Ma's alleged wrongful actions, even if performed outside of Texas, may be sufficient for purposes of minimum-contacts analysis, if the actions "had foreseeable effects in the forum and were directed at the forum." *Id*. at pg. 12 (quoting *Wein Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 212 (5th Cir. 1999)).

at pg. 16. After considering the evidence submitted by the parties, the Magistrate Judge found Dr. Ma purposefully directed his conduct towards Texas in relation to the subject matter of this litigation, namely Quintel and its disclosures under the NDA. According to the Magistrate Judge, "[t]hrough correspondence, travel, and agreeing to be subject to suit in Texas in relation to his employment, Quintel has established a prima facie case of specific jurisdiction based on the totality of Dr. Ma's contacts with Texas." *Id.* at pg. 23.

Turning to whether the exercise of personal jurisdiction over Dr. Ma in Texas is fair and reasonable, the Magistrate Judge found this is not one of the rare situations in which Quintel's interests and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum. She concluded the relevant "factors weigh in favor of the fairness and reasonableness of requiring Dr. Ma to defend this suit in Texas." *Id*. at pg. 25.

**OBJECTIONS**

Dr. Ma filed objections to the Report and Recommendation. Defendant has not objected to any specific factual findings in the Report and Recommendation. *See* Doc. No. 65 at pg. 1-2. According to Defendant, the Report and Recommendation is erroneous for the following four reasons: (1) the Report wrongly treats Dr. Ma's "random and incidental contacts with the forum – including emails with coworkers located in Texas – as purposeful contacts supporting jurisdiction;" (2) it incorrectly relies upon Futurewei's contacts with the forum to support the exercise of personal jurisdiction over Dr. Ma, and due process prohibits an employer's contacts with the forum from serving as a basis for the exercise of personal jurisdiction over an employee; (3) it improperly relies on Dr. Ma's employment agreement with Futurewei to support the exercise of personal jurisdiction

6

when Quintel's "cause of action has no relationship to Dr. Ma's employment agreement;" and (4) it erroneously concludes that the exercise of personal jurisdiction over Dr. Ma would be fair and reasonable. Doc. No. 65 at pg. 2. Dr. Ma asserts the Court should dismiss the FAC in its entirety as to Dr. Ma because his contacts with the forum are too sporadic, fortuitous, and attenuated to support the exercise of personal jurisdiction.

In its response, Quintel argues Dr. Ma "rehashes the same meritless arguments and fails to identify any error in the Report and Recommendation." Doc. No. 68 at pg. 1. Acknowledging the four issues raised by Dr. Ma are subject to *de novo* review by the Court, Quintel argues all of the findings of fact and conclusions of law to which Dr. Ma did not object are subject to review only for plain error. *Id.* at pg. 2 (citing *Ortiz v. City of San Antonio Fire Dep't.*, 806 F.3d 822, 825-26 (5th Cir.2015)). According to Quintel, the undisputed facts show Dr. Ma purposefully directed his conduct concerning the subject matter of this lawsuit towards Texas.

Quintel further asserts the cases relied upon by Dr. Ma concern disputes between employers and former employees or contractors and "illustrate the basic principle that personal jurisdiction must be based on the purposeful conduct of the defendant, not the location of the plaintiff." Doc. No. 68 at pg. 3. Quintel maintains Dr. Ma has not disputed the facts demonstrating his repeated contacts with this forum in relation to the subject matter of this litigation and has thus failed to show any error in the Report and Recommendation. *Id.* at pg. 4.

**APPLICABLE LAW**

Under the Federal Rules of Civil Procedure, a federal court sitting in diversity may exercise jurisdiction over a non-resident defendant only if permitted under state law. *Transplace Texas, L.P. v. Higgins*, No. 4:10-CV-428, 2011 WL 623172, at *2 (E.D. Tex. Jan. 19, 2011), *report and*

7

*recommendation adopted*, No. 4:10-CV-428, 2011 WL 601142 (E.D. Tex. Feb. 11, 2011) (citing A*lpine View Co. v. Atlas Copco AB,* 205 F.3d 208, 214 (5th Cir.2000)). The reach of a state court's jurisdiction is defined by: (1) the state's long-arm statute; and (2) the Due Process Clause of the Fourteenth Amendment. *Johnston v. Multidata Sys. Int'l Corp.,* 523 F.3d 602, 609 (5th Cir.2008). The Texas long-arm statute authorizes the exercise of jurisdiction over non-residents "doing business" in Texas. *Transplace Texas, L.P.*, 2011 WL 623172, at *2 (quoting *Gundle Lining Constr. Corp. v. Adams County Asphalt, Inc.,* 85 F.3d 201, 204 (5th Cir.1996)). The Texas Supreme Court has interpreted the "doing business" requirement broadly, allowing the long-arm statute to reach as far as the United States Constitution permits. *Transplace Texas, L.P.*, 2011 WL 623172, at *2 (citations omitted). Thus, the two-step inquiry is actually one federal due process analysis. *Johnston,* 523 F.3d at 609.

A court's exercise of personal jurisdiction over a non-resident defendant comports with constitutional due process requirements when (1) the defendant "purposefully availed" itself of the benefits and protections of the forum state by establishing "minimum contacts" with that state, and (2) the exercise of personal jurisdiction does not offend traditional notions of "fair play and substantial justice." *Transplace Texas, L.P.*, 2011 WL 623172, at *2 (citations omitted). The "minimum contacts" prong is further subdivided into contacts that confer "specific jurisdiction" and those that confer "general jurisdiction," which is not at issue here. *Id.* at *3.

When a plaintiff asserts specific jurisdiction over a non-resident defendant, the court must determine (1) whether the defendant purposefully directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) whether the controversy arises out of or is related to the defendant's forum-related contacts; and (3) whether the exercise of

personal jurisdiction would be reasonable and fair." *Guidry*, 188 F.3d at 625. The focus of the specific jurisdiction inquiry is on "the relationship between the defendant, the forum, and the litigation." *Transplace Texas, L.P.*, 2011 WL 623172, at *3 (quoting *Freudensprung v. Offshore Technical Servs., Inc.,* 379 F.3d 327, 343 (5th Cir.2004)). Contacts that are "random, fortuitous, or attenuated" do not satisfy the minimum contacts requirement. *Transplace Texas, L.P.*, 2011 WL 623172, at *3 (quoting *Moncrief Oil Int'l, Inc. v. OAO Gazprom,* 481 F.3d 309, 312 (5th Cir.2007)).

If the plaintiff makes a prima facie showing of minimum contacts, then the burden shifts to the defendant to show the court's exercise of jurisdiction would not comply with "fair play" and "substantial justice." *Freudenspreung,* 379 F.3d at 343. In making a fundamental fairness determination, the court must consider: (1) the burden on the defendant; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the several states' shared interest in furthering fundamental social policies. *Transplace Texas, L.P.*, 2011 WL 623172, at *3 (citing *Stroman Realty, Inc. v. Wercinski,* 513 F.3d 476, 487 (5th Cir.2008)).

## *DE NOVO* REVIEW

In considering whether Dr. Ma purposefully directed his conduct concerning the subject matter of this case towards Texas, the Magistrate Judge set forth the following evidence relied upon by Quintel. In November 2009, Dr. Ma referenced Quintel's "per user tilt" in correspondence with colleagues, as well as an upcoming meeting in Texas. Dr. Ma then traveled to Texas to discuss Quintel with Dr. Du on November 20, 2009. Ma Dep. at 19:6-24, 23:12-13, 99:12-100:2, 100:4-11; Pl. Exs. H & K. While in Texas in November 2009, Dr. Ma sent an email to AT&T regarding Quintel's technology. Ma Dep. at 90:17-91:10.

9

During his deposition, Dr. Ma acknowledged directing correspondence concerning Quintel to colleagues located in Texas, including Patrick Kaiser and Dr. Du. Pl. Ex. B, Response 2; *see also* Ma Dep. at 19:6-24, 27:23-28:9, 44:23-45:18. Quintel has produced other examples of communications involving substantive discussions of Quintel's technology. *See* Pl. Exs. K, M-W. For example, in December of 2009, Dr. Ma sent multiple emails to Mr. Kaiser explaining the benefits of Quintel's "innovation" and its "novel" technology. Pl. Exs. M, N. In May of 2010, Dr. Ma sought ideas from Mr. Kaiser on how to figure out a way to "setup something with [Qunitel's] antenna here in the US . . . without them knowing about it." Pl. Ex. T.

The Magistrate Judge found Dr. Ma's communications with individuals residing in Texas concerning Quintel and the confidential information at issue are sufficient to subject Dr. Ma to specific personal jurisdiction in this case. The Magistrate Judge also noted Dr. Ma's purposeful outreach to Texas concerned the alleged misappropriated information at issue in this case; thus, Dr. Ma's communications with Texas relate directly to Quintel's claims for misappropriation of trade secrets, fraud, correction of inventorship, and the related causes of action.

Finally, even though this case does not involve a dispute between Dr. Ma and his employer, the Magistrate Judge considered Dr. Ma's employment contract as a relevant contact for jurisdictional purposes, noting the contract governs the disclosure of confidential information at issue and contains a choice of law provision. *See Transplace*, 2011 WL 623172, at *11-12 ("The Court believes that Higgins, through his employment agreement, which included clauses addressing disclosure of confidential information and a non-solicitation agreement, contemplated continuing obligations and wide-reaching contacts with Texas.") (internal quotations and citations omitted); *see also Burger King*, 471 U.S. at 473 (noting those who "reach out beyond one state and create

continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other State for the consequences of their activities") (internal quotation marks omitted).

As pointed out by Quintel in response to Defendant's objections, the Magistrate Judge summarized Dr. Ma's contacts with Texas as follows:

1. Dr. Ma repeatedly directed emails to his colleagues and others in Texas regarding Quintel and its technology.
2. Dr. Ma reached out to colleagues and counsel in Texas regarding the October 30, 2009 provisional patent application, the related October 29, 2010 non-provisional patent application, and the subsequently issued '647 patent.
3. Dr. Ma then affirmatively assigned his rights in the '647 patent to his Texas-based employer.
4. Dr. Ma entered into an employment agreement with FutureWei, a Texas corporation, in which he consented to the exclusive forum, venue, and personal jurisdiction of Texas courts in Collin County, for any action "in any way related to" his employment agreement. Dr. Ma's employment agreement also contained a clause binding Dr. Ma to protect the confidentiality of information received from third parties.
5. Dr. Ma received confidential information from Quintel in the course of his employment and acknowledged he was bound to protect the confidentiality of that information pursuant to the NDA between Quintel and FutureWei.
6. Dr. Ma traveled to Texas for work, including in November 2009, when he met with Dr. Jiancheng Du and discussed Quintel's technology.

In his objections, Dr. Ma asserts the Magistrate Judge erred in equating Futurewei's contacts with Texas with his own. Specifically, Dr. Ma states he did not prepare the provisional application at issue here or prosecute it. Rather, Futurewei's counsel did. Doc. No. 65 at pg. 18. However, as noted by Quintel, Dr. Ma does not dispute he reached out to colleagues in Texas regarding the October 30, 2009 provisional patent application, the related October 29, 2010 non-provisional patent application, and the subsequently issued '647 patent. As pointed out by Quintel, Dr. Ma is the named inventor of the '647 patent and acknowledges in his objections that he "communicated with Futurewei attorneys regarding the filing of the provisional application." Doc. No. 65 at pg. 6 n.3.

11

These communications relate to Quintel's causes of action concerning the defendants' alleged use and disclosure of Quintel's confidential information in the provisional application which resulted in the '647 patent.

The Magistrate Judge did not confuse Dr. Ma's contacts with those of his employer, recognizing that Quintel did not claim that Dr. Ma "is subject to jurisdiction solely because he is employed by a Texas company." Report and Recommendation at pg. 15. Rather, the Magistrate Judge properly considered Dr. Ma's communications with Texas concerning the filing of the provisional application as one of several factors supporting personal jurisdiction over Dr. Ma.

The Court is also not convinced the Magistrate Judge accorded undue weight to Dr. Ma's employment agreement with Futurewei. According to Dr. Ma, the Magistrate Judge's recommendation is premised on the erroneous assumption that his employment contract relates to this dispute. Dr. Ma asserts this is not an employment dispute between Dr. Ma and Futurewei, and the forum selection clause and other provisions of his employment agreement have no bearing on the claims made by Quintel against him. Doc. No. 65 at pg. 7. In full, the relevant clause of Dr. Ma's employment agreement provides as follows: "I hereby irrevocably agree that the exclusive forum of any suit, action, or other proceeding arising out of or in any way related to this Agreement shall be in the state or federal courts in Texas, and I agree to the exclusive personal jurisdiction and venue of any court [in] Collin County Texas." Doc. No. 60-8, ¶ 12(b). According to Quintel, this provision goes beyond suits between Dr. Ma and Futurewei and extends to any action "in any way related to"

his employment agreement, as recognized by the Magistrate Judge.³ Report and Recommendation at pg. 22.

The Magistrate Judge properly recognized that Dr. Ma's employment contract was relevant for jurisdictional purposes because it governed the disclosure of the confidential information at issue and signaled his assent to suit in Texas. *See Transplace Tex., L.P. v. Higgins*, No. 10-cv-428, 2011 U.S. Dist. LEXIS 13719, at *11-12 (E.D. Tex. Jan. 19, 2011). Dr. Ma received confidential information from Quintel in the course of his employment, thus implicating Paragraph Two of his employment agreement which requires Dr. Ma to maintain the confidentiality of information he receives from third parties. Doc. No. 60-8, ¶ 2. Dr. Ma's employment agreement also requires him to assign any patent rights to his employer, as he did with the '647 patent that is at issue here. Doc. No. 60-8, ¶ 3.

In addition, the Court notes the Magistrate Judge considered Dr. Ma's employment contract as one of his many undisputed contacts with Texas in relation to this case. She did not assign this factor undue weight or otherwise err in considering it as one of many factors in the fact-intensive minimum contacts analysis.

Although Dr. Ma argues the Magistrate Judge treated "fortuitous" contacts with the forum as purposeful, the Court agrees with the Magistrate Judge that this is not a situation where the forum contacts "bear only a superficial relation to the misconduct alleged." *The Leader's Inst., LLC v. Jackson*, No. 3:14-CV-3572-B, 2015 WL 4508424, at *19 (N.D. Tex. July 24, 2015)("specific jurisdiction may exist where there are only isolated or sporadic contacts"). Rather, as noted by the

---

³ As pointed out in the Report and Recommendation, unlike any other paragraph in his employment agreement, Dr. Ma initialed directly beneath this clause in the agreement to signal his specific assent. Doc. No. 60-8, ¶ 12(b).

Magistrate Judge, the facts demonstrate Dr. Ma reached out to Texas in relation to the subject matter of Quintel's claims, and Dr. Ma could have reasonably anticipated being called to answer these claims in Texas.

The Court also agrees with the Magistrate Judge that Dr. Ma falls short of satisfying his burden to establish that the exercise of personal jurisdiction would be unfair or unreasonable. The Court has carefully reviewed the relevant briefing, the Report and Recommendation, the objections, and the response to the objections and is of the opinion the findings and conclusions of the Magistrate Judge are correct. The Court adopts the Magistrate Judge's report as the findings and conclusions of the Court. It is therefore

**ORDERED** that Defendant Zhengxiang Ma's Renewed Motion to Dismiss Plaintiff's First Amended Complaint (Doc. No. 49) is hereby **DENIED**.

**SIGNED this 12th day of April, 2017.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE