FILED UNDER SEAL

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| QUINTEL TECHNOLOGY LTD., | § | |
| | § | |
| PLAINTIFF, | § | |
| | § | |
| v. | § | **NO. 4:15-CV-00307-ALM-CMC** |
| | § | |
| HUAWEI TECHNOLOGIES USA, INC., | § | **FILED UNDER SEAL** |
| FUTUREWEI TECHNOLOGIES, INC., HUAWEI | § | |
| TECHNOLOGIES CO., LTD., AND ZHENGXIANG | § | |
| MA, | § | |
| | § | |
| DEFENDANTS. | § | |

## PLAINTIFF QUINTEL TECHNOLOGY LTD.'S MOTIONS IN LIMINE

FILED UNDER SEAL

# TABLE OF CONTENTS

Motion in Limine No. 1: The Court Should Preclude Defendants from Offering Expert Opinion Testimony Based Upon Untranslated or Undisclosed Documents ...................................................1

    A.        Defendants' Experts Reliance on Untranslated Documents ...................................3

    1.        Stuart A. Long.......................................................................................3

    2.        W. Christopher Bakewell......................................................................5

    B.        Reliance on Undisclosed Documents.......................................................8

Motion in Limine No. 2: The Court Should Preclude Defendants from Introducing Evidence or Argument Contradicting Their Admission Regarding AAU 3902 and User Specific Tilt..............9

Motion in Limine No. 3:  The Court Should Preclude Defendants from Introducing Evidence or Argument Regarding AAU 3902 Sales for 2017 Unless Sales Data is Produced by January 12, 2018............................................................................................................................................12

Motion in Limine No. 4: The Court Should Preclude Defendants' Experts Long and Bakewell from Testifying that the UST Feature is Available Only in the AAU 3902 Product....................13

Motion in Limine No. 5: The Court Should Preclude Undisclosed Expert Testimony and Opinions Defendants' Experts Disavowed During Deposition Testimony ...................................15

Motion in Limine No. 6: The Court Should Preclude Defendants from Eliciting Testimony Regarding Source Code or Inspection of the AAU 3902 ............................................................18

Motion in Limine No. 7: The Court Should Preclude Defendants from Reading, Referencing, or in Any Way Using Quintel's Privileged Document ....................................................................20

Motion in Limine No. 7:  The Court Should Preclude Huawei From Offering Evidence of Plaintiff's Corporate Parentage or Acquisition..........................................................................21

Motion in Limine No. 8:  The Court Should Preclude Huawei From Offering Evidence of Plaintiff's Corporate Parentage or Acquisition..........................................................................21

Motion in Limine No. 9: The Court Should Preclude Defendants From Calling as a Witness Quintel's Trial Counsel, Jeffrey Wadsworth ..............................................................................22

FILED UNDER SEAL

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*999 v. C.I.T. Corp.,*
  776 F.2d 866 (9th Cir. 1985) .................................................................................11

*AAA v. AAA Legal Clinic of Jefferson Crooke, P.C.,*
  930 F. 2d 1117 (5th Cir. 1991) ..............................................................................11

*Adams Labs., Inc. v. Jacobs Eng'g Co.,*
  761 F. 2d 1218 (7th Cir. 1985) ..............................................................................22

*AMW Sports, LLC v. State Farm Fire & Cas. Co.,*
  No. 10- cv-654, 2012 U.S. Dist. LEXIS 2438 (M.D. La Jan. 9, 2012) ...................14

*Armour v. Knowles,*
  512 F. 3d 147 (5th Cir. 2007) ................................................................................11

*Barnes v. BTN, Inc.,*
  555 Fed. Appx. 281 (5th Cir. 2014).........................................................................1

*Daubert v. Merrell Dow Pharm., Inc.,*
  43 F.3d 1311 (9th Cir. 1995) ..............................................................................2, 7

*Daubert v. Merrell Dow Pharms., Inc.,*
  509 U.S. 579 .............................................................................................................2

*Gotlin v. Lederman,*
  No. 04-cv-3736, 2010 U.S. Dist. LEXIS 43101 (E.D.N.Y. May 3, 2010) ...............8

*Guillory v. Domtar Indus.,*
  95 F.3d 1320 (5th Cir. 1996) ................................................................................14

*Hickman v. Taylor,*
  329 U.S. 495 (1947).................................................................................................22

*Huss v. Gayden,*
  571 F. 3d 442 (5th Cir. 2009) ..................................................................................2

*Keller v. United States,*
  58 F. 3d 1194 (7th Cir. 1995) ................................................................................11

*Kennedy v. Collagen Corp.,*
  161 F.3d 1226 (9th Cir. 1998) ..................................................................................2

FILED UNDER SEAL

*Knight v. Kirby Inland Marine Inc.*,
    482 F. 3d 347 (5th Cir. 2007) .........................................................................7, 8

*Kumho Tire Co. v. Carmichael*,
    526 U.S. 137 (1999)...........................................................................................2

*MasForce Eur., BVBA v. MEC3 Co.*,
    No. 8:11-cv-1814, 2013 U.S. Dist. LEXIS 200138 (M.D. Fla. Dec. 4, 2013) ........8

*Patel v. Patel*,
    No. 14-cv-2909, 2016 U.S. Dist. LEXIS 68446 (E.D. Pa. May 25, 2016).............11

*Shelton v. Am. Motors Corp.*,
    805 F. 2d 1323 (8th Cir. 1986) .........................................................................23

*Sparling v. Doyle*,
    No. 13-cv-323, 2015 U.S. Dist. LEXIS 97204 (W.D. Tex. July 27, 2015)............15

*Tyco Healthcare Grp. LP v. Applied Med. Res. Corp.*,
    No. 9:09-cv-176, 2011 U.S. Dist. LEXIS 154685 (E.D. Tex. Sept. 23, 2011).......15

*Witt v. Chesapeake Exploration, L.L.C.*,
    No. 2:10-cv-22-, 2011 U.S. Dist. LEXIS 76033 (E.D. Tex. July 13, 2011)...........15

**Other Authorities**

Fed. R. Civ. P Rule 26 ...............................................................................................23

Fed. R. Civ. P 26(a)(2)(B)(ii)......................................................................................9

Fed. R. Civ. P. 26(e)(1)(A) .........................................................................................12

Fed. R. Civ. P Rule 30(b)(6) .......................................................................................10

Fed. R. Civ. P 34(b) ....................................................................................................10

Fed. R. Civ. P 36 ........................................................................................................11

Fed. R. Civ. P 37(c)(1)..........................................................................................9, 12, 23

Fed. R. Evid. 401 ........................................................................................................22

Fed. R. Evid 402 .........................................................................................................22

Fed. R. Evid 403 ...................................................................................................18, 20, 22

Fed. R. Evid 702 ...................................................................................................1, 2, 14

FILED UNDER SEAL

Pursuant to Local Rule CV-7 and the Third Amended Scheduling Order (Dkt. 67), Plaintiff Quintel Technology Ltd. ("Quintel") respectfully makes the following motions in limine, seeking an Order granting the following requests as against Defendants Huawei Technologies USA, Inc., FutureWei Technologies, Inc., Huawei Technologies Co., Ltd. (collectively, "Huawei") and Zhengxiang Ma.

The exhibits referenced herein are appended to the accompanying declaration of Jerauld E. Brydges dated December 22, 2017 ("Brydges Decl.").

**Motion in Limine No. 1: The Court Should Preclude Defendants from Offering Expert Opinion Testimony Based Upon Untranslated or Undisclosed Documents**

Quintel moves in limine to preclude Defendants from offering certain opinion testimony of their experts that rests on a wholly unreliable foundation: namely, the experts' purported review and reliance on documents written in Chinese, which the experts do not speak or read. Alternatively, to the extent those experts purported to rely on translations of such documents that were not disclosed in their reports, such opinion testimony should be excluded.

The admissibility of expert testimony is governed by Federal Rule of Evidence 702.  Rule 702 states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702.  The party proffering the expert testimony has the burden to establish by a preponderance of the evidence that it satisfies Rule 702.  *Barnes v. BTN, Inc.*, 555 Fed. Appx. 281, 285 (5th Cir. 2014) (internal quotations omitted).

A trial court acts in a "gatekeeper" role before admitting expert testimony at trial.  *See Huss v. Gayden*, 571 F. 2d 442, 459 (5th Cir. 2009).  In this role, it is the responsibility of the trial court to ensure not only that the testimony is relevant, but also that it rests on a reliable foundation.  *Id.*

In *Daubert*, the Supreme Court set forth a two-prong test to determine the admissibility of expert testimony: (1) whether the expert's reasoning or methodology is based on reliable principles (the reliability prong); and (2) whether the reasoning or methodology can be properly applied to the facts in issue (the relevancy prong).  509 U.S. at 592-93.

Under the first prong of *Daubert*, an expert's opinion must be sufficiently reliable.  *Id.*; FED. R. EVID. 702.  Reliability analysis ensures that "an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).  The Supreme Court in *Daubert* articulated several factors that a court should consider when evaluating reliability; however, these factors are not exclusive and a district court is given broad latitude in determining reliability.  *Kumho Tire*, 526 U.S. at 152-53; *Daubert*, 509 U.S. at 593-94.

Under the second prong of *Daubert*, the expert's testimony must be "relevant to the task at hand, . . . i.e. , that it logically advances a material aspect of the proposing party's case." *Daubert v. Merrell Dow Pharm., Inc.,* 43 F.3d 1311, 1315 (9th Cir. 1995) (quoting *Daubert*, 509 U.S. at 597).  To satisfy the relevancy requirement, the expert's opinion must help the trier of fact to reach a conclusion necessary to the case.  *Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1230 (9th Cir. 1998).  Expert testimony is not relevant if it does not allow a reasonable juror to conclude that a proposition is more likely to be true than false.  *Cf. Daubert*, 509 U.S. at 591-93.

FILED UNDER SEAL

### A.    Defendants' Experts Reliance on Untranslated Documents

Certain of the anticipated testimony of two of Defendants' experts fails this test, because Defendants cannot establish that those experts' opinions are reliable.  Specifically, to the extent Defendants' experts' opinions are based on untranslated Chinese documents, any such opinion testimony is unreliable *per se*.

### 1.    Stuart A. Long

Dr. Long was retained by Defendants to opine, among other things, that



Brydges Decl. Ex. A (Long Report ¶ 58).  In support of this opinion, he improperly relied upon a number of Chinese-language documents; he neither speaks nor reads Chinese.  *Id.* Ex. B (Long Dep. at 173:12-13; 174:12).  These documents include the following:

- Long relied on an internal Huawei presentation that he claimed showed that,

  Brydges Decl. Ex. A (Long Report ¶ 58); Ex. C (Long Dep. Ex. 13).  When asked at his deposition whether the document referred to UST, he equivocated: "not being able to read Chinese, it gives me a little difficulty.  However, I can read the math and certainly some of the math appears to be the same concepts that are in the '647 patent with the UST."  Brydges Decl. Ex. B (Long Dep. at 175:1-6).  Similarly, he could not state with certainty *what* in the document led him to believe that the presentation was from March of 2008, *id*. (Long Dep. at 176:25 - 178:9) -- a critical aspect of

3

FILED UNDER SEAL

his opinion, given the timeline Huawei alleges -- or even what led him to

understand  it was created by Wu Jiangfeng.  *Id*. (Long Dep. at 178:15-20).

- Long also claimed that ████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████     Brydges Decl. Ex. A (Long Report ¶ 61).  He cited to

that presentation, *id*. Ex. D (Long Dep. Ex. 14), among other documents, in

support of the assertion that "Huawei's efforts regarding digital beamforming pre-

date any disclosure from Quintel."  *Id*. Ex. A (Long Report ¶ 56).  That document,

however, was also largely in Chinese,  *id*. Ex. B (Long Dep. at 180:16-18), and

Long did not know whether he had a translation of the document.  *Id*. at 182:6-9.

Nevertheless, he purported in his report to quote from the document extensively -

in English.  *Id*. Ex. A (Long Report ¶ 61).  He admitted that, "without the English

version of it," he could not find those quotes in the document at issue.  Brydges

Decl. Ex. B (Long Dep. at 183:8-14).

- Dr. Long also cited to a document entitled ████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████     *Id*. Ex. A (Long Report ¶ 64); Ex. E (Long Dep. Ex. 15).   He

once again implicitly conceded that his methodology in relying on this document

was suspect when he testified he was "assuming" what it said:

> My purpose here was to simply see that this was showing that
> Huawei was -- ████████████████████████████████████████████

FILED UNDER SEAL



*Id*. Ex. B (Long Dep. at 188:16-24) (emphasis supplied).  "Not speaking

Chinese," an expert seeking a reliable methodology in forming his opinions would

not cite to documents he couldn't read and "assume" what they said.  He was even

blunter when asked whether the document showed ███████████████

████████████████████████████████████████

████████████    *Id*. at 189:23 -- 190:1 (emphasis supplied).

Dr. Long also opined that ████████████████████████████

████████████████    *Id*. Ex. A (Long Report § VII).  He supports this opinion, in

part, by citing to certain ███████████████████████████

███████    *Id*. (Long Report ¶ 46); Exs. F, G, H (Long Dep. Exs. 20-22).  Long quoted from these

reports extensively in his own report.  *Id*.  When asked at his deposition how he was able to

quote from these Chinese-language documents, he first claimed that he could not tell if they were

in Chinese or English because of the small size of the print (thereby doubling down on the

unreliability of documents that were at once illegible *and* written in Chinese) and then went on to

assert that he apparently relied on a *different* version of the documents not disclosed in his report:

"So I not only had one that was a print large enough to see, it was in English, because I don't

speak Chinese."  Brydges Decl. Ex. B (Long Dep. at 230:7-19).

## 2. W. Christopher Bakewell

W. Christopher Bakewell, Defendants' anticipated damages expert, cited in his expert

report the same internal Huawei presentation relied upon by Dr. Long, which Bakewell claimed

FILED UNDER SEAL

supported the assertion that ███████████████████████████████████████████

██████████████████████████████████   Brydges Decl. Ex. I (Bakewell

Report ¶ 73, n. 117-118); Ex. K (Bakewell Dep. Ex. 2).  Like Long, Bakewell does not read or

speak Chinese.  *Id.* Ex. J (Bakewell Dep. at 133:18-25).  And while Bakewell is not qualified to

opine or testify as to ████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

████████████████████████████   *Id.* ¶ 123.  Thus, the chain of reasoning Bakewell

employs to get to the ultimate opinion to which he plans to testify -- *i.e.,* ███████████████

███████████████████████████████████████████████████████████

███████ -- is unreliable at the outset, premised as it is, at least in part, on a document he could not

possibly comprehend.

Bakewell also opines that ███████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████

Brydges Decl. Ex. I (Bakewell Report ¶ 108).  He cited to a spreadsheet written partly in

Chinese, and when asked at his deposition what in the document supported his opinion, he

hedged as follows:

> Well, that's not totally in Chinese, actually.  There are the headings of
> categories of those things that are here.  And "UST," it seems to me,
> would show up as English here, so I wouldn't -- just because of the large

FILED UNDER SEAL

> amount of Chinese language here, this document is not entirely in Chinese, so I think that's fair for me to point out.
>
> The second thing is that there could be a translation.  I don't know whether there is or isn't.

*Id*. Ex. J (Bakewell Dep. at 163:6-16); Ex. L (Bakewell Dep. Ex. 3).  Suffice it to say, he could not point to anything in this document that supported his opinion.  And again, Bakewell relied upon this "evidence" to support his opinion that ████████████████████████████

████████████████████████

Likewise, Bakewell relied upon the same ████████████████████████████

████████████████████████████████████████

████████████████████   *Id*. Ex. I (Bakewell Report ¶ 112).  And though he purported to quote from those documents (*id*. ¶ 12 and notes 191-93), he could not point to any translation from which he might have derived such quotes.  *Id*. Ex. J (Bakewell Dep. 169:12 - 170:1; 170:16 - 171:9).  And again, these documents were used to support Bakewell's opinion that ████████████████████████████

████████████████████████████████████████

████████████████████   Brydges Decl. Ex. I (Bakewell Report ¶ 116).  These opinions go to the heart of Defendants' claim that Quintel has not suffered any damages as a result of Huawei's misappropriation.

\* \* \*

Long and Bakewell should be precluded from testifying to any of these opinions.  The Fifth Circuit has cautioned that, under *Daubert*, "the expert's testimony must be reliable *at each and every step* or else it is inadmissible."  *Knight v. Kirby Inland Marine Inc.,* 482 F. 2d 347, 354-55 (5th Cir. 2007) (emphasis supplied).  Moreover, "the reliability analysis applies to *all* aspects of an expert's testimony: the methodology, *the facts underlying the expert's opinion*, the

FILED UNDER SEAL

link between the facts and the conclusion, *et alia*." *Id*. at 355 (emphasis supplied). Here, Long's and Bakewell's opinions -- to the extent they purport to rely on documents written in a language with which they have no facility whatsoever -- are unreliable at the most basic level. Even to the extent the documents were not entirely in Chinese, these experts' reliance on them was unreasonable, since they had no basis from which they could determine the contents of the documents in their fullest context.

Thus, the Court should preclude Long and Bakewell from offering any testimony relating to the opinions set forth above, and preclude Defendants' from eliciting any such testimony. *See, e.g., MasForce Eur., BVBA v. MEC3 Co.*, No. 8:11-cv-1814, 2013 U.S. Dist. LEXIS 200138, at *16 (M.D. Fla. Dec. 4, 2013) (excluding expert testimony in part based upon expert's reliance on untranslated document); *Gotlin v. Lederman*, No. 04-cv-3736, 2010 U.S. Dist. LEXIS 43101, at *28 (E.D.N.Y. May 3, 2010) (expert opinion that purported to rely on report of doctor who himself relied on untranslated medical records "can hardly be said to be the product of reliable principles or methods nor can his opinion be said to be based on facts or data reasonably relied upon by experts in that particular field").

## B.     Reliance on Undisclosed Documents

As set forth above, in some instances Long and Bakewell made vague references to "translations" of the documents at issue, though neither could point to any specific translation that he reviewed in forming his opinions, nor were any such translations disclosed in their expert reports. Likewise, Huawei's counsel during Long's deposition appeared to assert that such translations existed (*see, e.g*, Brydges Decl. Ex. B (Long Dep. at 232:10 - 233:8)) but could not cite to any specific documents that Long reviewed. And neither expert issued an amended or supplemental report to reference translated versions of any of the documents at issue.

FILED UNDER SEAL

Thus, if Long or Bakewell actually relied on English translations of any of these documents, these same opinions should be stricken based upon Huawei's failure to disclose those translations in the reports themselves.  Federal Rule of Civil Procedure 26(a)(2)(B)(ii) requires an expert report to disclose "the facts or data considered by the witness in forming" his opinions, and Huawei's failure to identify and fully disclose such data -- in the form of English translations of the documents discussed above -- precludes Huawei from relying on those opinions at trial under Rule 37(c)(1).

**Motion in Limine No. 2: The Court Should Preclude Defendants from Introducing Evidence or Argument Contradicting Their Admission Regarding AAU 3902 and User Specific Tilt**

Quintel will offer evidence of its damages based in part on documents produced by Huawei showing its sales of the AAU 3902 product.    The damage models to which Quintel's expert, Dr. Stephen Magee, will testify are based in part upon ███████████████████ ████████████████████████████████████████████████████████ ████████████████████████ Defendants should be precluded at trial from offering any evidence to refute or contradict Huawei's binding admission in this respect.

In its Interrogatory No. 1, Quintel asked Huawei to identify each product that used or was capable of using any of the subject matter claimed in the '647 Patent, including UST.  Brydges Decl. Ex. M at 8.  Quintel also requested sales data regarding such products.  In a response dated April 21, 2016, Huawei responded that ██████████████████████████ ██████████████████████████████████████████ ████ Id. Ex. N at 5.

Quintel later served a set of Requests for Admission, including Request for Admission No. 1, which asked Huawei to ██████████████████████████

9

FILED UNDER SEAL

█████ *Id*. Ex. O at 5.  In a response dated June 30, 2017, Huawei admitted that ████████

████████████████████████████████████████████████████████████

███████████████████████████████████████ *Id*. Ex. P at 5.  In this

admission, Huawei ████████████████████████████████, nor did

it at any time seek to withdraw or modify the admission pursuant to Federal Rule of Civil

Procedure  34(b).

In the meantime, Huawei produced a number of documents showing worldwide sales for

the AAU 3902 product for the period 2013-2016, and Quintel's damages expert, Dr. Magee,

reviewed and relied upon those documents in preparing his expert report.  Likewise, on June 20,

2017, Quintel deposed Huawei's Rule 30(b)(6) designee, Li Bin, on the issue of (among other

things) Huawei's sales of the AAU 3902.  During his deposition, Mr. Li did not seek to qualify

or contradict Huawei's admission ██████████████████████████████

████████████████████████████████████████████████████████████

████████████████████ .

Nevertheless, on July 13, 2017 -- approximately one week before the parties' expert

reports were due to be served -- Huawei served a Supplemental Response to Quintel's

Interrogatory No. 1 seeking to contradict the response it had given two weeks earlier in regard to

Quintel's Request for Admission No. 1.  In that Supplemental Response, Huawei for the first

time claimed that ███████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████

█████████████████████████████████████

FILED UNDER SEAL



███████████. *Id.*  Dr. Magee's opinions, based on Huawei's admission ████████

██████████████████████████████████████████████████████████

█████████████████████████████████████████████████████.

Defendants should not be permitted at trial to avoid the effect of Huawei's binding

judicial admission by attempting to introduce evidence or argument ██████████████

█████████████████████████████████.  Quintel is entitled to rely on

Huawei's admission; "[o]nce a fact is formally admitted and thereby set aside in the discovery

process, the party requesting an admission is entitled to rely on the conclusiveness." *Armour v.*

*Knowles*, 512 F. 3d 147, 156 n. 12 (5th Cir. 2007).  Thus, "[a]n admission that is not withdrawn

or amended cannot be rebutted by contrary testimony or ignored by the district court simply

because it finds the evidence presented by the party against whom the admission operates more

credible." *AAA v. AAA Legal Clinic of Jefferson Crooke, P.C.*, 930 F. 2d 1117, 1120 (5th Cir.

1991); *see Keller v. United States*, 58 F. 3d 1194, 1200 n. 8 (7th Cir. 1995) (noting that judicial

admissions "may not be controverted at trial or on appeal."); *999 v. C.I.T. Corp.*, 776 F.2d 866,

869-70 (9th Cir. 1985) ("Evidence inconsistent with a Rule 36 admission is properly excluded.");

*Patel v. Patel*, No. 14-cv-2909, 2016 U.S. Dist. LEXIS 68446, at *20 n. 8 (E.D. Pa. May 25,

2016) ("Rule 36 prohibits a party from offering evidence inconsistent with a party's response to

a request for admission.").

Notwithstanding its service of the Supplemental Response, at no time did Huawei seek to

modify or withdraw its binding admission███████████████████.  It should not be

permitted now -- by way of reference to the Supplemental Response or any other evidence it

would seek to use a trial -- to controvert what it has already admitted.  Accordingly, any

FILED UNDER SEAL

evidence inconsistent with Huawei's response to Request for Admission No. 1 should be excluded.

**Motion in Limine No. 3:  The Court Should Preclude Defendants from Introducing Evidence or Argument Regarding AAU 3902 Sales for 2017 Unless Sales Data is Produced by January 12, 2018**

As set forth above, Dr. Magee will testify as to Quintel's damages based upon sales data produced by Huawei for the AAU 3902 product.  That sales data covers the period through December 31, 2016.  Since Huawei to date has not produced any 2017 sales data, Quintel's damages expert will testify regarding Huawei's sales of the AAU 3902 product for 2017 (and beyond) on a projected basis.

Trial is scheduled to commence as early as February 5, 2018.  Quintel anticipates that Huawei may produce, on the eve of trial, some portion of actual sales data for the AAU 3902 product for 2017, in an effort to attack Dr. Magee's projections.  Huawei should not be permitted to "ambush" Quintel in this manner.  If Huawei plans to supplement its discovery responses and produce data for 2017, Quintel should be afforded sufficient time to analyze and incorporate such data into its damage models.  *See, e.g.*, Fed. R. Civ. P. 26(e)(1)(A) (requiring party to supplement discovery responses "in a timely manner" if it learns the response is incomplete); *id*. Rule 37(c)(1) (precluding a party from using information at trial if it fails to supplement in a timely manner unless failure was substantially justified or harmless).  Thus, if Huawei intends to product actual sales data for all AAU 3902 products for 2017, it should be ordered to do so no later than January 12, 2018 or otherwise be precluded from offering at trial evidence or argument relating to its 2017 actual sales.

FILED UNDER SEAL

**Motion in Limine No. 4: The Court Should Preclude Defendants' Experts Long and Bakewell from Testifying that the UST Feature is Available Only in the AAU 3902 Product**

Huawei has taken the position in this litigation that ███████████████████████

███████████████. Quintel has sought further discovery on whether other Huawei

products implement Quintel's technology. Dkt. 176, 183. While the Magistrate Judge

recommended denial of Quintel's motion to compel in this regard (a decision to which Quintel

has filed objections, see Dkt. 183), Quintel anticipates that Dr. Long and Mr. Bakewell may offer

opinions ██████████████████████████████████. They have no basis for

such opinions, and any such testimony should be excluded.

While Dr. Long's expert report summarily concludes ███████████████████

████████████████████ his report provides no citation or source for this conclusion.

Brydges Decl. Ex. A (Long Rep. at 25). When asked for the basis for this statement during his

deposition, Dr. Long testified that his opinion was based solely on Huawei's representations to

him:

███████████████████████████████████████
███████
███████████████████████
███████████████████████████████
███████████████████████████████████
███████████████████

Brydges Decl. Ex. B (Long Dep. at 82:11-18).

Dr. Long goes on to explain that the only information he looked at was █████████████

████████████████████████████████████████████
████████████████████████████████████████
████████████████████ *Id*. Ex. B (Long Dep. 83:17-23; 74:12-75:19).

FILED UNDER SEAL

Similarly, Mr. Bakewell's report improperly states that ███████████████████

████████████████████████████████████████ *Id.* Ex. I (Bakewell

Rep. ¶ 14).  Bakewell's conclusion in this regard is similarly unsupported.  During his deposition

testimony, Mr. Bakewell could not provide support for this conclusion and testified that he did

not even consider ███████████████████████████



*Id*. Ex. J (Bakewell Dep. at 76:11-17).

As discussed above, an expert's opinion must be based on "sufficient facts or data." Fed.

R. Evid. 702; *Guillory v. Domtar Indus.*, 95 F.3d 1320, 1330 (5th Cir. 1996).  An expert may not

simply rely on a statement from the party by whom he was retained, especially when there are

other sources of reliable information available for the expert to review.  *See AMW Sports, LLC v.

State Farm Fire & Cas. Co.*, No. 10- cv-654, 2012 U.S. Dist. LEXIS 2438, at *8 (M.D. La Jan.

9, 2012) (precluding expert opinion which relied solely on one document from the party and

"excluded evaluation of significant relevant and available information").

Dr. Long's and Mr. Bakewell's opinions about ███████████████████ have

no factual support in the record and, admittedly are based solely on what Huawei told them. This

is an insufficient foundation for such opinions, particularly when these experts undertook no

effort to request or review documents relating to other products (as Quintel has).  Accordingly,

any such testimony should be excluded.

FILED UNDER SEAL

**Motion in Limine No. 5: The Court Should Preclude Undisclosed Expert Testimony and Opinions Defendants' Experts Disavowed During Deposition Testimony**

"An expert is not permitted to testify beyond the scope of his or her expert report." *Tyco Healthcare Grp. LP v. Applied Med. Res. Corp.*, No. 9:09-cv-176, 2011 U.S. Dist. LEXIS 154685, * 5-6 (E.D. Tex. Sept. 23, 2011); *Witt v. Chesapeake Exploration, L.L.C.*, No. 2:10-cv-22-, 2011 U.S. Dist. LEXIS 76033, * 5-6 (E.D. Tex. July 13, 2011) ("this Court has consistently limited experts' testimony to the opinions and bases disclosed in their expert report" (collecting cases)).  This Court should issue an order precluding any of Defendants' experts from testifying to issues or offering opinions outside the scope of their expert reports.

Similarly, where an expert admits during a deposition that he or she is not offering an opinion on a particular subject, that expert should be precluded from testifying as to that subject during trial.  *Sparling v. Doyle*, No. 13-cv-323, 2015 U.S. Dist. LEXIS 97204, * 14-15 (W.D. Tex. July 27, 2015).  This Court should preclude Defendants' experts, Drs. Long or Balanis, from testifying about topics as to which they admitted in their deposition testimony that they were not offering an opinion.

During his deposition, Dr. Long made clear that he was not offering an opinion about the following subjects: whether Defendants breached their non-disclosure agreement with Quintel, whether Defendants used or disclosed Quintel's confidential information, whether Defendants unfairly competed with Quintel, whether Defendants defrauded Quintel, or whether Defendants were unjustly enriched.  Dr. Long also testified that he was not offering any opinion about damages.  Brydges Decl. Ex. B (Long Dep. 145:15 - 147:5).  Dr. Long also testified that he was offering no opinion about Quintel's SONWav product.  *Id*. Ex. B (Long Dep. 250:17-251:8).

Dr. Long also disavowed and/or clarified several opinions from his report.  Specifically, Dr. Long testified that he was not opining on, and/or could not testify to the following:

15

FILED UNDER SEAL



*Id*. Ex. B (Long Dep. 66:11-14, 66:16-17)

*Id*. Ex. B (Long Dep. 68:2-5-68:7-8)

Dr. Long should be precluded from testifying about or offering any opinions on these matters.

Similarly, Dr. Balanis made clear that he was not offering an opinion about the following subjects: whether Defendants breached their non-disclosure agreement with Quintel, whether Defendants used or disclosed Quintel's confidential information, whether David Barker was a co-inventor of the '647 Patent, whether Defendants unfairly competed with Quintel, whether Defendants defrauded Quintel, whether Defendants were unjustly enriched, or whether Defendants misappropriated Quintel's trade secrets.  Brydges Decl. Ex. R (Balanis Dep. 138:7-142:14).  Dr. Balanis also testified that he was offering no opinion about Quintel's SONWav product, *id*. (Balanis Dep. 248:23-248:24) about Huawei's AAU 3902 product, *id*. (Balanis Dep. 249:8-251:19) or whether Quintel's expert, Dr. Jensen, was qualified to serve as an expert.  *Id*. (Balanis Dep. 84:18-85:10).

Dr. Balanis similarly disavowed and/or clarified several opinions from his report.

FILED UNDER SEAL

Dr. Balanis testified that he considered six trade secret factors in reaching his opinion but was not offering an opinion as to the following factors:

- Whether Quintel's trade secret information was known by its employees and others involved in the business;

- The extent of measures taken by Quintel to guard the secrecy of its information;

- The value of the information to Quintel and to its competitors, except Huawei;

- The amount of effort or money Quintel expensed in developing the trade secret;

- The ease or difficulty with which Quintel's trade secret information could be properly acquired or duplicated.

*Id.* Ex. R (Balanis Dep. 145:15-148:12). Dr. Balanis also testified that he was offering no opinion on whether Defendants used Quintel's information. *Id.* (Balanis Dep. 142:22-143:2, 254:25-255:7)

Dr. Balanis also testified that he could not offer an opinion on



Brydges Decl. Ex. R (Balanis Dep. 21:19-:22:18)

*Id.* (Balanis Dep. 22:22-25; 42:25-44:3)

FILED UNDER SEAL

Finally, Dr. Balanis is unable to provide an opinion about ███████████



*Id*. (Balanis Dep. 38:14-38:18)

Brydges Decl. Ex. R (Balanis Dep. 262:5-265:5; 301:22-304:1)

Dr. Balanis should be precluded from testifying to or offering any opinions on these subjects.

**Motion in Limine No. 6: The Court Should Preclude Defendants from Eliciting Testimony Regarding Source Code or Inspection of the AAU 3902**

Quintel also seeks to preclude Defendants from asking Quintel's expert, Dr. Jensen (or any other witness) questions or introducing evidence in any form (including, but not limited to, prior deposition testimony) concerning source code for Huawei antenna products, including the AAU 3902 product, under Federal Rule of Evidence 403.  In discovery, Quintel sought to obtain the source code used in Huawei's AAU 3902 product.  Dkt. 100 at 4-5.  Huawei, however, resisted providing such code, alleging that it was "among its most sensitive proprietary

FILED UNDER SEAL

information," and the Court denied Quintel's motion to compel production of the code.  Dkt. 100 at 4-5.  Accordingly, Dr. Jensen had no way to examine the source code, and thus questions relating to that source code pose a substantial danger of being unduly prejudicial, confusing the issues, and wasting time.

Quintel also seeks to preclude Defendants from asking Dr. Jensen questions or introducing evidence in any form (including but not limited to deposition testimony) relating to an inspection of Huawei's AAU 3902 product (or any other Huawei product).  Huawei thwarted Quintel's efforts to conduct such in inspection, and Defendants should therefore be precluded from raising the issue at trial.

According to the United States Department of State website, "obtaining . . . evidence in China for use in foreign courts may, as a general matter, only be accomplished through requests to its Central Authority under the Hague Evidence Convention. . . .  Participation in such activity could result in the arrest, detention or deportation of the American attorneys and other participants."  *See* https://travel.state.gov/content/travel/en/legal-considerations/judicial/country/china.html; (Dkt. 89-1 ¶ 9).

As Quintel previously explained to Huawei and the Court, this guidance caused Quintel grave concern regarding its ability to have Dr. Jensen and its attorneys inspect the AAU 3902 product at Huawei China's facility in Shenzhen, China -- the *only* location that Huawei agreed to make an AAU 3902 product available for inspection.   Dkt. 89-1 ¶ 9.  Indeed, Huawei refused to make an AAU 3902 product available for inspection anywhere other than China, despite the fact that Quintel was willing to pay the costs of shipping the AAU 3902 product to enable an inspection at a testing facility in the United States, Canada, or even certain parts of Europe.  *Id.*  Dr. Jensen therefore had no practicable way to examine the AAU 3902 antenna product, and thus

FILED UNDER SEAL

questions relating to an inspection (or lack thereof) of Huawei's antenna products (including the AAU 3902 product) pose a substantial danger of being unduly prejudicial, confusing the issues, and wasting time under Federal Rule of Evidence 403, particularly where Huawei itself orchestrated Quintel's inability to carry out such an inspection.  Accordingly, Defendants should be precluded from asking Dr. Jensen or any other witness at trial about an inspection or lack of inspection of the AAU 3902 product.

**Motion in Limine No. 7: The Court Should Preclude Defendants from Reading, Referencing, or in Any Way Using Quintel's Privileged Document**

Although the issue has been fully briefed and decided by Magistrate Judge Craven (Dkt. 137), Huawei continues to reference and has indicated that it will attempt to introduce excerpts from a privileged communication that Quintel inadvertently produced and clawed back during discovery.  Quintel first realized it had inadvertently produced this document when Huawei's counsel attempted to use it during the deposition of a Quintel witness.  Quintel's counsel immediately reviewed the document and clawed it back at that time, requesting Huawei to return or destroy that document.  Rather than comply, and despite Quintel's counsels repeated requests to stop, Huawei's counsel read portions of the privileged document into the deposition record. Dkt. 131-1.

Huawei ultimately agreed to delete all copies of the document in accordance with the terms of the parties' protective order and moved to compel disclosure.  Dkt. 128.  As part of this motion, however, Huawei used the portion of the deposition transcript where its attorney read portions of the privileged document (out of context) into the record as an exhibit (Dkt. 128-1, Ex. B) and quoted the privileged communication three times in its memorandum of law Dkt. 128 at 1, 9, 15.

FILED UNDER SEAL

Quintel opposed the motion (Dkt. 131) and the Court denied it.  Dkt. 137. Notwithstanding the Court's ruling, at oral argument on the parties' summary judgment and discovery motions, Huawei again read portions of the contents of the privileged document into the record as part of its presentation to the court.  Quintel strenuously objected at that time. Now, in preparing for trial, Huawei has designated a portion of the deposition transcript referring to the privileged document as one that they propose to offer by video.

The document at issue remains privileged and it was and remains improper for Huawei to read, reference, or otherwise use that privileged document at trial.  Given Huawei's history of disregard both for Quintel's assertion of privilege and the Court's ruling, Quintel has no confidence that Huawei will not attempt again to introduce some or all of the contents of the document into evidence at trial.  Accordingly, Quintel respectfully requests the Court issue an order precluding Defendants from reading, using or in any way referencing the document or the portions of the deposition transcript's references to it at trial.

**Motion in Limine No. 8:  The Court Should Preclude Huawei From Offering Evidence of Plaintiff's Corporate Parentage or Acquisition**

Quintel moves *in limine* to preclude Huawei from offering evidence or argument at trial concerning the August 2017 acquisition of Quintel by Cirtek Delaware or information regarding Quintel's corporate structure.  Upon information and belief, Huawei will seek to introduce evidence and argument regarding this acquisition, as well as evidence of Quintel's corporate parentage: namely, that it is a wholly owned subsidiary of Quintel Cayman Ltd., and that its ultimate parent is Cirtek Holdings Philippines Corporation, a publicly traded company listed on the Philippine Stock Exchange.  Huawei has proposed that Quintel stipulate to these facts, which Quintel has refused.

FILED UNDER SEAL

This evidence has no relevance whatsoever to the case and any evidence or argument relating to Quintel's corporate parents or acquisition should be excluded under Federal Rules of Evidence 401 and 402.  See FED. R. EVID. 401 (relevant evidence has a "tendency to make the existence of any fact *that is of consequence to the determination of [this] action* more probable or less probable than it would be without the evidence") (emphasis supplied); *id*. Rule 402 ("Irrelevant evidence is not admissible.").  None of the entities in the chain of Quintel's corporate structure are parties to this action, nor has Huawei ever attempted to subpoena documents or information from such entities.  Where a corporate party's wealth or size are not at issue -- as they are not here -- "counsel is bound to refrain from making reference to such size and wealth, or bear the risk of an unfavorable appellate reception." *Adams Labs., Inc. v. Jacobs Eng'g Co.*, 761 F. 2d 1218, 1226 (7th Cir. 1985).

Such evidence should also be excluded because its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury. *See* FED. R. EVID. 403.  Preclusion under Rule 403 is particularly appropriate here, where allowing such evidence would unnecessarily waste time and resources at trial.  Accordingly, such evidence and argument should be excluded.

**Motion in Limine No. 9: The Court Should Preclude Defendants From Calling as a Witness Quintel's Trial Counsel, Jeffrey Wadsworth**

Defendants have included on their witness list as a "may call" witness Jeffrey Wadsworth, Quintel's trial counsel.  The Court should issue an order precluding Defendants from calling Mr. Wadsworth for at least three reasons.

First, courts have long disfavored forcing attorneys for parties to testify; "[t]he standards of the profession would thereby suffer." *Hickman v. Taylor*, 329 U.S. 495, 513 (1947). "Counsel should be free to devote his or her time and efforts to preparing the client's case

FILED UNDER SEAL

without fear of being interrogated by his or her opponent." *Shelton v. Am. Motors Corp.*, 805 F. 2d 1323, 1327 (8th Cir. 1986).

Second, though they amended their Rule 26 Initial Disclosures twice, Defendants never listed Mr. Wadsworth as an individual with discoverable information that Defendants may use to support their claims or defenses. This failure alone should preclude Defendants from attempting to call Mr. Wadsworth under Rule 37(c)(1).

Finally, Defendants cannot meet their burden to demonstrate that Mr. Wadsworth should be called as a witness. District courts in this circuit have employed the three-part test set forth in *Shelton v. American Motors Corp.*, 805 F. 2d 1323, 1327 (8th Cir. 1986) in determining the propriety of allowing an opponent's counsel to be deposed, and that test applies with equal force here. Thus, Defendants would need to show that 1) "no other means exist to obtain the information than to [call] opposing counsel;" (2) "the information sought is relevant and nonprivileged"; and (3) "the information is crucial to the preparation of the case." *Shelton*, 805 F. 2d at 1327. Defendants cannot make such a showing.

Although Defendants have not provided any rationale for listing Mr. Wadsworth as a witness, Quintel believes, based on comments made by Huawei's counsel at the November 13, 2017 oral argument, that it is premised on two declarations he submitted in opposition to Defendants' motion for summary judgment on statute of limitations, preemption, and preclusion. Dkt. 151-1 and 172-1. In those declarations, Mr. Wadsworth discussed in relevant part simple searches he performed in the United States Patent and Trademark Office's patent and patent application database, and the results yielded by those searches. Notably, Huawei submitted a

FILED UNDER SEAL

responding declaration, in which Huawei did not dispute the accuracy of the results Mr.

Wadsworth reported.  Dkt. No. 141-1.[1]

Clearly, under these circumstances, there are both other means to obtain the information

in question -- Defendants themselves can perform the same searches Mr. Wadsworth performed

and achieve the same undisputed results -- and the information is not crucial to the preparation of

Defendants' case for the very same reason.  Defendants can not even approach the high burden

to call a party's trial counsel as a witness, and therefore Mr. Wadsworth should be stricken from

Defendants' witness list.

---

[1] The responding declaration was submitted by Todd Juneau, a patent attorney who Defendants also have placed on their "may call" witness list and who purports to provide expert testimony.  Mr. Juneau was neither disclosed by Defendants as an expert nor identified in their Initial Disclosures, however, and he should be precluded from testifying on this basis.

FILED UNDER SEAL

## CONCLUSION

For the foregoing reasons, Quintel respectfully requests that the Court issue an Order granting Quintel's motions in limine as indicated, together with such other and further relief as the Court deems just and proper.

December 22, 2017

**HARTER SECREST & EMERY LLP**

By: */s/ Jeffrey A. Wadsworth*
Jeffrey A. Wadsworth
jwadsworth@hselaw.com
LEAD ATTORNEY
ADMITTED *PRO HAC VICE*
Erika N.D. Stanat
estanat@hselaw.com
ADMITTED *PRO HAC VICE*
Jerauld E. Brydges
jbrydges@hselaw.com
ADMITTED *PRO HAC VICE*
Kyra T. Keller
kkeller@hselaw.com
ADMITTED *PRO HAC VICE*
John P. Bringewatt
jbringewatt@hselaw.com
ADMITTED *PRO HAC VICE*
Jessica N. Clemente
jclemente@hselaw.com
1600 Bausch & Lomb Place
Rochester, NY 14604-2711
(585) 232-6500 - Telephone
(585) 232-2152 - Facsimile

**GRAY REED & McGRAW LLP**

Michael C. Kelsheimer
State Bar No. 24029360
mkelsheimer@grayreed.com
David T. DeZern
Texas Bar No. 24059677
ddzern@grayreed.com
1601 Elm Street, Suite 4600
Dallas, Texas 75201
(214) 954-4135 – Telephone
(214) 953-1332 – Facsimile

FILED UNDER SEAL

**ATTORNEYS FOR PLAINTIFF**

FILED UNDER SEAL

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL
## AND CERTIFICATE OF SERVICE

This response and the accompanying Declaration of Jerauld E. Brydges, with exhibits,

are filed under seal pursuant to Local Rule CV-5(a)(7) and the Protective Order entered in this

case on January 11, 2016 because they contain information that has been designated as

Confidential and/or Confidential Attorneys' Eyes Only by the parties.  The undersigned hereby

certifies that, pursuant to Local Rule CV-5(a)(7)(D) and Paragraph 10 of the Protective Order, all

counsel of record have been electronically served via email with copies of this response, and the

accompanying Declaration, with exhibit, on this 22nd day of December, 2017.


By:   *David T. DeZern*

FILED UNDER SEAL

## **CERTIFICATE OF CONFERENCE**

I hereby certify that the parties met and conferred with respect to this motion as required by Local Rule CV-7(h), and this motion is opposed.  The parties will, however, meet and confer and attempt to resolve any dispute over the motions in limine within five calendar days of the filing of any response and notify the Court of all the issues which are resolved as required by the Court's Amended Scheduling Order (Dkt. 67 at 2 n. 1).

*/s/ David T. DeZern*
David T. DeZern