IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| QUINTEL TECHNOLOGY LTD., | NO. 4:15-cv-00307-ALM-CMC |
| PLAINTIFF, | |
| v. | |
| HUAWEI TECHNOLOGIES USA, INC., FUTUREWEI TECHNOLOGIES, INC., HUAWEI TECHNOLOGIES CO., LTD., AND ZHENGXIANG MA, | **FILED UNDER SEAL** |
| DEFENDANTS. | |

## DEFENDANTS' MOTION *IN LIMINE* AND DAUBERT MOTION

# TABLE OF CONTENTS

MOTIONS IN LIMINE ...................................................................................................1

I.     Motion *in Limine* No. 1:  Undisclosed Trade Secrets ........................................................1

II.    Motion *in Limine* No. 2:  Products Other Than the AAU 3901 and AAU 3902 ................2

III.   Motion *in Limine* No. 3:  Irrelevant Financial Information ....................................2

IV.   Motion *in Limine* No. 4:  Third Parties' Understanding of Confidentiality ......................3

V.    Motion *in Limine* No. 5:  Existence of Non-Produced NDAs .....................................4

VI.   Motion *in Limine* No. 6:  Dismissed Claims ...................................................5

VII.  Motion *in Limine* No. 7:  Allegations of Misconduct Unrelated to the Claims .................6

VIII. Motion *in Limine* No. 8:  New Allegations .........................................................7

IX.   Motion *in Limine* No. 9:  Discovery Disputes ....................................................8

X.    Motion *in Limine* No. 10:  Comments Regarding Ethnicity or National Origin ...............8

XI.   Motion *in Limine* No. 11:  Documents Not Part of the Record in the Case ......................8

XII.  Motion *in Limine* No. 12:  Expert Opinion Beyond Reports & Testimony........................9

MOTION TO EXCLUDE EXPERT TESTIMONY OF MICHAEL JENSEN............................10

I.     Quintel's Technical Expert Michael Jensen Should Be Excluded from Testifying
About Matters Outside His Purported Expertise ...........................................10

    A.    Dr. Jensen Cannot Testify to Huawei's Thoughts and Beliefs ............................10

    B.    Dr. Jensen Cannot Testify Regarding Co-Inventorship.......................................12

    C.    Dr. Jensen Cannot Testify Regarding What Was Known and Valuable in
the "Industry".................................................................................12

    D.    Dr. Jensen's Opinions Regarding "Trade Secrets" Should Be Excluded ..............14

    E.    Dr. Jensen's Opinions Regarding Alleged Misappropriation Should Be
Excluded ......................................................................................14

MOTION TO EXCLUDE EXPERT TESTIMONY OF PROF. STEPHEN MAGEE .................16

I.     Not One of Professor Magee's Four Damages Theories Is Based on Reliable Data,
Uses a Reliable Methodology, or Is Reliably Applied to the Facts of This Case.............17

    A.    Professor Magee's "Lost Patent Ownership Theory" Should Be Excluded .........17

        1.    ████████████████████████████████████....................................17

        2.    Professor Magee's Profit Margin and Patent Ownership Premium
Bear No Relationship to the Facts of this Case..........................................20

i

B.      Professor Magee's Unjust Enrichment Calculation Should Be Excluded ............21

C.      Professor Magee's Reasonable Royalty Calculation Should Be Excluded ..........24

D.      Professor Magee's Market Value of Trade Secret Development Costs Calculation Should Be Excluded .........................................................................25

II.     Professor Magee's Purported Opinions Are Not His Own ...............................27

III.    If Allowed to Testify at All, Professor Magee Should Be Permitted to Introduce No More Than One of His Four Theories at Trial ...........................................................29

# TABLE OF AUTHORITIES

**Cases**                                                                                                 **Page(s)**

*Alcatel USA v. Cisco Systems*,
   239 F. Supp. 2d 660 (E.D. Tex. 2002)..................................................................22

*Amigo Broadcasting v. Spanish Broadcasting Sys.*,
   521 F.3d 472 (5th Cir. 2008) .........................................................................10

*Atkinson v. Anadarko Bank and Trust Co.*,
   808 F.2d 438 (5th Cir. 1987) .........................................................................30

*Brown v. Illinois Central Railroad Co.*,
   705 F.3d 531 (5th Cir. 2013) ..............................................................13, 14, 15

*C.P. Interests v. Cal. Pools*,
   238 F.3d 690 (5th Cir. 2001) .........................................................................14

*Calce v. Dorado Exploration*,
   309 S.W.3d 719 (Tex. App.—Dallas 2010, no pet.)........................................23

*Carley v. Crest Pumping Technologies*,
   No. 15-CV-00161, 2016 WL 8849697 (W.D. Tex. Aug. 21, 2016)......................8

*Celebrity Cruises v. Essef Corp.*,
   434 F. Supp. 2d 169 (S.D.N.Y. 2006)..............................................................18

*Chad McCune v. Graco Children's Prods*,
   No. 5:09-CV-107, 2011 WL 13217898 (E.D. Tex. August 8, 2011) ......................7

*Clearline Techs. v. Cooper B-Line*,
   No. 4:11-CV-1420, 2014 WL 4185770 (S.D. Tex. Aug. 19, 2014) ......................30

*ContentGuard Holdings v. Amazon.com*,
   Nos. 2:13-CV-01112-JRG, 2:14-CV-00061-JRG, 2015 WL 11089490 (E.D.
   Tex. Sep. 3, 2015)...............................................................................2, 5, 8

*Datatreasury Corp. v. Wells Fargo and Co.*,
   No. 2:06-cv-72-DF, 2010 WL 11468934 (E.D. Tex. Oct. 5, 2010) ...................3, 6

*Daubert v. Merrell Dow*,
   43 F.3d 1311 (9th Cir. 1995) ........................................................................15

*Daubert v. Merrell Dow*,
   509 U.S. 579 (1993)...................................................................15, 16, 18, 20

*U.S. ex rel. Dekort v. Integrated Coast Guard Sys.*,
No. 3:06-CV-1792-O, 2010 WL 8367619 (N.D. Tex. Oct. 8, 2010) ....................................20

*Diabetes Centers of Am. v. Healthpia Am.*,
No. H-06-3457, 2008 WL 375505 (S.D. Tex. Feb. 11, 2008) .................................20

*Freeny v. Murphy Oil Corporation*,
No. 2:13-CV-791-RSP, 2015 WL 5144347 (E.D. Tex. June 4, 2015) ...............................2, 7

*Genband US v. Metaswitch Networks Corp.*,
No. 2:14-CV-33-JRG-RSP, 2015 WL 12911530 (E.D. Tex. Sept. 30, 2015) .......................28

*Henry v. Masson*,
333 S.W.3d 825 (Tex. App.—Houston [1st Dist.] 2010, pet. denied)....................................10

*Johnson v. Ford Motor Co.*,
988 F.2d 573 (5th Cir. 1993) .........................................................................................7

*JRL Enters. v. Procorp Assocs.*,
2003 WL 21284020 (E.D. La. June 3, 2003).........................................................................20

*Keane v. Fox Television Stations*,
297 F. Supp. 2d 921 (S.D. Tex. 2004) ...................................................................................14

*Marines v. UPS Ground Freight*,
No. 07-CV-72-AM, 2012 WL 12951433 (W.D. Tex. July 13, 2012) .....................................4

*Mayes v. Simpson*,
No. 6:14-CV-811-MHS-JDL, 2016 WL 8232552 (E.D. Tex. Jan. 15, 2016) .......................12

*MGM Well Servs. v. Mega Lift Sys.*,
2007 WL 150606 (S.D. Tex. Jan. 16 2007) ...........................................................................13

*Myriad Development v. Alltech*,
817 F. Supp. 2d 946 (W.D. Tex. 2011).................................................................................29

*Nilssen v. Motorola*,
No. 93 C 6333, 1998 WL 513090 (N.D. Ill. Aug. 14, 1998)..........................................18, 24

*In re Norplant Contraceptive Prods. Liability Litig.*,
No. MDL 1038, 1997 WL 81087 (E.D. Tex. Feb. 21, 1997) ...................................................7

*Orchestrate HR, Inc. v. Trombetta*,
No. 3:13-CV-2110-KS, 2017 WL 273669 (N.D. Tex. Jan. 20, 2017)......................................8

*Orix Capital Markets v. Super Future Equities*,
No. 3:06-CV-0271-B, 2008 WL 4820767 (N.D. Tex. Nov. 6, 2008).......................................7

*Otis v. Doctor's Assocs.*,
    No. 94 C 4227, 1998 WL 673595 (N.D. Ill. Sept. 14, 1998)....................................18

*PalTalk Holdings v. Microsoft Corp.*,
    No. 2:06-CV-367 (DF), 2009 WL 10677783 (E.D. Tex. Feb. 25, 2009) .................................5

*Prepaid Wireless Servs. v. Southwestern Bell Wireless*,
    No. M-00-302, 2002 WL 34367328 (S.D. Tex. July 23, 2002)...............................19

*Promethean Insulation Tech. v. Sealed Air Corp.*,
    No. 2:13-cv-1113, 2015 WL 11027036 (E.D. Tex. August 14, 2015) ..............................2, 3

*Parthenon Unified Memory Architecture v. Apple*,
    No. 2:15-cv-621, 2016 WL 7743510 (E.D. Tex. Sep. 21, 2016)...............................6

*Real Estate Value Co. v. USAir*,
    979 F. Supp. 731 (N.D. Ill. 1997) ..................................18

*Rembrandt Social Media v. Facebook*,
    22 F. Supp. 3d 585 (E.D. Va. 2013) ...................................23

*Rembrandt Wireless Technologies v. Samsung Electronics Co., Ltd.*,
    No. 2:13-CV-213-JRG–RSP, 2015 WL 627430 (E.D. Tex. Jan. 30, 2015)....................5

*Retractable Technologies v. Abbott Laboratories*,
    No. 5:05-CV-157, 2010 WL 11531436 (E.D. Tex. June 18, 2010)..........................11

*Reyes v. Missouri Pac. R. Co.*,
    589 F.2d 791 (5th Cir. 1979) ...................................7

*Saldana v. State*,
    No. 11-09-00247-CR, 2011 WL 846095 (Ct. App. Tex. Mar. 10, 2011).........................11

*Seahorn Investments v. Fed. Ins. Co.*,
    No. 1:13CV320-HSO-RHW, 2015 WL 5297264 (S.D. Miss. Sept. 10, 2015) ................27, 29

*Seatrax v. Sonbeck Int'l*,
    200 F.3d 358 (5th Cir. 2000) ..................................20

*Seitz v. Envirotech Sys. Worldwide*,
    No. H-02-4782, 2008 WL 656513 (S.D. Tex. Mar. 6, 2008) ...............................28

*Skyhook Wireless v. Google*,
    No. CV 10-11571-RWZ, 2015 WL 13620764 (D. Mass. Feb. 18, 2015) .............................25

*Softel v. Dragon Medical and Scientific Commc'ns*,
    891 F. Supp. 935 (S.D.N.Y. 1995)..................................25

*Spectrum Sciences and Software v. United States*,
    98 Fed. Cl. 8 (Fed. Cl. 2011) ..........................................................................21

*St. Croix Renaissance Grp. v. St. Croix Alumina*,
    No. 04-cv-67, 2010 WL 4723897 (D.V.I. Nov. 18, 2010) ......................................3

*Tewari De-Ox Sys. v. Mountain States/Rosen*,
    No. SA-08-CA-190, 2009 WL 10674753 (W.D. Tex. Aug. 19, 2009) ...................28

*Tyco Healthcare Group LP v. Applied Medical Resources Corp.*,
    No. 9:09-CV-176, 2011 WL 7563868 (E.D. Tex. Sept. 23, 2011).....................9, 10

*Uniloc USA v. Microsoft Corp.*,
    632 F.3d 1292 (Fed. Cir. 2011)....................................................................23, 27

*United States v. Marine Shale Processors*,
    81 F.3d 1361 (5th Cir. 1996) ........................................................................18, 19

*United States v. Tran Trong Cuong*,
    18 F.3d 1132 (4th Cir. 1994) ..............................................................................19

*Univ. Computing Co. v. Lykes-Youngstown Corp.*,
    504 F.2d 518 (5th Cir. 1974) ..............................................................................23

*Versata Software v. Internet Brands*,
    902 F. Supp. 2d 841 (E.D. Tex. 2012)................................................................10

*Virnetx v. Cisco Systems*,
    767 F.3d 1308 (Fed. Cir. 2014)...........................................................................23

*Waymo v. Uber Techs.*,
    No. C 17-00939 WHA, 2017 WL 5148390 (N.D. Cal. Nov. 6, 2017)..................22

**Statutes**

35 U.S.C. § 256..........................................................................................................12

Tex. Civ. Prac. & Rem. Code § 134A.004 .........................................................29, 30

**Rules**

Fed. R. Civ. P. 37(c)(1)...............................................................................................8

Fed. R. Evid. 401 ........................................................................................................3

Fed. R. Evid. 402 ........................................................................................................5

Fed. R. Evid. 403 .............................................................................................2, 3, 5, 7

Fed. R. Evid. 404(b).................................................................................................6

Fed. R. Evid. 602 ....................................................................................................4, 5

Fed. R. Evid. 702 ......................................................................12, 13, 17, 22

Fed. R. Evid. 801, ....................................................................................................4

Fed. R. Evid. 802 ....................................................................................................4, 7

<u>**MOTIONS IN LIMINE**</u>

**I.** **Motion *in Limine* No. 1: Undisclosed Trade Secrets**

The Court should exclude evidence, testimony, and argument regarding any trade secrets claimed by Quintel other than the three described by Quintel in this litigation as (1) the concept of Per User Tilt (PUT), (2) a schematic or block diagram of PUT, and (3) simulation results of PUT. In its recent filings, Quintel has alluded to the possible existence of additional, undisclosed trade secrets, which have not been previously disclosed to Defendants. For example, in its opposition brief to Defendants' motion for summary judgment, Quintel wrote that its trade secrets "***include***" these three items, implying that there could be more. *See* Dkt. #152 at pp. 10, 21. In its post-discovery filings, including the recent joint pretrial order, Quintel has referred to its trade secrets as the "Per User Tilt technology." Defendants are concerned that this switch in terminology demonstrates that Quintel is seeking to expand Per User Tilt beyond the concept that has guided this litigation. Such an attempt is improper and should not be allowed. The present case has been guided by the definition of PUT, which was supplied *by Quintel* in its Complaint as "a concept to improve reception between an antenna providing cellular telephone and/or data services, and a mobile receiving telephone and/or data services from the antenna (the 'Per User Tilt Concept')." Dkt. #38 at ¶ 13 (Amended Compl.); *see also* Dkt. #73 at p. 3 & n.1 (defining PUT as in the Amended Complaint). Nevertheless, in its recent filing, Quintel seemed to expand the PUT Concept by referring to it as Per User Tilt technology that could encompass an "application," "technology," or "implementation." *See* Dkt. #152 at pp. 10, 21. To allow Quintel to make reference to other potential trade secrets that have not been disclosed during discovery, to alter the terminology to imply physical technology as opposed to a generic concept, or to alter the definition of a trade secret that has guided the entire course of the litigation would

1

be highly prejudicial to Defendants. Fed. R. Evid. 403; *see, e.g.*, *Freeny v. Murphy Oil Corporation*, No. 2:13-CV-791-RSP, 2015 WL 5144347, at *3 (E.D. Tex. June 4, 2015). Such an attempt by Quintel should be precluded by the Court.

## II. Motion *in Limine* No. 2: Products Other Than the AAU 3901 and AAU 3902

The Court should exclude evidence, testimony, and argument regarding Huawei antenna products other than the AAU 3901 and AAU 3902. These are the only two products that were capable of performing the User Specific Tilt (UST) function, among other functions. UST is the Huawei technology that Quintel claims is based on Quintel's PUT concept. It would be prejudicial for Quintel to make speculative assertions that other Huawei products are capable of incorporating UST to inflate its damages claim or for any other purpose. *See ContentGuard Holdings v. Amazon.com*, Nos. 2:13-CV-01112-JRG, 2:14-CV-00061-JRG, 2015 WL 11089490, at *5 (E.D. Tex. Sep. 3, 2015); *Promethean Insulation Tech. v. Sealed Air Corp.*, No. 2:13-cv-1113, 2015 WL 11027036, at *3-6 (E.D. Tex. August 14, 2015). Quintel moved to compel in an effort to inject other products into the case. Defendants pointed out that there was no justification to support reopening discovery on new products and Magistrate Judge Craven agreed. *See* Dkt. #176. Quintel should not now be allowed to inject through speculation and innuendo that other products might exist. Such would be unduly prejudicial to Defendants and should be excluded. *See* Fed. R. Evid. 403.

## III. Motion *in Limine* No. 3: Irrelevant Financial Information

The Court should exclude financial data concerning sales and revenue from Huawei products other than the AAU 3902—the only commercial product to incorporate the UST feature at issue. Other sales are not relevant and will unfairly prejudice Defendants by inviting the jury

to base a damages award on sales that have nothing to do with what is at issue in this case. Fed. R. Evid. 401, 403.

The Court should also exclude any evidence of Defendants' financial condition, including total assets, revenues, market capitalization, or any other financial metric that is not limited to the products accused of incorporating Quintel's trade secrets. *See Datatreasury Corp. v. Wells Fargo and Co.*, No. 2:06-cv-72-DF, 2010 WL 11468934, at *22 (E.D. Tex. Oct. 5, 2010) ("any probative value [of Defendants' financial size] is substantially outweighed by the danger that the jury might set damages based on Defendants' ability to pay rather than on proper evidence of damages.") (internal quotation marks and citation omitted); *see also Promethean*, 2015 WL 11027036, at *3-6. This includes any evidence of the overall financial condition of other Huawei entities (for example, the following proposed Quintel exhibits: PTX0033, PTX0093, PTX0210, PTX0265, PTX0266, PTX0268, PTX0269, PTX0391, and PTX0392). The financial condition of non-defendant affiliate companies has no bearing on any issue in this case. *See St. Croix Renaissance Grp. v. St. Croix Alumina*, No. 04-cv-67, 2010 WL 4723897, at *2 (D.V.I. Nov. 18, 2010). Such would be unduly prejudicial to Defendants and should be excluded. *See* Fed. R. Evid. 403.

## IV.  Motion *in Limine* No. 4:  Third Parties' Understanding of Confidentiality

The Court should exclude evidence, testimony, and argument from any Quintel witness regarding any third party's understanding of the confidential and/or proprietary nature of information and documents shared by Quintel with that third party, as well as any third party's actual treatment of such information and documents as confidential and/or proprietary. Based on the declaration of Quintel's Vice President of Sales Joseph Veni, Defendants have reason to believe that Mr. Veni or other Quintel witnesses may testify that the third parties with which

Quintel shared its information and documents "understood its confidential and proprietary nature and treated it as such."  Dkt. #160-14 at ¶ 5; *see also id.* at ¶¶ 6, 10-11.   The Court should exclude evidence and argument regarding (1) any third party's supposed understanding as to the confidential and/or proprietary nature of information shared by Quintel with that third party or (2) any third party's supposed treatment of that information as confidential and/or proprietary. Quintel opted not to take discovery from any third party, and there is no credible evidence in the record as to any third party's understanding or treatment of Quintel information.   Further, the evidence within the record demonstrates that Quintel did not require a NDA from several third parties.  No Quintel witness is competent to testify about the subjective understandings or beliefs or state of mind of a third party.   No Quintel witness has personal knowledge of the manner in which any third party treated Quintel's information or what any third party "understood" about the way information should be treated.   As a result, any such testimony from a Quintel witness would amount to speculation.  Fed. R. Evid. 602 (personal knowledge); *see, e.g.*, *Marines v. UPS Ground Freight*, No. 07-CV-72-AM, 2012 WL 12951433, at*3 (W.D. Tex. July 13, 2012) (excluding testimony not based on personal knowledge).   It also would be inadmissible hearsay. Fed. R. Evid. 801, 802.

## V.     Motion *in Limine* No. 5:  Existence of Non-Produced NDAs

The Court should exclude evidence, testimony, and argument regarding the possible existence of nondisclosure agreements between Quintel and third parties that have not been produced to-date in this litigation.   There are at least six third parties with which Quintel shared its alleged trade secrets without entering a contemporaneous confidentiality agreement.   The Veni Declaration suggests that he or other Quintel witnesses may testify that Quintel entered into nondisclosure agreements with those third parties, which have not been produced in this

litigation.  *See* Dkt. #160-14 at ¶ 9.  Quintel should be precluded from now coming forward—long after the close of fact discovery—with testimony that Quintel had nondisclosure agreements with those parties that it was "just not [] able to locate."  Dkt. #160-14 at ¶ 9.  Any such testimony is speculative and is more prejudicial than probative.  Fed. R. Evid. 602, 403; *ContentGuard*, 2015 WL 11089490, at *2.  More generally, Quintel should be prevented from having any of its witnesses testify as to the possible existence of documents that it has failed to produce in violation of its discovery obligations.

## VI.    Motion *in Limine* No. 6:  Dismissed Claims

The Court should approve the Magistrate Judge's Report and Recommendation that: (1) Quintel's claim for breach of contract to the extent it is based on Defendants' alleged failure to destroy documents is time-barred (Dkt. #187), (2) Quintel's claim for unfair competition by misappropriation is preempted by copyright law (Dkt. #187), and (3) Quintel's claim for correction of inventorship should be dismissed (Dkt. #190).  Upon doing so, the Court should exclude evidence, testimony, and argument regarding any of these dismissed claims.

Introduction of evidence or argument regarding any supposed failure to destroy documents, regarding any supposed unfair competition, or regarding Mr. Barker's claim of co-inventorship is not relevant and would only be used to impugn Defendants' character.  Further, presenting such evidence to a jury is highly prejudicial.  Fed. R. Evid. 402, 403; *Rembrandt Wireless Technologies v. Samsung Electronics Co., Ltd.*, No. 2:13-CV-213-JRG–RSP, 2015 WL 627430, at *3 (E.D. Tex. Jan. 30, 2015) (excluding references, evidence, testimony, and argument to dismissed claims); *PalTalk Holding v. Microsoft Corp.*, No. 2:06-CV-367 (DF), 2009 WL 10677783, at *2 (E.D. Tex. Feb. 25, 2009) ("Reference to any prior patent claims,

causes of action, or forms of relief that have been dismissed or abandoned during this lawsuit would have little relevance and be highly prejudicial.").

## VII.     Motion *in Limine* No. 7:  Allegations of Misconduct Unrelated to the Claims

The Court should exclude evidence, testimony, and argument regarding any alleged misconduct by one or more Defendants that is not the alleged misconduct at issue in this case. Such "other acts" evidence is irrelevant and prejudicial and is not admissible under Rule 404(b) to show propensity or bad character.

Defendants have reason to believe that Quintel may seek to introduce such information during the course of trial. ███████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
██████████████████████████████ ███████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
█████████████████████████ This evidence has no bearing on the issues in the present case and appears to be offered solely to impugn Defendants' character.  *See Datatreasury*, 2010 WL 11468934, at *24; *Parthenon Unified Memory Architecture v. Apple*, No. 2:15-cv-621, 2016 WL 7743510, at *3 (E.D. Tex. Sep. 21, 2016) (excluding testimony, evidence, or argument suggesting that Defendants do not respect intellectual property).

---

[1] Exhibit references contained in this Motion are attached to the Declaration of David L. Hecht.

Even if the evidence were relevant, its probative value is substantially outweighed by the danger of unfair prejudice. Fed. R. Evid. 403. Where the evidence has only slight probative value, it must be excluded if there is a likelihood of unfair prejudice. *See, e.g.*, *Reyes v. Missouri Pac. R. Co.*, 589 F.2d 791, 793 (5th Cir. 1979) ("such evidence is of slight probative value yet very prejudicial"); *see also Johnson v. Ford Motor Co.*, 988 F.2d 573, 581 (5th Cir. 1993); *In re Norplant Contraceptive Prods. Liability Litig.*, No. MDL 1038, 1997 WL 81087, at *1 (E.D. Tex. Feb. 21, 1997). Introducing other alleged misconduct would invite jurors to evaluate this case based on Defendants' purported bad character and find liability based on an alleged propensity to commit bad acts. *Chad McCune v. Graco Children's Prods.*, No. 5:09-CV-107, 2011 WL 13217898, at *9 (E.D. Tex. August 8, 2011) (excluding such evidence).

Finally, the evidence of alleged prior bad acts is comprised of out-of-court statements that Quintel would introduce for their truth. They must be excluded as hearsay. Fed. R. Evid. 802.

## VIII.  Motion *in Limine* No. 8:  New Allegations

In its December 13, 2017 draft of the joint pretrial order, Quintel announced, for the first time, that it is seeking to hold Defendants liable for two wrongs never pleaded in this litigation nor disclosed in discovery: alleged fraud by nondisclosure and alleged improper acquisition of trade secrets. Neither theory was alleged in Quintel's original or amended complaint, nor was it disclosed in Quintel's interrogatory responses. Quintel's attempt to insert new bases for its claims, by alleging them for the first time in the pretrial order in the weeks leading up to trial, is inappropriate and highly prejudicial to Defendants. Quintel should be precluded from raising these newly alleged claims. *See, e.g.*, *Orix Capital Markets v. Super Future Equities*, No. 3:06-CV-0271-B, 2008 WL 4820767, at *2 (N.D. Tex. Nov. 6, 2008); *Freeny*, 2015 WL 5144347, at *3.

## IX.  Motion *in Limine* No. 9:  Discovery Disputes

The parties should be precluded from offering testimony, evidence, or argument regarding discovery disputes that occurred during the course of this litigation.  Discovery disputes are not relevant and can be used to prejudice a party by seeking to have the jury impute unfairness due to its attorneys' litigation tactics.  All references to such disputes should be precluded.  *Carley v. Crest Pumping Technologies*, No. 15-CV-00161, 2016 WL 8849697, at *2 (W.D. Tex. Aug. 21, 2016); *ContentGuard*, 2015 WL 11089490, at *3.

## X.  Motion *in Limine* No. 10:  Comments Regarding Ethnicity or National Origin

The parties should be precluded from offering testimony, evidence, argument, insinuation, reference, or assertion denigrating, disparaging, touting, exalting, or commenting unnecessarily on the nationality or place of residence of a party or witness, or otherwise differentiating the nationality or place of residence of a party or witness from the United States. *ContentGuard*, 2015 WL 11089490, at *2.

## XI.  Motion *in Limine* No. 11:  Documents Not Part of the Record in the Case

Quintel seeks to introduce exhibits at trial that do not form any part of the record in the case—such as documents that were have not been produced to-date, have not been used as an exhibit at any deposition, were not part of any expert report, and were not submitted as part of any pleading in the case.  These documents include PTX0033, PTX0093, PTX0161, PTX0206, PTX0210, PTX0214, PTX0227, PTX0247, PTX0255, PTX0265, PTX0266, PTX0268, PTX0269, PTX0287, PTX0288, PTX0314, PTX0315, PTX0316, PTX0391, PTX0392, PTX0393, PTX0394, PTX0395, PTX0396, PTX0397, PTX0398, PTX0399, PTX0400, PTX0400, PTX0401, PTX0402, PTX0403, PTX0404, and PTX0549.  None of these documents is admissible. Fed. R. Civ. P. 37(c)(1).  *See, e.g.*, *Orchestrate HR, Inc. v. Trombetta*, No. 3:13-CV-2110-KS, 2017 WL 273669, at *11 (N.D. Tex. Jan. 20, 2017).

**XII.    Motion *in Limine* No. 12:   Expert Opinion Beyond Reports & Testimony**

The Court should exclude any expert opinions, including expert declarations, which go beyond those opinions that have been disclosed in expert reports or through sworn expert deposition testimony.  For example, Quintel's technical expert, Dr. Jensen, testified that he was not opining regarding any alleged breach of contract nor on the extent of measures that Quintel claims to have taken to maintain the secrecy of its claimed trade secrets.  Ex. 3 (Jensen Depo. Tr. 43:19-44:8, 46:20-47:10).  In addition, Dr. Jensen testified that he had not formed any opinions regarding Huawei's antennas other than the AAU 3902, which he never inspected.  *Id.* (Tr. 40:19-41:11).  Moreover, Dr. Jensen should be prevented from testifying as to any of the new opinions and information he supplied in his Declaration in support of Quintel's opposition to summary judgment, such as describing previously unidentified elements allegedly lacking from the prior art VTC Paper.  *See* Dkt. #152-1 ¶ 55.  In support of this Motion, Defendants incorporate their Motion to Strike (Dkt. #163) in full.  Likewise, Quintel's damages expert should be precluded from testifying beyond the scope of his reports or his deposition testimony.  *Tyco Healthcare Group LP v. Applied Medical Resources Corp.*, No. 9:09-CV-176, 2011 WL 7563868, at *2 (E.D. Tex. Sept. 23, 2011) (excluding expert declarations and testimony beyond the scope of the expert reports).

Similarly, the Court should exclude any testimony by Professor Magee on contract damages (or other non-misappropriation theories) because Professor Magee has not opined on contract damages.  *See* Dkt. #150 at pp. 21-23.  In his report, Professor Magee explains that he considered damages only in the context of trade secret misappropriation.  Dkt. #142-34 ¶ 90 n.119.  Magee proffers four theories of damages, but none is recoverable for breach of contract.  Three  theories—unjust  enrichment,  reasonable  royalty,  and  trade  secret  development

costs—seek disgorgement of the supposed benefits obtained by Defendants, not compensation for actual losses incurred by Quintel. *See also* Dkt. #150 at pp. 21-22. "[D]isgorgement is not an available remedy for breach of contract under Texas law." *Versata Software v. Internet Brands*, 902 F. Supp. 2d 841, 865 n.7 (E.D. Tex. 2012) (citing *Henry v. Masson*, 333 S.W.3d 825, 849 (Tex. App.—Houston [1st Dist.] 2010, pet. denied)). Magee's lost patent ownership theory is also not recoverable as contract damages because it does not quantify "loss or damage actually sustained." *Amigo Broadcasting v. Spanish Broadcasting Sys.*, 521 F.3d 472, 482 (5th Cir. 2008). In sum, Professor Magee has not proffered a theory of damages recoverable for a breach of contract and should be precluded from opining on contract damages. *Tyco*, 2011 WL 7563868, at *2.

### MOTION TO EXCLUDE EXPERT TESTIMONY OF MICHAEL JENSEN

I. **Quintel's Technical Expert Michael Jensen Should Be Excluded from Testifying About Matters Outside His Purported Expertise**

An expert can only provide an opinion on matters within his expertise. Yet, Dr. Jensen's reports and testimony contain opinions on matters outside his expertise. Dr. Jensen, an electrical engineering academic, should be precluded from testifying as to all such matters that are outside the scope of his expertise.

A. **Dr. Jensen Cannot Testify to Huawei's Thoughts and Beliefs**

The Court should preclude Quintel from offering Dr. Jensen to provide his opinion of Huawei's thoughts and beliefs via interpretation of various documents. Dr. Jensen made such statements throughout his report:

- Dr. Jensen claims that "Huawei's own records confirm its uncertainty regarding proper application of and potential benefit from this technology." Ex. 4 ¶ 67 (Jensen Report). He further opines that based on a Futurewei invention disclosure form, "Defendants were unaware of [PUT] technology prior to Quintel's disclosure." Ex. 11 at ¶ 6 (Jensen Supp. Report).

- "Dr. Ma's entry [regarding 'some 'thoughts' about AAS in his lab notebook'] suggests that he was uncertain." Ex. 4 at ¶ 94 (Jensen Report).

- "And it is clear from his own table that, as of August 5, 2009, Dr. Ma, like the rest of the industry, did not know the 'benefits' of the 14 various 'AAS capabilities' that he had identified and did not know which of them might be worth pursuing commercially." *Id.* at ¶ 98. This "conclusion" is reached simply because Dr. Ma did not complete a chart in his lab notebook.

- Dr. Jensen goes beyond describing the notebook content that corroborates Dr. Ma's testimony and instead describes Dr. Ma's state of mind: "This is the first instance in his lab notebook where Dr. Ma was clearly considering Per User Tilt technology and how to implement Quintel's technology in Huawei's systems." *Id.* at ¶ 106; *see also* Ex. 11 at ¶ 7 (Jensen Supp. Report) ("Dr. Ma had not been thinking of implementing Per User Tilt technology prior to Quintel's first disclosures").

- Dr. Jensen makes more conclusions on Dr. Ma's state of mind based on statements in a slide deck: "This latter statement suggests that Dr. Ma believed his colleagues understood beamforming in the horizontal plane, and likely wanted them to understand that he was talking about a novel application to the vertical plane." Ex. 4 at ¶ 109 (Jensen Report); Ex. 5 at -955.

- Dr. Jensen interprets Dr. Ma's statements as stating that Quintel's PUT concept was innovative, though the document nowhere says that: "Dr. Ma here was acknowledging that Quintel's Per User Tilt technology was innovative and valuable and Huawei would benefit from the incorporation of this technology into Huawei's products." Ex. 4 at ¶ 122 (Jensen Report); Ex. 6 at -520 (nowhere describing PUT as innovative).

This type of opinion testimony falls outside the bounds of Dr. Jensen's expertise and the bounds of permissible expert testimony. It is for the jury to interpret the underlying documents. As such, any of Dr. Jensen's opinion that relate to Defendants' state of mind, intentions, or knowledge should be excluded. *See Retractable Technologies. v. Abbott Laboratories*, No. 5:05-CV-157, 2010 WL 11531436, at *5-7 (E.D. Tex. June 18, 2010) (excluding expert testimony regarding a party's state of mind, intentions, or knowledge); *Saldana v. State*, No. 11-09-00247-CR, 2011 WL 846095, at *15 (Ct. App. Tex. Mar. 10, 2011) ("Texas courts have consistently

reaffirmed the principle that the testimony of any witness regarding state of mind of another is pure speculation and, therefore, incompetent.") (citation omitted).

### B.    Dr. Jensen Cannot Testify Regarding Co-Inventorship[2]

The Court should exclude testimony from Dr. Jensen regarding Quintel's claim that David Barker is a co-inventor of the '647 Patent.  Quintel offers Dr. Jensen as an expert in the area of antenna technology based on his "scientific, technical, or other specialized knowledge" in communications systems.  Fed. R. Evid. 702.  Dr. Jensen is not offered as an expert on business matters.  Dr. Jensen did not consider the legal standard for inventorship.  Nor did he consider the standard for correcting inventorship under 35 U.S.C. § 256.  In fact, Dr. Jensen did not apply *any* standard.  Ex. 3 (Jensen Depo. Tr. 196:15-23) ("I was not taught the legal standard of [inventorship], and I did not try to make any kind of a conclusion about that.").  Instead, Jensen's entire opinion on co-inventorship is based on his personal experience as a business owner.  Ex. 3 (Jensen Depo. Tr. 223:9-20, 225:9-22).  This is not within the scope of Jensen's expertise, and any testimony on co-inventorship should therefore be excluded.  *See, e.g.*, *Mayes v. Simpson*, No. 6:14-CV-811-MHS-JDL, 2016 WL 8232552, at *2 (E.D. Tex. Jan. 15, 2016) (excluding expert testimony outside his special knowledge or expertise).

### C.    Dr. Jensen Cannot Testify Regarding What Was Known and Valuable in the "Industry"

The Court should exclude testimony from Dr. Jensen regarding Quintel's claim that its alleged trade secrets were not known and valuable.  Dr. Jensen's opinion is couched in terms of what was known and valuable in the "industry," which he testified was comprised of "base station equipment manufacturers," OEMs and operators.  Ex. 3 (Jensen Depo. Tr. 164:24-

---

[2] Defendants recognize and support the Magistrate Judge's Report and Recommendation that Quintel's claim for co-inventorship should be dismissed.  However, as the Court has yet to issue its final order on the claim, Defendants have included this argument.

165:12); *see also id.* (Tr. 166:14-167:21). Dr. Jensen has never worked at any such company; he is an academic who has formed two small start-ups. *Id.* (Tr. 164:18-23 ("us academics")). Quintel is offering Dr. Jensen as an expert in the area of antenna technology based on his "scientific, technical, or other specialized knowledge" in communications systems. Fed. R. Evid. 702. Dr. Jensen is not being offered as an expert on the telecommunications industry. Jensen's entire opinion on knowledge of the industry and value to the industry is based on his personal experience and "literature," the latter which Dr. Jensen admitted was not a reliable methodology. Ex. 3 (Jensen Depo. Tr. 166:21-167:21, 164:18-23 ("in a strict interpretation, [the number of publications on an issue] [is] not an indicator"). No additional reasoning or methodology is presented by Dr. Jensen as a basis for his opinions. *See Brown v. Illinois Central Railroad Co.*, 705 F.3d 531, 536 (5th Cir. 2013) (finding that the expert "failed to articulate a credible methodology to sustain his conclusions").

Regarding the alleged value of Quintel's information, Dr. Jensen admitted that he did not calculate the actual value of alleged confidential information allegedly misused. Ex. 3 (Jensen Depo. Tr. 48:2-49:3) ("I never boil that down to a dollar amount"). Nor did Dr. Jensen opine on the amount of effort or money that Quintel used to develop the alleged confidential information allegedly misused or the development budget of the AAU 3902 product alleged to have used Quintel's technology. *Id.* (Tr. 47:11-48:2, 50:21-51:7). Dr. Jensen did not even address whether the AAU 3902 and SONWav products were commercially successful. *See id.* (Tr. 49:22-50:8).

Dr. Jensen merely summarizes Quintel's litigation position that its alleged trade secrets were known and valuable, two of the factors Texas courts consider to determine whether a trade secret exists. *See MGM Well Servs. v. Mega Lift Sys.*, 2007 WL 150606, at *4 (S.D. Tex. Jan. 16 2007) (excluding witness whose testimony was "an effort to synthesize [the party's] positions

and present them summarily as an expert opinion"); *Keane v. Fox Television Stations*, 297 F. Supp. 2d 921, 939 (S.D. Tex. 2004). Testimony from Dr. Jensen that "information related to Quintel's Per User Tilt technology . . . was not generally known in the industry" in 2009 and there was "uncertainty in the industry as to whether there was value to vertical beamforming" should, thus, be excluded. Ex. 4 ¶¶ 18, 65 (Jensen Report). *See Brown*, 705 F.3d 536 ("To establish reliability under Daubert, an expert bears the burden of furnishing 'some objective, independent validation of [his] methodology.'").

### D. Dr. Jensen's Opinions Regarding "Trade Secrets" Should Be Excluded

Dr. Jensen opines that "Huawei has profited or is planning to profit from sales of a product that includes Quintel's confidential and proprietary information and trade secrets." Ex. 4 ¶ 176 (Jensen Report). As a preliminary matter, Dr. Jensen did not identify a single trade secret in his opening expert report. Dr. Jensen never opined on several of the required elements of a trade secret. Nor could he, as it is not within the scope of his expertise: he had "not been asked nor do[es] [he] have the legal definition of a trade secret;" instead, his use of the term "trade secret" was "loose language"—*i.e.*, not technical terminology—that he inserted. *Id.*, Ex. 3 (Jensen Depo. Tr. 108:1-13). Dr. Jensen, thus, should not be permitted to sway the jury with an unfounded "expert" legal opinion. *See C.P. Interests v. Cal. Pools*, 238 F.3d 690, 697 (5th Cir. 2001).

### E. Dr. Jensen's Opinions Regarding Alleged Misappropriation Should Be Excluded

Jensen's conclusions that the AAU 3902 product and the '647 Patent utilize Per User Tilt, the concept he alleges was misappropriated, are not reliable or based on any scientific principles. Regarding the AAU 3902 product, for example, Dr. Jensen describes that the AAU 3902 has "a necessary capability to enable Per User Tilt." Ex. 4 ¶ 150 (Jensen Report). Yet, there is no

connection with this prerequisite and the ability to perform PUT. *See Brown*, 705 F.3d. 536 ("To establish reliability under Daubert, an expert bears the burden of furnishing 'some objective, independent validation of [his] methodology.")  Additionally, Dr. Jensen admitted he had not inspected any product or reviewed circuitry schematics of the AAU 3902 product which he described as "a yeoman's effort that [he] [did] not have the time to do." Ex. 3 (Jensen Depo. Tr. 19:25-20:3, 29:10-21).  When asked about the AAU 3902 and its uses, Dr. Jensen admitted that he did not "have a lot of information on the 3902." *Id.* (Tr. 26:21-27:5).

With respect to the '647 Patent, Dr. Jensen invents a new test for misappropriation—similarity—and concludes that a block diagram from Quintel and Figure 2B from the '647 patent "are very similar." Ex. 4 ¶ 157 (Jensen Report).  But Dr. Jensen never recites any standard for determining if two block diagrams are "very similar," and presents no legal precedent adopted such a standard.  And Dr. Jensen has failed to explain how he employed his "very similar" comparison "methodology" in a manner that is repeatable and reliable, much less explain how that method "can be (and has been) tested" or identify a "known or potential rate of error." *Daubert v. Merrell Dow*, 43 F.3d 1311, 1316 (9th Cir. 1995).  Instead, Dr. Jensen goes so far as to opine baldly that "Mr. Barker was unaware Dr. Ma was in the process of stealing Quintel's technology." Ex. 7 ¶ 99 (Jensen Reply Report).   This is not the "sound science" contemplated by Daubert and satisfies none of the Daubert factors. *Daubert*, 43 F.3d at 1316; *see also Daubert v. Merrell Dow*, 509 U.S. 579, 587-89 (1993) (describing that "[t]he subject of an expert's testimony must be 'scientific knowledge' and "'scientific' implies a grounding in the methods and procedures of science").

**MOTION TO EXCLUDE EXPERT TESTIMONY OF PROF. STEPHEN MAGEE**

Quintel seeks to have Professor Stephen Magee testify to enormous damages numbers that bear no relationship to the facts or to the economic evidence in this case. Professor Magee offers four different theories of damages, but none meets the standard of reliability established in *Daubert*. His opinions should be excluded in their entirety.

None of these numbers constitute "sufficient facts or data" on which to build a reliable damages

opinion or have anything to do with "the facts of the case," and the damages calculations that they produce should not be shown to the jury.  Fed. R. Evid. 702.

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████

I.     **Not One of Professor Magee's Four Damages Theories Is Based on Reliable Data, Uses a Reliable Methodology, or Is Reliably Applied to the Facts of This Case**

A.     **Professor Magee's "Lost Patent Ownership Theory" Should Be Excluded**

Professor Magee's first misappropriation damages theory is titled "lost patent ownership damages." ████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████ This theory should be excluded for multiple reasons.

1.     ████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

█████████████████████████████

This does not pass muster under *Daubert*. Courts regularly exclude expert damages calculations that rely on a client's "pie-in-the-sky projection[s]." *Nilssen v. Motorola*, No. 93 C 6333, 1998 WL 513090, at *14 (N.D. Ill. Aug. 14, 1998). Lost profits analysis based on the plaintiff's "cheerful prognostications" is "wholly unreliable." *Celebrity Cruises v. Essef Corp.*, 434 F. Supp. 2d 169, 183-84 (S.D.N.Y. 2006); *see also Real Estate Value Co. v. USAir*, 979 F. Supp. 731, 744-45 (N.D. Ill. 1997) (excluding expert testimony as unscientific speculation because lost profits calculations were based solely upon unsubstantiated client estimates for number of sales and profit per sale); *Otis v. Doctor's Assocs.*, No. 94 C 4227, 1998 WL 673595, at *6 (N.D. Ill. Sept. 14, 1998) (precluding lost profit expert testimony where plaintiff failed to show that the underlying sales estimates "represent[ed] anything more than aspirational hopes").

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

█████████████████████████████████████ "Reports specifically prepared for purposes of litigation are not, by definition, of a type reasonably relied upon by experts in the particular field." *United States v. Marine Shale Processors*, 81 F.3d 1361,

1370 (5th Cir. 1996) (quoting *United States v. Tran Trong Cuong*, 18 F.3d 1132, 1143 (4th Cir. 1994)).  As the Fifth Circuit has noted, "the financial and other incentives of litigation pose an unacceptable risk to the objectivity and neutrality of the person gathering the data, such that the data would not normally be considered reliable in the relevant field." *Id.*

███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████  ██
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
██████████████████████████████████████████

    ███████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
█████████████████████  ████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
█████████████████████ ██████████████████████████████████

[3] █████████████████████████████████████████████████████████
██

"The Federal Rules of Evidence and the requirements of *Daubert* are not satisfied where, as here, the expert fails to show any basis for believing someone else's projections." *Diabetes Centers of Am. v. Healthpia Am.*, No. H-06-3457, 2008 WL 375505, at *2 (S.D. Tex. Feb. 11, 2008); *see also JRL Enters. v. Procorp Assocs.*, 2003 WL 21284020, *7 (E.D. La. June 3, 2003) (excluding testimony where expert did no independent research to verify the projections given him by the plaintiff). ████████████████████████████████████████████████

████████████████████████████████████████████████████

Where an expert does "not conduct any independent examination of" the key "sales figures," exclusion is proper. *Seatrax v. Sonbeck Int'l*, 200 F.3d 358, 372 (5th Cir. 2000).

His analysis is unreliable and should be excluded.

2.      **Professor Magee's Profit Margin and Patent Ownership Premium Bear No Relationship to the Facts of this Case**

**B.     Professor Magee's Unjust Enrichment Calculation Should Be Excluded**

Professor Magee's second damages calculation is of Huawei's unjust enrichment from the alleged misappropriation.  It is inadmissible for a simple reason: ███████████████

[REDACTED] Just last month, Judge Alsup

excluded Google's damages expert in the *Waymo v. Uber* trade secret litigation for this very

failing. *Waymo v. Uber Techs.*, No. C 17-00939 WHA, 2017 WL 5148390, at *4 (N.D. Cal.

Nov. 6, 2017) ("Wagner's reliance on the Qi slide's estimates with no apportionment for the

legitimate elements of the Ottomotto acquisition encompassed therein would render his opinion

unreliable under FRE 702."). Trade secret damages theories are invalid where the "damages

expert fail[s] to present evidence of apportionment." *Alcatel USA v. Cisco Systems*, 239 F. Supp.

2d 660, 670-671 (E.D. Tex. 2002). Just as the plaintiff in *Alcatel* "wholly fail[ed] to apportion

its allegedly misappropriated and intangible intellectual property from the rest of Monterey's

cross-connect product or Wavelength Router technology," [REDACTED]

[REDACTED] *Id.*

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

*Rembrandt Social Media v. Facebook*, 22 F. Supp. 3d 585, 594 (E.D. Va. 2013); *see also Calce v. Dorado Exploration*, 309 S.W.3d 719, 738 (Tex. App.—Dallas 2010, no pet.) (appropriate measure of damages in trade secret cases is "the actual value of what has been appropriated"). This is confirmed by a long line of patent cases applying the same apportionment rule in the patent context. *See, e.g., Virnetx v. Cisco Systems*, 767 F.3d 1308, 1325 (Fed. Cir. 2014).[5]

The only time a plaintiff may obtain damages based on the entire market value of the accused product is where it can show that the technology in suit is the sole or primary driver of demand for the accused product as a whole. "For the entire market value rule to apply, the patentee *must* prove that the patent-related feature is the basis for customer demand." *Uniloc USA v. Microsoft Corp.*, 632 F.3d 1292, 1320 (Fed. Cir. 2011) (emphasis in original). ██

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████

---

[5] As the Fifth Circuit has noted, "it seems generally accepted that 'the proper measure of damages in the case of a trade secret appropriation is to be determined by reference to the analogous line of cases involving patent infringement.'" *Univ. Computing Co. v. Lykes-Youngstown Corp.*, 504 F.2d 518, 535 (5th Cir. 1974).

## C.    Professor Magee's Reasonable Royalty Calculation Should Be Excluded

In the alternative to his unjust enrichment calculation, Professor Magee calculates a reasonable royalty that Huawei supposedly would have paid for the alleged trade secrets after a hypothetical negotiation. This calculation is also flawed. Professor Magee uses hypothetical numbers for both his royalty base and royalty rate to generate a grossly inflated result.

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

███████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████ As Judge Shadur observed while rejecting a similar calculation in another trade secret case, "the proper damage calculation would have to be in terms of what then actually transpired, and not in terms of what the prognostications . . . may have been." *Nilssen v. Motorola*, No. 93 C 6333, 1998 WL 513090, at *13 (N.D. Ill. Aug. 14, 1998).

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

█████████████████████████████████████████ ██████ ██████████████

██████████████████████████████████████████████████████████████

███████████████████████████ These inflated calculations should not be shown to the jury.

[6] ████████████████████████████████████████████████████████████

**D.** **Professor Magee's Market Value of Trade Secret Development Costs Calculation Should Be Excluded**

This theory suffers from myriad flaws, any one of which should justify exclusion.



His opinion should be excluded.

## II. Professor Magee's Purported Opinions Are Not His Own

. *See*

*Seahorn Investments v. Fed. Ins. Co.*, No. 1:13CV320-HSO-RHW, 2015 WL 5297264, at *9 (S.D. Miss. Sept. 10, 2015) (excluding "disclosed expert" who did little more than "provide[] editorial assistance to . . . the . . . engineer, who prepared and wrote the Original Report").



As a result, Professor Magee has not formed admissible expert opinions. "Experts must undertake their own analyses and may not blindly rely on the opinions of others." *Genband US v. Metaswitch Networks Corp.*, No. 2:14-CV-33-JRG-RSP, 2015 WL 12911530, at *2 (E.D. Tex. Sept. 30, 2015). An expert must form his opinions through "involvement other than perusing a report drafted by someone else and signing one's name at the bottom." *Seitz v. Envirotech Sys. Worldwide*, No. H-02-4782, 2008 WL 656513, at *2 (S.D. Tex. Mar. 6, 2008); *see also Tewari*

*De-Ox Sys. v. Mountain States/Rosen*, No. SA-08-CA-190, 2009 WL 10674753, at *2 (W.D. Tex. Aug. 19, 2009) (excluding the testimony where expert did not seem to understand key aspects of his opinion and stated in his deposition that he "need[ed] to consult his accountant").

███████████████████████████████████████████████

████████████████████████████████████

█████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████

### III. If Allowed to Testify at All, Professor Magee Should Be Permitted to Introduce No More Than One of His Four Theories at Trial

If Professor Magee's opinions are not excluded, he should not be permitted to present duplicative damages theories at trial, lest he confuse the jury and create an unnecessary risk of double recovery. Trade secret plaintiffs cannot obtain overlapping unjust enrichment and lost profit remedies. *See* Tex. Civ. Prac. & Rem. Code § 134A.004; *Myriad Development v. Alltech*, 817 F. Supp. 2d 946, 984 (W.D. Tex. 2011). "Plaintiffs cannot recover the same damages twice,

even though recovery is based on two different theories." *Atkinson v. Anadarko Bank and Trust Co.*, 808 F.2d 438, 441 (5th Cir. 1987).

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

████████████████████████████████████████████ This is incorrect. As to reasonable royalty, the law is clear that reasonable royalty cannot be combined with any other method of calculating damages. Under TUTSA, "misappropriation may be measured by . . . a reasonable royalty" "in lieu of damages measured by **any other methods**." Tex. Civ. Prac. & Rem. Code § 134A.004 (emphasis added). By approximating what the parties would have agreed in a hypothetical negotiation, the reasonable royalty covers the entire "unauthorized disclosure or use of a trade secret." *Id.* That includes the alleged disclosure in the '647 Patent that is the gravamen of Professor Magee's patent ownership theory.

Nor can Quintel recover both lost patent ownership damages and Huawei's unjust enrichment. *See Clearline Techs. v. Cooper B-Line*, No. 4:11-CV-1420, 2014 WL 4185770, at *4 (S.D. Tex. Aug. 19, 2014) (proper to "compensate for each infringing sale with either lost profits or disgorgement of profits, but not both"). ███████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

█████████████████████████ The Court should limit Quintel to one theory of recovery at trial.

Dated:  December 22, 2017

Respectfully submitted,

/s/ Clyde M. Siebman

**CLYDE MOODY SIEBMAN**
Texas Bar No. 18341600
**ELIZABETH S. FORREST**
Texas Bar No. 24086207
**SIEBMAN, BURG, PHILLIPS & SMITH LLP**
300 North Travis
Sherman, Texas 75090
(903) 870-0070
(903) 870-0066 (fax)
Email: clydemoody@siebman.com
Email: elizabethforrest@siebman.com

**JEFFREY J. COX**
State Bar No. 04947530
jcox@hdbdlaw.com
**HARTLINE DACUS BARGER DREYER LLP**
6688 North Central Expressway, Suite 1000
Dallas, Texas  75206
(214) 369-2100
(214) 369-2118 (fax)

**TIMOTHY BICKHAM – Lead Attorney**
**JAMES F. HIBEY**
**MICHAEL E. STOLL**
**STEPTOE & JOHNSON LLP**
1330 Connecticut Avenue, NW
Washington, D.C.  20036
(202) 429-5517
(202) 429-3902 (fax)
Email:  tbickham@steptoe.com
Email:  jhibey@steptoe.com
Email:  mstoll@steptoe.com

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATION OF SERVICE

The undersigned certifies that on this 22st day of December, 2017, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(a)(3). Any other counsel of record will be served by a facsimile transmission and/or first class mail.

*/s/ Clyde M. Siebman*
Clyde M. Siebman

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that the parties have complied with the meet and confer requirements of Local Rule CV-7(h) and that this motion is opposed. On December 22, 2017, counsel for Plaintiff and counsel for Defendants held a telephonic meet and confer on the issues raised herein. The parties reached an impasse, but will continue to work diligently to reach an agreement as to the issues raised within this motion, as contemplated within the Court's Third Amended Scheduling Order (Dkt. #67).

/s/ Clyde M. Siebman
Clyde M. Siebman

**<u>CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL</u>**

This Motion to Strike is filed under seal pursuant to Local Rule CV-5(a)(7) and the Protective Order entered in this case on January 11, 2016 (Dkt. #29).  The Motion refers to and incorporates documents labeled "Highly Confidential" and "Attorneys' Eyes Only" pursuant to the Protective Order.  Doc. No. 29 ¶ 10.

*/s/ Clyde M. Siebman*
Clyde M. Siebman
