# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| QUINTEL TECHNOLOGY, LTD. | § | |
| | § | |
| V. | § | CASE NO. 4:15cv307 |
| | § | Judge Mazzant/Judge Craven |
| HUAWEI TECHNOLOGIES USA, INC., ET AL. | § | |
| | § | |

## MEMORANDUM ADOPTING REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

Came on for consideration the report of the United States Magistrate Judge in this action, this matter having been referred to the United States Magistrate Judge pursuant to 28 U.S.C. § 636. On December 4, 2017, the Magistrate Judge issued a Report and Recommendation, recommending Motion on Behalf of Plaintiff Quintel Technology Ltd. for Partial Summary Judgment on Claim for Breach of Non-Disclosure Agreement (Dkt. #142) be denied. Quintel Technology Ltd. ("Quintel") filed objections to the Report and Recommendation. The Court conducts a *de novo* review of the Magistrate Judge's findings and conclusions.

### BACKGROUND

On May 15, 2015, Quintel filed the above case against Huawei Technologies USA, Inc., FutureWei Technologies, Inc., Huawei Technologies Co., Ltd. (collectively "Huawei"), and Zhengxiang Ma (together with Huawei, "Defendants"). In its First Amended Complaint ("FAC") filed December 1, 2015, Quintel asserts the following claims against Defendants: (1) breach of contract; (2) misappropriation of trade secrets; (3) unfair competition by misappropriation; (4)

common law fraud and fraud in the inducement; (5) promissory estoppel; (6) unjust enrichment; (7) accounting; and (8) correction of patent inventorship—35 U.S.C. § 256.[1]

The Court provides the following, as outlined in the Report and Recommendation. (Dkt. #184). Quintel "designs, develops, and delivers advanced high-efficiency, high-performance antenna solutions for mobile operators to improve their delivery of wireless network services" and "has developed cutting-edge, proprietary antenna technology to better serve wireless network operators and users." FAC, ¶¶ 2, 10. Collectively, Defendants are "telecommunications equipment maker[s] and, among other things, manufacture[] base stations for wireless networks." *Id.* ¶ 11.

Around July of 2008, David Barker, the chief technology officer and an employee of Quintel, "conceived of a concept to improve reception between an antenna providing cellular telephone and/or data services, and a mobile receiving telephone and/or data services from the antenna" (the "Per User Tilt Concept"). *Id.* ¶¶ 12–13. "In 2009, because of potential synergies in their respective business models, Quintel and [Defendants] explored whether they might partner together to service mobile operators in the wireless network industry." *Id.* ¶ 14.

According to Quintel, after the parties entered into a non-disclosure agreement ("NDA"), Quintel began to share confidential and proprietary information and trade secrets, including its proprietary antenna technology, with Defendants. *Id.* ¶¶ 20, 30–45. In particular, Quintel showed

---

[1] On September 27, 2016, Judge Davidson dismissed the accounting claim for failure to state a claim, and the breach of contract claim against Dr. Ma in his individual capacity was dismissed as conceded by Quintel. (Dkt. #42 at 39). On December 13, 2017, the Magistrate Judge recommended Quintel's breach of contract claim based on failure to destroy documents and unfair competition by misappropriation claim be dismissed with prejudice. (Dkt. #187). On December 18, 2017, the Magistrate Judge recommended Quintel's correction of inventorship claim be dismissed with prejudice. (Dkt. #190).

Defendants how the "Per User Tilt Concept" works and provided some additional confidential and proprietary information regarding Quintel's antenna technology, including information about Quintel's patents—all information Quintel contends was information protected under the NDA.

Quintel alleges the parties "ultimately could not agree on final terms to any business or partnering relationship" and that "despite its professed interest, [Defendants] never intended to enter into a partnering relationship with Quintel." *Id.* ¶¶ 44–46. FutureWei filed a nonprovisional patent application with the USPTO, claiming the benefit of its provisional patent application "seeking protection of an invention based on the Quintel confidential and proprietary antenna technology that Quintel had shared under the terms of the . . .NDA." *Id.* ¶ 50. On November 18, 2014, the USPTO issued FutureWei Patent No. US 8,891,647 B2 ("the '647 patent"), entitled "System and Method for User Specific Antenna Down Tilt in Wireless Cellular Networks." *Id.* ¶ 52. According to Quintel, the '647 patent includes claims for user specific antenna down tilt, which Quintel alleges is a characteristic of the Per User Tilt Concept. Specifically, Quintel alleges the '647 patent includes one or more claims to which David Barker made an inventive contribution, but the '647 patent failed to name David Barker as a joint inventor. *Id.*

## MOTION FOR PARTIAL SUMMARY JUDGMENT

On October 13, 2017, Quintel filed its motion for partial summary judgment on Quintel's first cause of action for breach of contract. According to Quintel, the undisputed facts establish that Huawei breached the September 21, 2009 NDA with Quintel by disclosing and/or using Quintel's confidential information for their own benefit, without Quintel's consent. Quintel asserts the amount of Quintel's damages resulting from Huawei's breach of contract will be determined at trial, but it is undisputed the parties executed the NDA, that Quintel provided confidential information pursuant

to the NDA, that Huawei disclosed and/or used such confidential information provided under the NDA without permission, and that Quintel has been damaged as a result of the breach; thus, according to Quintel, it is entitled to partial summary judgment on the limited issue of Huawei's liability for breach of the NDA.

## REPORT AND RECOMMENDATION

On March 1, 2017, the Magistrate Judge issued a Report and Recommendation, recommending Quintel's motion be denied. The Magistrate Judge found there is a genuine issue of material fact regarding whether each piece of Quintel information at issue constitutes "Confidential Information" as defined in the non-disclosure agreement between the parties, and Quintel cannot show a breach of the non-disclosure agreement by Defendants as a matter of law. Given the Magistrate Judge's finding there is a genuine issue of material fact whether the Quintel information at issue constitutes "Confidential Information" under the terms of the NDA, she did not address whether Defendants indisputably used or disclosed any "Confidential Information" in violation of the agreement or whether Defendants' alleged breach of the agreement indisputably damaged Quintel. Quintel filed objections to the Report and Recommendation on December 18, 2017. (Dkt. #191). Defendants filed a response to Plaintiff's objections on December 29, 2017. (Dkt. #206).

## OBJECTIONS

Quintel states it identified in its motion four separate breaches committed by Defendants, three of which relate to Huawei's use and disclosure of Quintel's information in Huawei's October 30, 2009 provisional patent application submitted to the USPTO (the "'663 Provisional Patent Application"). **First**, Huawei included on page 8 of the presentation that it submitted to the USPTO a copy of one of Quintel's simulation results slides that Quintel had disclosed to Huawei on

September 22, 2009. Huawei's submission included the Quintel slide complete with Quintel's logo and confidential markings still in place. **Second**, Huawei also used and disclosed Quintel's simulation results on page 7 of the presentation that it submitted with the '663 Provisional Patent Application, stating that "[f]or HSPA and LTE, simulation results of 30% overall cell throughput and 90% edge user throughput has been reported." **Third**, Huawei further confirmed its reliance on Quintel's simulation results when it identified them as one of two "references" in the '663 Provisional Patent Application. In addition to these breaches related to Huawei's pursuit of a patent, Quintel also identified Huawei's use of Quintel's information more generally in Huawei's development of products.

Quintel asserts the Magistrate Judge erred in concluding there was a genuine issue of material fact as to whether the information Quintel provided to Huawei constituted "Confidential Information" within the meaning of the NDA. According to Quintel, the information Quintel provided to Huawei was "intended to be kept confidential" and did not fall within any of the exceptions set forth in Section 1(b) of the NDA.

## APPLICABLE LAW

Summary judgment is appropriate when the movant is able to demonstrate that the pleadings, affidavits, and other evidence available to the court establish there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). Quintel, as the movant, bears the initial burden to demonstrate the absence of any material fact. *Celotex v. Catrett,* 477 U.S. 317, 332 (1986). If Quintel meets that burden, Defendants must point to admissible evidence demonstrating there is a genuine issue for trial. FED. R. CIV. P. 56(e). In assessing the proof, the court views the evidence in the light most favorable to the nonmovant. *Matshusita Elec.*

*Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574 (1986).

## ***DE NOVO* REVIEW**

A plaintiff seeking relief under Texas law for breach of contract must establish: (1) the existence of a valid contract; (2) the plaintiff's own performance of the agreement; (3) a breach of contract by the defendant; and (4) the plaintiff was damaged as a result of the breach. *City of Dallas v. Delta Air Lines, Inc.*, 847 F.3d 279, 287 (5th Cir. 2017); *Orthofix, Inc. v. Hunter*, 630 Fed. Appx. 566, 574, 2015 U.S. App. LEXIS 20111 at *20 (6th Cir. 2015) (applying Texas law). According to the Magistrate Judge, there is no dispute as to the existence of a binding non-disclosure agreement between the parties, and Quintel asserts it is undisputed it performed under the NDA as the "Discloser."

The issue before the Magistrate Judge was whether Huawei indisputably breached the NDA. When a party to a non-disclosure agreement, without permission, discloses or uses information that falls within the agreement's definition of "confidential information," it has committed a breach of contract as a matter of law. *Transverse, L.L.C. v. Iowa Wireless Servs., L.L.C.*, 617 Fed. Appx. 272, at *280-82 (5th Cir. 2015). In the NDA, Huawei agreed to maintain the confidentiality of all "Confidential Information" shared by Quintel, as that term is defined in the agreement.

As noted by the Magistrate Judge, the NDA defines "Confidential Information" as "all information supplied by the Discloser to the Recipient and ***intended to be kept confidential*** including, without limitation, all nonpublic information relating to business plans or practices, concepts, experimental work or prototypes, costs, sources of supply, pricing methods, client lists, prospective client lists, financial or technical matters, trade secrets, designs, know-how, inventions, operations, the marketing or promotion of products or services, business and information received

6

from others that Discloser is obligated to treat as confidential and any other information received or acquired by Recipient from the Discloser in the course of exploring the Project [potential areas of cooperation]." (Dkt. #184 at 25-26) [quoting Quintel Ex. 2 ¶ 1(b) (emphasis added)].

The NDA provides four exceptions to "Confidential Information:"

> Confidential Information shall not include any information, ***however designated***, that: (i) ***is*** or subsequently becomes ***publicly available*** through no wrongful act of the Recipient; (ii) ***is already known*** to the Recipient at the time of disclosure; (iii) ***is rightfully received*** by the Recipient ***from a third party*** without restriction on disclosure and without breach of this Agreement; (iv) ***is independently developed*** by Recipient and without the use of any of the Confidential Information.

(Dkt. #184 at 26) [quoting Quintel Ex. 2 ¶ 1(b) (emphasis added)].

The Magistrate Judge considered each piece of information Quintel is claiming as a basis for a breach of the NDA and whether it meets the above definition of "Confidential Information." (Dkt. #184 at 27). The Magistrate Judge concluded Quintel had not met its burden of showing the absence of any genuine issue of material fact. According to the Magistrate Judge, Defendants have come forward with competent summary judgment evidence demonstrating there are genuine issues for trial regarding whether each piece of Quintel information constitutes "Confidential Information" as defined in the NDA. *Id.*

Quintel contends the undisputed evidence demonstrates Huawei's understanding that the material presented by Quintel was "intended to be kept confidential," as evidenced by the markings on the disclosures as confidential as well as Dr. Ma's testimony. (Dkt. #191 at 4); *see* Ma Depo. at 29:4-6 (agreeing a Quintel slide marked "commercial and confidential" was provided under the NDA); 40:5-7 (agreeing Mr. Veni provided information in his September 22, 2009 email "in confidence under the NDA"); and 102:8-18 (agreeing that an October 23, 2009 email from Dr. Ma

regarding the Quintel simulation report referred to an attachment containing the Quintel simulations "that Quintel had provided to Huawei under the NDA.").

Despite the information being marked confidential, the Magistrate Judge found Defendants had produced evidence sufficient to create a genuine issue of material fact regarding whether Quintel intended to keep the concept of PUT and its simulation results confidential as that term is defined in the NDA. Not only did Quintel disclose the concept of PUT and its simulations to third parties, it did so to several companies without having a written confidentiality agreement. According to the Magistrate Judge, the substance of Slide 8 was also shared with third parties without regard to whether a confidentiality agreement existed. (Dkt. #184 at 29). The Magistrate Judge concluded Defendants' evidence was sufficient to create a fact issue regarding Quintel's intent to keep the concept of PUT and the simulation results (contained in Slides 7 and 8) confidential.

Regarding Dr. Ma's testimony, the Magistrate Judge noted Dr. Ma is not a party to the breach of contract claim and that he testified in his individual capacity and not as a representative for Defendants. According to the Magistrate Judge, Dr. Ma's statements do not address the critical issue of whether a specific piece of information meets the NDA's definition of "Confidential Information." Significantly, because the NDA excludes from the definition of "Confidential Information" any information that (1) is or subsequently becomes publicly available, (2) is already known to the recipient, (3) is rightfully received from a third party, and (4) is independently developed, Dr. Ma's opinion is not dispositive.[2] (Dkt. #184 at 30).

---

[2] The Magistrate Judge further noted the inclusion of the "Commercial in Confidence" marking by Quintel on its simulations was not dispositive. According to the Magistrate Judge, the NDA provides categories of information are excluded from the definition of "Confidential Information" regardless of how they are designated. (Dkt. #184 at 31) [citing Quintel Ex. 2, ¶ 1(b)

8

According to Quintel, there is no dispute that Quintel's simulation results and the block diagram do not fall within any of the four exceptions. Quintel argues Defendants do not argue that Quintel's simulation results, which were used and disclosed by Huawei in the '663 Provisional Patent Application (e.g., Slide 8) fall within any of the four exceptions; rather, Defendants' entire argument with respect to the simulation results is that there is a fact issue regarding whether they were "intended to be kept confidential." (Dkt. #191 at 6). Quintel asserts the Magistrate Judge's finding in that regard is incorrect, and because there is no dispute that the simulation results do not fall within any of the four exceptions, Huawei's use and disclosure of Quintel's simulation results in Slide 8 of the '663 Provisional Patent Application was a clear breach of the NDA. *Id*. Quintel asserts the same is true of Huawei's reliance on Quintel's simulation results as a "reference" and on page 7 of the same submission to the USPTO. *Id*. Quintel also objects to the Magistrate Judge's findings that there is a fact issue as to whether its block diagram and PUT concept constitute "Confidential Information" under the NDA.

In her Report and Recommendation, the Magistrate Judge set forth approximately eighteen pages of summary judgment evidence, including evidence relied upon by Defendants regarding Quintel's disclosures of the same information to third parties without requiring a confidentiality agreement. (Dkt. #184 at 5-23 & 28-29). On the whole, the Court finds there is a genuine issue of material act as to whether Quintel intended to keep the information confidential as that term is defined in the NDA. Of course, the evidence may ultimately show that Quintel intended to keep such information confidential. But that is an issue of material fact for trial.

---

(emphasis added)].

The Court has carefully reviewed the relevant briefing, the Report and Recommendation, and the objections, and is of the opinion the findings and conclusions of the Magistrate Judge are correct. The Court adopts the Magistrate Judge's report as the findings and conclusions of the Court. It is therefore

**ORDERED** that Motion on Behalf of Plaintiff Quintel Technology Ltd. for Partial Summary Judgment on Claim for Breach of Non-Disclosure Agreement (Dkt. #142) is hereby **DENIED**.

**SIGNED this 3rd day of January, 2018.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE