# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| QUINTEL TECHNOLOGY, LTD. | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| V. | § | CASE NO. 4:15cv307 |
| | § | Judge Mazzant/Magistrate Judge Craven |
| HUAWEI TECHNOLOGIES USA, INC., ET AL. | § | |
| | § | |
| | § | |
| *Defendants.* | § | |

## ORDER ADOPTING REPORT AND
## RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

Came on for consideration the report of the United States Magistrate Judge in this action, this matter having been referred to the United States Magistrate Judge pursuant to 28 U.S.C. § 636. On December 13, 2017, the Magistrate Judge issued a Report and Recommendation, recommending Defendants' Motion for Summary Judgment on Statute of Limitations, Preemption, and Preclusion (Dkt. #141) be granted in part and denied in part. Specifically, the Magistrate Judge recommended Quintel's breach of contract claim based on failure to destroy documents and unfair competition by misappropriation claim be dismissed with prejudice. Otherwise, the Magistrate Judge recommended Defendants' motion be denied.

Quintel Technology Ltd. ("Quintel") filed objections to the parts of the Report and Recommendation which recommend dismissal of Quintel's breach of contract claim against Defendants Huawei Technologies USA, Inc., FutureWei Technologies, Inc., and Huawei Technologies Co., Ltd.'s (collectively, "Huawei") based on Huawei's failure to destroy documents and Quintel's unfair competition by misappropriation claim. Defendants filed a response to Quintel's objections.

Defendants also filed objections to parts of the Report and Recommendation. According to Defendants, Quintel's claims for misappropriation of trade secrets and unjust enrichment are time-barred, and Quintel's claims for promissory estoppel and unjust enrichment are precluded by the existence of a valid contract. Quintel filed a response to Defendants' objections.

The Court conducts a *de novo* review of the Magistrate Judge's findings and conclusions.

## BACKGROUND

On May 15, 2015, Quintel filed the above case against Huawei and Zhengxiang Ma (together with Huawei, "Defendants"). In its First Amended Complaint ("FAC") filed December 1, 2015, Quintel asserted the following claims against Defendants: (1) breach of contract; (2) misappropriation of trade secrets; (3) unfair competition by misappropriation; (4) common law fraud and fraud in the inducement; (5) promissory estoppel; (6) unjust enrichment; (7) accounting; and (8) correction of patent inventorship—35 U.S.C. § 256.[1]

Defendants moved for summary judgment dismissing Quintel's claims for misappropriation of trade secrets (Count II), unfair competition by misappropriation (Count III), promissory estoppel (Count V), and unjust enrichment (Count VI) in their entirety and one of the bases for Quintel's claim for breach of contract (Count 1). Defendants' motion raises the following issues: statute of limitations, preclusion, and copyright preemption. Specifically, Defendants argue the statute of limitations on Quintel's misappropriation of trade secrets, unfair competition by misappropriation, and unjust enrichment claims have expired, as well as Quintel's breach of contract claim based on alleged failure to destroy materials. Additionally, Defendants assert Quintel's quasi-contractual promissory estoppel and unjust enrichment claims are precluded by Quintel's breach of contract

---

[1] On September 27, 2016, Judge Davidson dismissed the accounting claim for failure to state a claim, and the breach of contract claim against Dr. Ma in his individual capacity was dismissed as conceded by Quintel (Dkt. #42 at p. 39).

claim. Finally, Defendants assert Quintel's claim of unfair competition by misappropriation is preempted by copyright law.

## REPORT AND RECOMMENDATION

On December 13, 2017, the Magistrate Judge issued a Report and Recommendation, recommending Defendants' motion be granted as to Quintel's breach of contract claim based on failure to destroy documents and unfair competition by misappropriation claim. Otherwise, the Magistrate Judge recommended Defendants' motion be denied.

With regard to whether Quintel's claims for misappropriation, unfair competition by misappropriation, and unjust enrichment are barred by limitations, the Magistrate Judge could not conclude as a matter of law that the discovery rule should not apply and Quintel's claims should be barred by the statutes of limitations. The Magistrate Judge recognized circumstances may exist where the issuance of a patent may suffice to place a party on constructive notice of its injury. However, relying on *Versata Software, Inc. v. Internet Brands, Inc.*, 2012 WL 588790, at *1 (E.D. Tex. Feb. 22, 2012) (J. Bryson, sitting by designation), the Magistrate Judge held there are "countervailing circumstances" in this case to consider, such as the parties' non-disclosure agreement ("NDA") and the summary judgment evidence that Defendants reaffirmed their good-faith dealing with Quintel (Dkt. #187 at p. 29). The Magistrate Judge agreed with Quintel that whether the publication of the non-provisional patent application provided constructive notice is a question of fact to be decided by the jury, especially given that the parties were operating under an NDA. (Dkt. #187 at p. 31) (citing *Raytheon Co. v. Indigo Sys. Corp.*, 688 F.3d 1311, 1317–18 (Fed. Cir.2012) (reversing grant of summary judgment on statute of limitations grounds where the district court resolved factual questions against the plaintiff in concluding the plaintiff "should have acquired and disassembled the [defendant's] camera before March 2004")).

According to the Magistrate Judge, the summary judgment evidence also reveals a material fact issue regarding Quintel's assertion of fraudulent concealment. Finding a fact issue as to when Quintel could have discovered the alleged fraud through the exercise of reasonable diligence, the Magistrate Judge denied Defendants' motion for summary judgment regarding limitations as to Quintel's claims for misappropriation, unfair competition by misappropriation, and unjust enrichment. However, the Magistrate Judge recommended Quintel's breach of contract claim for failure to destroy documents be dismissed as time-barred. The Magistrate Judge specifically noted this recommendation does not affect the other bases of Quintel's breach of contract claim, including that Defendants breached the NDA confidentiality obligations (Dkt. #187 at p. 36).

Regarding preclusion of Quintel's quasi-contractual claims of promissory estoppel and unjust enrichment, the Magistrate Judge recommended this part of Defendants' motion be denied at that time, specifically leaving the decision to the undersigned as to the proper timing of dismissal of Quintel's quasi-contractual claims (Dkt. #187 at p. 40). Finally, the Magistrate Judge found Quintel's unfair competition by misappropriation claim preempted by federal copyright law and recommended that part of Defendants' motion for summary judgment be granted (Dkt. #187 at p. 46).

## OBJECTIONS

Defendants filed objections to the Report and Recommendation. Defendants object to the Magistrate Judge's finding that Defendants are not entitled to summary judgment on statute of limitations grounds for the misappropriation, unfair competition by misappropriation, and unjust enrichment claims. Specifically, Defendants assert that neither the discovery rule nor the doctrine of fraudulent concealment can be applied to toll the running of the statute of limitations after May 5, 2011, and these claims are time-barred. Defendants also object to the Magistrate Judge's

recommendation that Quintel's claims for promissory estoppel and unjust enrichment be denied at this time.

Quintel filed objections to the parts of the Report and Recommendation which recommend dismissal of Quintel's breach of contract claim based on Huawei's failure to destroy documents and Quintel's unfair competition by misappropriation claim. Regarding the first issue, Quintel states Section 5 of the NDA required Huawei to destroy any Quintel confidential documents upon written request. According to Quintel, the 2011 email chain relied upon by the Magistrate Judge is ambiguous as to whether Huawei would comply with Quintel's written request, and Quintel should have an opportunity to present its evidence to the jury as to when it should have known that Huawei breached Section 5 of the NDA. Regarding the second issue, Quintel asserts the Magistrate Judge erred in recommending dismissal of its unfair competition by misappropriation claim.

## APPLICABLE LAW

Summary judgment is appropriate when the movant is able to demonstrate that the pleadings, affidavits, and other evidence available to the court establish there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The movant bears the initial burden to demonstrate the absence of any material fact. *Celotex v. Catrett,* 477 U.S. 317, 332 (1986). If the movant meets that burden, the nonmovant must point to admissible evidence demonstrating there is a genuine issue for trial. FED. R. CIV. P. 56(e). In assessing the proof, the court views the evidence in the light most favorable to the nonmovant. *Matshusita Elec.Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574 (1986).

## *DE NOVO* REVIEW

### *Defendants' Objections*

### Whether Quintel's claims for misappropriation, unfair competition, and unjust enrichment are barred by limitations

The Court first considers whether the Magistrate Judge erred in finding Defendants are not entitled to summary judgment on statute of limitations grounds regarding Quintel's claims for misappropriation, unfair competition by misappropriation, and unjust enrichment. In Texas, the statute of limitations is three years for misappropriation of trade secrets and unfair competition. TEX. CIV. PRAC. & REM. CODE § 16.010. The statute of limitations for unjust enrichment claims is two years. *Target Strike, Inc. v. Marston & Marston, Inc.,* 524 F. App'x 939, 944 n.7 (5th Cir. 2013).

Defendants' patent applications were filed on May 5, 2011, and Quintel filed this lawsuit on May 5, 2015, four years to the date of filing. Defendants contend publication of the patent application disclosed reliance on the provisional application, which included a Quintel slide as part of the submission, and put Quintel, a sophisticated patent applicant, on constructive notice of its claims as of May 5, 2011. Quintel argues the discovery rule and fraudulent concealment toll the statutes of limitations. As noted above, Defendants assert that neither the discovery rule nor the doctrine of fraudulent concealment can be applied to toll the running of the statute of limitations after May 5, 2011, and these claims are time-barred.

Under Texas law, "the party asserting a limitations defense bears the burden of proof to not only establish the applicability of the limitations statute, but also prove when the opponent's cause of action accrued in order to demonstrate the bar of limitations." *Hernandez v. Frazier,* No. CV SA-11-CV-9-DAE, 2014 WL 1390887, at *3 (W.D. Tex. Apr. 9, 2014) (citing *Intermedics v. Grady,* 683 S.W.2d 842, 845 (Tex. App. 1984)). "'Generally, a cause of action accrues, and the statute

of limitations begins to run, when facts come into existence that authorize a claimant to seek a judicial remedy.'" *Dell Computer Corp. v. Rodriguez,* 390 F.3d 377, 389 (5th Cir. 2004) (quoting *Willis* v. *Donnelly,* 118 S.W.3d 10, 28 (Tex. App.—Hous. [14 Dist.] 2003, no pet.) (citing *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.,* 962 S.W.2d 507, 514 (Tex. 1998))). Stated differently, a claim accrues and the limitations period begins to run "when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred." *S.V. v. R.V.,* 933 S.W.2d 1, 3 (Tex.1996).

However, under the Texas discovery rule, the limitations period does not begin to run "until the plaintiff knew or, exercising reasonable diligence, *should have known* of the facts giving rise to a cause of action." *Target Strike*, 524 F. App'x at 944 (emphasis in original) (quoting *HECI Exploration Co. v. Neel,* 982 S.W.2d 881, 886 (Tex.1998)). "The Texas Supreme Court has sought to limit the application of the discovery rule and, to that end, has stated that it should only apply where the nature of the injury is inherently undiscoverable and where the injury itself is objectively *verifiable.*"[2] *Target Strike*, 524 F. App'x at 944 (citing *HECI*, 982 S.W.2d at 886).

Under Texas law, fraudulent concealment is an equitable doctrine that tolls the statute of limitations. *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 366 (5th Cir. 2000). "Where a defendant is under a duty to make disclosure but fraudulently conceals the existence of a cause of action from the party to whom it belongs, the defendant is estopped from relying on the statute of limitations until the party learns of the right of action or should have learned thereof through the exercise of reasonable diligence." *Id.* (quoting *Borderlon v. Peck,* 661 S.W.2d 907, 908 (Tex. 1983)). Mere concealment is insufficient to establish fraudulent concealment. *See In the Matter*

---

[2] The State of Texas has incorporated the discovery rule by statute for misappropriation of trade secrets. *Target Strike*, 524 F. App'x at 944 (citing TEX. CIV. PRAC. & REM. CODE § 16.010(a)).

*of Placid Oil Co.,* 932 F.2d 394, 399 (5th Cir. 1991). Thus, there must have been a duty, on Defendants' part, to disclose their alleged acts of misappropriation. The party asserting the fraudulent concealment defense to the statute of limitations bears the burden of showing that the defendant was under a duty to make a disclosure but fraudulently concealed the existence of a cause of action from the one to whom it belongs. *Seatrax,* 200 F.3d at 366 (citing *Timberlake v. A.H. Robins Co., Inc.,* 727 F.2d 1363, 1366 (5th Cir.1984)).

According to Defendants, the discovery rule does not apply because once the patent application was published on May 5, 2011, it was no longer inherently undiscoverable as a matter of law. Defendants take issue with the Magistrate Judge's discussion of *Versata Software, Inc. v. Internet Brands, Inc.*, 2012 WL 588790 (E.D. Tex. Feb. 22, 2012), asserting the discussion in that case as to whether reasonable diligence applied was not applicable to the discovery rule inquiry but instead applies to the fraudulent concealment inquiry.

As presented by the Magistrate Judge, the facts of *Versata* are as follows. In 1997, the parties explored the possibility of collaborating and combining their products. *Id.* "In order to facilitate their collaboration, the parties entered into a Confidentiality Agreement." *Id.* The collaboration failed, and in 1999 the defendants sued the plaintiffs in California state court alleging tortious interference with contractual relations. *Id.* The plaintiffs then filed a patent infringement action in a federal court in Texas. The two cases settled in 2001 when the parties entered into an agreement referred to as the "Settlement Agreement." *Id.*

In early 2000, during the pendency of the California and Texas lawsuits, the plaintiffs filed a provisional patent application that became the basis for two issued patents ('821 patent and '756 patent). *Id.* On August 8, 2008, the plaintiffs filed the case before the court, alleging the defendants infringed the two patents. *Id.* at *2. In response, the defendants filed suit against the plaintiffs in

Texas state court in 2009, claiming misappropriation of trade secrets and conversion and seeking a declaration to quiet title. *Id.* The defendants alleged that during the pendency of the parties' "brief period of collaboration," the plaintiffs had obtained confidential information from the defendants and "passed it off" as the plaintiffs' own inventions before the USPTO. *Id.*

The defendants later amended their counterclaims in the federal action before the court to include state law claims. *Id.* On summary judgment motion, the plaintiffs challenged those state law counterclaims. The plaintiffs first alleged the defendants' claims were barred by the applicable three-year statute of limitations because the claim accrued no later than November 2006, when the '821 patent issued. *Id.* The plaintiffs argued the defendants either knew or should have discovered the misappropriation no later than that date, which would make that counterclaim untimely, and "pointed to five circumstances that they contend[ed] should have put the defendants on notice of the potential counterclaim:"

> (1) the defendants' persistent doubts about the security of the trade secrets they shared with the plaintiffs; (2) the competitive nature of the relationship between the plaintiffs and the defendants; (3) the fact that the defendants actually inspected the plaintiffs' technology that they claim incorporated the trade secrets; (4) the issuance of the #821 patent; and (5) the public availability of the allegedly misappropriated technology on a website.

*Id.*

Federal Circuit Judge William Bryson, sitting by designation for the Eastern District of Texas, denied the motion, finding the plaintiffs had not shown they were entitled to summary judgment as to the timeliness of the misappropriation counterclaim. *Id.* at *4. According to the court, the movant must conclusively prove when the cause of action accrued and negate the discovery rule by "proving as a matter of law that there is no genuine issue of material fact about when the [non-movant] discovered, or in the exercise of reasonable diligence should have discovered the nature

of its injury." *Id.* The court found the plaintiffs had failed to show there was no disputed issue of material fact as to when the defendants should have known of the misappropriation. *Id.* Stated differently, the court held the plaintiffs had not shown "that no reasonable jury could find that a reasonable person in the defendants' position would have investigated the allegations that the plaintiffs were misappropriating trade secrets." *Id.*

The court noted that "[t]he issuance of a patent may sometimes suffice to put the defendants on notice that it incorporates their misappropriated technology," but that there were "countervailing circumstances to consider" which rendered the issues unsuitable for resolution at the summary judgment stage. *Id.* Specifically, although the plaintiffs contended the defendants were "on notice of any misappropriation because they expressed concern that the plaintiffs would steal their trade secrets, the defendants [replied] that in response to their concerns the plaintiffs gave them assurances that their concerns were not well founded, and that those assurances relieved them of any duty to investigate further." *Id.*

According to the court, the plaintiffs had not put forth sufficient evidence to entitle them to summary judgment "on the issue of whether the defendants' reliance on assurances given to them by the plaintiffs was so unreasonable that, as a matter of law, the defendants were under a duty to inquire into the allegations of misappropriation." *Id.* The court could not say that as a matter of law "a reasonable juror would have to conclude the defendants were on notice of the misappropriation by November of 2006." *Id.* (citing *Stark v. Advanced Magnetics, Inc.*, 29 F.3d 1570, 1577–78 (Fed. Cir. 1994) (observing that factors such as the existence of a relationship of trust between the parties or deliberate misrepresentation are pertinent to a determination of whether the issuance of a patent gave the defendants constructive notice of its content for purposes of statute of limitations)).

The Court is not convinced *Versata* only applies to the fraudulent concealment inquiry, as urged by Defendants in their objections. The court in *Versata* never mentioned "fraudulent concealment" in the order, whereas it did mention the discovery rule. Either way, the result is the same. The Court finds Judge Bryson's reasoning applicable under the facts of this case. *See Raytheon Co. v. Indigo Sys. Corp.*, 688 F.3d 1311, 1316–17 (Fed. Cir. 2012) ("While the discovery rule is focused on the reasonableness of the plaintiff's failure to discover a cause of action and fraudulent concealment is focused on the actions of the defendant to prevent the plaintiff from discovering the cause of action, the two issues turn on the same questions of fact in the present case."). As discussed in further detail below, the parties were operating under a NDA, and constructive notice based on allegedly public information is a disputed issue for the jury to decide.

In the context of application of the fraudulent concealment doctrine, Defendants attempt to distinguish *Versata*, asserting "[u]nlike the *Versata* complainant, Quintel never asked Defendants if they had done anything wrong, and Defendants never assured Quintel, in response to such an inquiry, that they had not (as the *Versata* respondent had)." (Dkt. #200 at pp. 2–3). Thus, Defendants assert they did not owe Quintel a "duty to disclose" their patent application filings. The Court disagrees.

As the Magistrate Judge held, considering the NDA and the relationship between the parties, Defendants had such a duty. *See Seatrax*, 200 F.3d at 366 (noting that two of four factors in the duty to disclose analysis are the presence of a non-disclosure agreement and whether a "duty of confidentiality" is implied from the parties' relationship). Moreover, according to Quintel, a formal "duty to disclose" is not necessary to satisfy the "use of deception" element. *See Aspen Tech., Inc. v. M3 Tech., Inc.*, 569 F. App'x 259, 265 (5th Cir. 2014) (citing *Tex. v. Allan Constr. Co.*, 851 F.2d 1526, 1532–33 (5th Cir.1988); *Santanna Natural Gas Corp. v. Hamon Operating Co.*, 954 S.W.2d

885, 891 (Tex.App.—Austin 1997, pet. denied) ("[A]ffirmative misrepresentations can support a fraudulent concealment defense to a statute of limitations bar even in the absence of a duty to disclose.")).

Even if there was such a duty, Defendants contend Quintel could not have reasonably relied on any alleged deceptive statement because Quintel considered Huawei a competitor and never trusted Huawei (Dkt. #200 at pp. 3–4). For the same reason discussed above, that the parties were operating under an NDA, the Court finds reasonable Quintel's reliance on any alleged deceptive statements by Defendants. There is evidence showing Quintel reasonably believed Defendants were honoring their obligations under the NDA, despite the two companies being competitors.

Defendants' objections are overruled.

**Whether Quintel's claims for promissory estoppel and unjust enrichment are precluded by Quintel's breach of contract claim and should be dismissed at this time**

Defendants also object to the Magistrate Judge's recommendation that Quintel's claims for promissory estoppel and unjust enrichment be denied at this time. In so ruling, the Magistrate Judge acknowledged such claims are generally precluded when a contract governs the payment sought by the plaintiff (Dkt. #187 at pp. 36–37) (quoting *Birchler v. JPMorgan Chase Bank*, No. 4:14-CV-81- ALM, 2015 WL 1939438, at *6 (E.D. Tex. Apr. 29, 2015) ("The strength of the breach of contract claim does not govern whether the remedy precludes an unjust enrichment claim, but 'the mere existence of a potential contract claim bars the unjust enrichment remedy.'")). However, the Magistrate Judge also acknowledged that in certain circumstances, until an action has actually reached the point of entering judgment, "Rule 8 allows a plaintiff to explore alternative, mutually exclusive theories." (Dkt. #187 at p. 39) (quoting *Emerald City*

*Mgmt., LLC v. Kahn*, CA No. 4:14cv358-ALM, 2016 WL 98751, at *30 n.19 (E.D. Tex. Jan. 8, 2016)).

In response to Defendants' argument that Quintel's promissory estoppel and unjust enrichment claims are precluded by the NDA, Quintel asserted the preclusion argument is premature until this Court (or a jury) determines that Quintel's breach of contract claim against the Huawei defendants covers their misconduct and is valid and enforceable against each of them (Dkt. #187 at p. 37). "According to Quintel, until there has been a conclusive finding that the parties' NDA was a valid, express, and enforceable contract, and that the contract covered the entirety of Quintel's claims, Quintel may continue to pursue its contractual and quasi-contractual claims in the alternative, including up to and through trial." (Dkt. #187 at p. 37). Quintel further asserted Defendants' preclusion argument is inapplicable to its promissory estoppel and unjust enrichment claims against Dr. Ma because Quintel is not alleging breach of contract against Dr. Ma in his individual capacity.

The Magistrate Judge recommended this part of Defendants' motion be denied at that time, specifically leaving the decision to the undersigned as to the proper timing of dismissal of Quintel's quasi-contractual claims (Dkt. #187 at p. 40). In their objections, Defendants assert the parties do not contest that the contract at issue in this case (the NDA) is a valid and enforceable contract or that the contract covers the subject matter of the dispute in the litigation. As such, Defendants assert the claims are more similar to the undersigned's ruling in *Birchler,* 2015 WL 1939438 (dismissing quasi-contractual claims on summary judgment), than they are to *Emerald City Mgmt.,* 2016 WL 98751, where the parties contested the validity of the contract.

In response, Quintel asserts the undersigned in *Birchler* found preclusion only after granting the defendant's summary judgment motion on the breach of contract claim and finding that the

plaintiffs' obligations were covered by the contract. Conversely, here, it contends Quintel's breach of contract claim remains viable and will proceed to trial. There has not been a conclusive determination as to Quintel's breach of contract cause of action. As the Magistrate Judge pointed out, "[e]ven though Defendants do not dispute the NDA is a valid and enforceable contract, Quintel points out the issue of Defendants' misappropriation, use, and disclosure of Quintel's confidential information and trade secrets after executing the NDA has not been determined." (Dkt. #187 at pp. 38–39).

It is true, as urged by Quintel, Defendants have taken the position that none of the information Quintel provided to them was governed by the NDA because it was not "Confidential Information" as defined in the agreement. However, as stated by this Court, the strength of the breach of contract claim does not govern whether the remedy precludes an unjust enrichment claim. The mere existence of a potential contract claim bars the unjust enrichment remedy. *Birchler*, 2015 WL 1939438, at *6.

The law is clear that quasi-contractual claims are unavailable when a valid, express contract governing the subject matter of the dispute exists. "A party can plead legal and equitable claims in the alternative, but only when one party disputes the existence of a contract governing the dispute." *Johnson v. Wells Fargo Bank, NA*, 999 F. Supp. 2d 919, 929 (N.D. Tex. 2014) (dismissing unjust enrichment claim where the plaintiff and defendant stipulated to the validity of the contract); *see also Cooper v. Gates*, No. 3:16-CV-2630-L, 2017 WL 3209452, at *4 (N.D. Tex. Mar. 7, 2017) (stating a party can plead legal and equitable claims in the alternative only when one party disputes the existence of a contract governing the dispute).[3]

---

[3] The Court has found only the following case where quasi-contractual claims have been allowed to proceed as alternative theories, should the plaintiff not prevail on the breach of contract claim at trial; however, the cases cited in

In her December 13, 2017 Report and Recommendation, the Magistrate Judge noted Defendants do not dispute the NDA is a valid and enforceable contract (Dkt. #187 at p. 38). She further noted that in her December 4, 2017 Report and Recommendation on Quintel's motion for partial summary judgment, she had stated there is "no dispute as to the existence of a binding non-disclosure agreement between the parties." (Dkt. #187 at p. 38) (quoting Dkt. #184 at p. 25). At that time, the December 4, 2017 Report and Recommendation had not been considered by the undersigned and remained only recommended findings and conclusions of the Magistrate Judge (Dkt. #187 at p. 38 n.11). Since that time, on January 3, 2018, the undersigned adopted the Magistrate Judge's report as the findings and conclusions of the Court (Dkt. #220).

The parties do not contest the contract at issue in this case (the NDA) is a valid and enforceable contract or the contract covers the subject matter of the dispute in the litigation. Because there is no dispute as to the existence of a valid contract governing the dispute between Quintel and Huawei, Quintel can no longer go forward with its breach of contract and quasi-contractual claims against Huawei in the alternative. As anticipated by the Magistrate Judge, the undersigned, having adopted the findings and conclusions contained in the December 4, 2017 Report and Recommendation, now dismisses Quintel's promissory estoppel and unjust enrichment claims against Huawei.

This Order does not foreclose Quintel's quasi-contractual claims against Dr. Ma. He was not a party to the NDA, and Quintel is not asserting a separate breach of contract claim against Dr. Ma.

---

that case make clear the existence of a valid contract forecloses a claim for unjust enrichment. *Glass v. Gilbert*, No. 01-14-00643-CV, 2015 WL 3905907, at * 5 (Tex.App.—Houston [1st Dist.] June 25, 2015) (unreported) (citing *Fortune Prod. Co. v. Conoco, Inc.,* 52 S.W.3d 671, 684 (Tex. 2000) (holding the "written contracts in this case foreclose any claims for unjust enrichment."); *Christus Health v. Quality Infusion Care, Inc.*, 359 S.W.3d 719, 723 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (stating the "equitable remedy of quantum meruit [founded on the principle of unjust enrichment] is therefore unavailable when an express contract covers the subject matter at issue—the party seeking compensation has a legal remedy under the contract"))

*See Kinetic Concepts, Inc. v. Wake Forest Univ. Health Scis.*, No. SA-11-CV-163-XR, 2013 WL 2453267, at *12 (W.D. Tex. June 4, 2013) (dismissing without leave to amend the unjust enrichment claims against certain defendants based on an express agreement but noting there was no indication, from the face of the License Agreement or from the pleadings, that KCI USA, Inc. or any of the KCI Affiliates was a party to the License Agreement or was a party to another express contract that covered the subject matter underlying the unjust enrichment claim and allowing amendment of the unjust enrichment claim against those specific defendants).

*Quintel's Objections*

**Whether Quintel's breach of contract claim for failure to destroy documents is barred by limitations**

In its objections, Quintel objects to the Magistrate Judge's recommendation that one part of Quintel's breach of contract claim, namely that Huawei failed to destroy documents upon request, be dismissed as time-barred. Quintel states Section 5 of the NDA required Huawei to destroy any Quintel confidential documents upon written request. According to Quintel, the 2011 email chain relied upon by the Magistrate Judge is ambiguous as to whether Huawei would comply with Quintel's written request, and Quintel should have an opportunity to present its evidence to the jury as to when it should have known that Huawei breached Section 5 of the NDA.

In her Report and Recommendation, the Magistrate Judge relied on a January 2011 email chain between Joe Veni of Quintel and Evan Chen of Huawei and concluded Quintel had the information needed to support this claim in January 2011, more than four years before Quintel filed the present lawsuit (Dkt. #187 at p. 35). Specifically, the evidence outlined by the Magistrate Judge reveals as follows. On January 25, 2011, Quintel's main negotiator, Mr. Veni, wrote to Yaqi Liu (Huawei) and others that he thought the negotiations were over. Declaration of Michael

E. Stoll in Support of Defendants' motion ("Stoll Decl."), Exhibit 14 (Veni Depo. Tr. 190:16-191:4). Mr. Veni wrote:

> We are obviously too far apart on commercial terms to reach a fair agreement. We have therefore assigned our engineering resources to other OEM projects.
>
> As a reminder, all information exchanged between our companies was provided in confidence under the terms of our Mutual Non-Disclosure Agreement of September 21, 2009, our Memorandum of Understanding of June 28, 2010 and our Non-Disclosure Agreement of November 8, 2010. As provided in those agreements, all Quintel confidential information should now be destroyed and not used or distributed any further. Please confirm to me in a timely manner the destruction of this information and all copies thereof according to the terms of the NDAs.

Stoll Decl., Exhibit 15 at -665.

Even Chen responded to Mr. Veni's email on January 26, 2011, and explained that his request to destroy the documents was inconsistent with the course of dealing in the industry:

> I still trust on you and I don't believe you working with Huawei is just to balance your whole business partnering with other, and I also don't think in your mind you don't like Huawei and even hate Huawei. (but, for example, for confidential information generally they come from joint working and communication, and they will be protected by agreement, and each international high-tech company will not infringe others' IPR. Your request is destroy, and seldom there is the 'destroy' request coming out from commercial situation, especially no one ensure future Huawei and Quintel will meet in one market and some material is promotion material. . . .

Stoll Decl., Exhibit 15 at -664.

Mr. Veni wrote back on January 28, 2011, and stated that if in the future Huawei could confirm a good market demand for a joint Quintel-Huawei product, and could work reasonably within Quintel's commercial requirements, Quintel would be pleased to entertain a mutually beneficial collaboration as originally envisioned and defined by Mr. Veni and Mr. Chen. Stoll Decl., Exhibit 15 at -663. Mr. Veni then repeated his request regarding the destruction of confidential information:

> Regarding our request for destruction of confidential information, in the US and UK it is common to request this at the end of a working relationship with no further prospects in sight. This isn't a sign of distrust, just prudence in protecting valuable IPR. You know we always expressed that protection of our IPR was our number one concern. We'd appreciate Huawei's compliance with our request, as provided in our NDA.

Stoll Decl., Exhibit 15 at -664.[4]

On Monday, January 31, 2011, Mr. Chen wrote back and stated he understood and would "confirm and discuss the situation with Huawei Shanghai team." Stoll Decl., Exhibit 15 at -663. Mr. Chen then reiterated: "And, as I believed, [e]ven if in this year Quintel and Huawei could not reach any the business terms, but 'both companies become 100% competitors, and to destroy and communication or collaborative information change' is not the good choice." *Id.*

The January 2011 email is the single communication wherein Mr. Veni asked Defendants to destroy Quintel's documents and to confirm that they had destroyed the documents. Quintel did not make another request of Huawei to destroy "Quintel confidential information." Stoll Decl., Exhibit 14 (Veni Depo. Tr. 200:21-23, 204:19-205:17). Although Mr. Veni told Mr. Chen twice to do it, Mr. Veni did not confirm that he did it. *Id.* (Tr. at 205: 3-17).

Although Quintel asserts Mr. Chen's response was "ambiguous," the last communication on the issue was Mr. Chen explaining that document destruction was "not the good choice." In addition to relying on the January 2011 email, the Magistrate Judge relied on other summary judgment

---

[4] According to Defendants, neither of Mr. Veni's requests for destruction of confidential information was made in compliance with the notice provision of the NDA. Stoll Decl., Exhibit 11 ¶ 16 ("Any notice under this Agreement will be in writing and will be deemed to have been duly given when delivered personally or three (3) days after such notice is deposited in the United States mail, registered, postage prepaid, and addressed, to the appropriate Party at the address shown in the lead- in paragraph hereof."). Quintel asserts Mr. Veni's written requests for destruction of confidential information were made in compliance with the NDA. Declaration of Jeffrey A. Wadsworth ("Wadsworth Decl."), attached to Quintel's response, Exhibit 10 ¶ 5 ("Return of Confidential Information: Upon the first written request of Discloser, Recipient shall return or destroy (as designated by the Discloser) all originals, copies, reproductions and summaries of all Confidential Information which were, at any time, in the possession of and all materials (in any medium) which contain or embody Confidential Information. Furthermore, Recipient agrees to permanently erase or delete any Confidential Information stored electronically, magnetically or otherwise on machines or devices, upon written demand by Discloser.")

evidence in finding this part of Quintel's breach of contract claim barred by limitations. In the months after Mr. Veni's request (and before May 5, 2011), Mr. Veni resumed negotiations with Defendants, which required Huawei to refer to the material that Quintel had previously supplied.

On March 27, 2011, Mr. Veni emailed Mr. Chen the following: "We had a good meeting with Mr. Han and he said that he wanted you and me to work together again to find a mutually acceptable agreement on the key terms. Please let me know when you are available to discuss this." Stoll Decl., Exhibit. 16 at -676. On March 29, 2011, Mr. Chen stated, "Joe, many thanks, this sounds great and we are looking forward to a business success. I'll try to keep pace with the team on understanding the details, and then we'd openly discuss." *Id.*

On April 18, 2011, Mr. Veni emailed Mr. Chen, thanking him "for getting back involved in the licensing agreement discussions." Stoll Decl., Ex. 16 at -735. Mr. Veni provided a summary of their recent discussion and talking points for the next call. *Id.* On April 27, 2011, Mr. Veni emailed Mr. Chen and others a summary of their recent discussion, which included details of Quintel's current tilt range capability and information regarding Quintel's "value assessment." Stoll Decl., Ex. 18 at -145-46. Mr. Veni expressly noted that the points in the email had "not been approved internally." *Id.* at -145.

According to Defendants, as late as February 2012, Quintel and Huawei representatives were continuing to discuss potential collaboration. On February 1, 2012, Mr. Veni emailed Dr. Ma and others at Huawei to summarize a recent meeting he had with Dr. Du, another Huawei employee, to discuss the benefits of connecting a Huawei remote radio unit (RRU) to a Quintel antenna to "provide Uplink Elevation Tilt-per-User Beamforming." Stoll Decl., Exhibit 26. Mr. Veni closed the email by thanking Huawei for its "continued consideration of Quintel's passive beamforming approach." *Id.*

The Court agrees with the Magistrate Judge there is no material issue of genuine fact regarding whether Quintel should have known before May 5, 2011 that Defendants had not destroyed information as Quintel had requested. The Magistrate Judge correctly concluded the four-year statute of limitations on this breach of contract claim had elapsed by the time Quintel filed its complaint on May 5, 2015. Quintel's objections are overruled.[5]

**Whether Quintel's unfair competition by misappropriation is preempted by The Copyright Act**

Finally, Quintel asserts the Magistrate Judge erred in recommending dismissal of its unfair competition by misappropriation claim because the claim is preempted by federal copyright law.

Section 301 of the Copyright Act preempts state law claims that fall within the general scope of federal copyright law. 17 U.S.C. § 301(a); *Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 785–89 (5th Cir. 1999). Section 301 provides that:

> all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103. . . are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

17 U.S.C. § 301(a). "This text is the source of the two-part test we use to determine if the Copyright Act preempts a state law cause of action." *Ultraflo Corp. v. Pelican Tank Parts, Inc*., 845 F.3d 652, 655–56 (5th Cir.), *cert. denied*, 137 S. Ct. 2266, 198 L. Ed. 2d 699 (2017) (citing *Alcatel*, 166 F.3d at 785–86).

---

[5] The Court notes Quintel asserts in its objections in a footnote for the first time that Defendants failed to raise this specific statute of limitations defense in either their motion to dismiss or their answer (Dkt. #199 at 3 n.1). However, according to Defendants, they "would have had no reason to do so with respect to this particular claim" because "Quintel never pleaded breach of contract on this basis." (Dkt. #208 at p. 3 n.1). "It was only later in the case, when Quintel supplied responses to Defendants' interrogatories, that Quintel disclosed for the first time that it was claiming a breach of contract on the basis of an alleged failure to destroy documents." *Id.*

To prevail on their copyright preemption claim, Defendants must satisfy this two-part test: (i) the cause of action must fall "within the subject matter of copyright," and (ii) the cause of action must "protect rights that are 'equivalent' to any of the exclusive rights of a federal copyright[.]" *Computer Mgmt. Assistance Co. v. Robert F. DeCastro, Inc.*, 220 F.3d 396, 404 (5th Cir. 2000) (citation omitted).  The second part is commonly referred to as the "extra element" inquiry. *Id.*

At step one, the Magistrate Judge found the information at issue falls within the subject matter of the Copyright Act.   Turning to step two, the Magistrate Judge discussed at length *Motion Med. Techs., L.L.C. v. Thermotek, Inc.*, 875 F.3d 765 (5th Cir. 2017), wherein the Fifth Circuit affirmed the district court's judgment as a matter of law to defendants on a plaintiff manufacturer's state law claim for unfair competition by misappropriation.   875 F.3d at 769.   The district court held that federal copyright law preempted the plaintiff's unfair competition claim insofar as that claim related to works of authorship fixed in a tangible medium of expression—manuals, reports, billing information, and other written documents.  *Id.* at 773.   On appeal, the Fifth Circuit agreed with the district court on step one.   *Id.* at 774.

Regarding step two, the Fifth Circuit noted the only unfair competition claim that the plaintiff had tried to the jury was "unfair competition by misappropriation," a Texas common law tort.  *Id.* at 775.   According to the Fifth Circuit, that claim comprises the following three elements:

> (i) the creation of plaintiff's product through extensive time, labor, skill and money, (ii) the defendant's use of that product in competition with the plaintiff, thereby gaining a special advantage in that competition (*i.e.,* a 'free ride') because defendant is burdened with little or none of the expense incurred by the plaintiff, and (iii) commercial damage to the plaintiff.

*Id.* (quoting *U.S. Sporting Prods., Inc. v. Johnny Stewart Game Calls, Inc.*, 865 S.W.2d 214, 218 (Tex. App.—Waco 1993, writ denied)).

The Fifth Circuit noted a copyright claim also has three prongs: "(1) ownership of a valid

copyright; (2) factual copying; and (3) substantial similarity." *Motion Med. Techs.*, 875 F.3d at 775 (quoting *Nola Spice Designs, L.L.C. v. Haydel Enters.*, 783 F.3d 527, 549 (5th Cir. 2015) (quotation mark omitted)). The court then pointed out it had "twice held that Texas's unfair-competition-by-misappropriation tort does not afford protection qualitatively different from federal copyright law." *Motion Med. Techs.*, 875 F.3d at 775 (citing *Ultraflo*, 845 F.3d at 657–59 & *Alcatel*, 166 F.3d at 787–89). In *Motion Med. Techs.*, the Fifth Circuit did so again, concluding the district court correctly found copyright preemption (Dkt. #187 at pp. 45–46).

Similarly, the Magistrate Judge found Quintel's unfair competition by misappropriation claim preempted by federal copyright law. In its objections, Quintel focuses on the first step in the preemption analysis, asserting Defendants have not demonstrated the information they allegedly misappropriated is "within the subject matter of copyright." (Dkt. #199 at p. 3). According to Quintel, there is more to Quintel's claim than Defendants' inclusion of a Quintel slide in Defendants' provisional patent application; Quintel also provided Defendants with "substantial information about its Per User Tilt concept, including how it works, the benefits that it could achieve, the interest that network operators like AT&T and Verizon had in it, and how it could be implemented in Huawei's base station." (Dkt. #199 at p. 4). Quintel argues these types of confidential information do not fall within the subject matter of copyright because they do not constitute, "at least not fully," "original works of authorship fixed in any tangible medium of expression." (Dkt. #199 at p. 4)(quoting 17 U.S.C. § 102(a)).

The Court disagrees. Quintel's unfair competition by misappropriation claim is based on its claim of misappropriation of three claimed trade secrets: the Per User Tilt concept, the related simulation results, and the block diagram. The Magistrate Judge considered these items and concluded Defendants had shown that Quintel's allegedly misappropriated information falls within

copyright's subject matter (Dkt. #187 at pp. 42–43) (citing *Spear Mktg., Inc. v. BancorpSouth Bank,* 791 F.3d 586, 597 (5th Cir. 2015) (noting that state claims based on ideas fixed in a tangible medium of expression fall within the subject matter of copyright even though copyright law does not protect the mere ideas)); *see also* 17 U.S.C. § 102(a)(5) (extending copyright protection to "pictorial, graphic, and sculptural works"); *see also* 17 U.S.C. § 101 (defining § 102(a)(5) works as including "two-dimensional and three-dimensional works of fine, graphic, and applied art, photographs, prints and art reproductions, maps, globes, charts, diagrams, models, and technical drawings, including architectural plans"). Quintel does not dispute that the Per User Tilt concept has appeared in a tangible medium. "And as the tangible medium falls within the subject matter of copyright as defined in § 102(a), so do the specific trade secrets contained within it." *Spear Mktg.*, 791 F.3d at 597. Quintel's objections are overruled.

## CONCLUSION

The Court has carefully reviewed the relevant briefing, the Report and Recommendation, and the objections, and is of the opinion the findings and conclusions of the Magistrate Judge are correct. The Court adopts the Magistrate Judge's report as the findings and conclusions of the Court, with the modification discussed above. As anticipated by the Magistrate Judge, the undersigned, having adopted the findings and conclusions contained in the December 4, 2017 Report and Recommendation, now dismisses Quintel's promissory estoppel and unjust enrichment claims against Huawei. It is therefore **ORDERED** that Defendants' Motion for Summary Judgment on Statute of Limitations, Preemption, and Preclusion (Dkt. #141) is **GRANTED IN PART and DENIED IN PART** as specified herein.

**SIGNED this 17th day of January, 2018.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE