# United States District Court
**EASTERN DISTRICT OF**
**TEXAS SHERMAN DIVISION**

| | | |
|---|---|---|
| QUINTEL TECHNOLOGY, LTD. | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| V. | § | CASE NO. 4:15cv307 |
| | § | Judge Mazzant/Magistrate Judge Craven |
| HUAWEI TECHNOLOGIES USA, INC., ET AL. | § | |
| | § | |
| | § | |
| *Defendants.* | § | |

## ORDER ADOPTING REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

Came on for consideration the report of the United States Magistrate Judge in this action, this matter having been referred to the United States Magistrate Judge pursuant to 28 U.S.C. § 636. On December 18, 2017, the Magistrate Judge issued a Report and Recommendation, recommending Defendants' Motion for Summary Judgment on Trade Secret Misappropriation, Correction of Inventorship, and Fraud be granted in part and denied in part (Dkt. #143). Specifically, the Magistrate Judge recommended Quintel's correction of inventorship claim be dismissed with prejudice. Otherwise, the Magistrate Judge recommended Defendants' motion be denied. In the Report and Recommendation, the Magistrate Judge also denied Defendants' Motion to Strike Michael A. Jensen's Declaration in Support of Plaintiff's Opposition Brief to Defendants' Summary Judgment on Trade Secret Misappropriation, Correction of Inventorship, and Fraud (Dkt. #163).[1]

---

[1] The Magistrate Judge did not strike Dr. Jensen's 54-page declaration or the reports attached thereto, finding they "are substantially justified and harmless, and a balancing of the relevant factors indicates they should not be stricken." (Dkt. #190 at 29). The Magistrate Judge further explained that the declaration would only be considered for purposes of considering the summary judgment motion and "does not endorse its use for other purposes, including trial." (Dkt. #190 at 30). Further, the Magistrate Judge explained she would "weigh whether certain statements by Dr. Jensen

Quintel Technology Ltd. ("Quintel") filed objections to the part of the Report and Recommendation which recommends dismissal of Quintel's correction of inventorship claim against Defendants Huawei Technologies USA, Inc., FutureWei Technologies, Inc., and Huawei Technologies Co., Ltd. (collectively, "Huawei"), and Zhengxiang Ma (together with Huawei, "Defendants"). Defendants filed a response to Quintel's objections (Dkt. #238).

Defendants also filed objections to parts of the Report and Recommendation. According to Defendants, Quintel's claims for misappropriation of trade secrets and fraud should be dismissed. Quintel filed a response to Defendants' objections (Dkt. #235).

The Court conducts a *de novo* review of the Magistrate Judge's findings and conclusions.

## BACKGROUND

On May 15, 2015, Quintel filed the above case against Defendants. In its First Amended Complaint ("FAC") filed December 1, 2015, Quintel asserted the following claims against Defendants: (1) breach of contract; (2) misappropriation of trade secrets; (3) unfair competition by misappropriation; (4) common law fraud and fraud in the inducement; (5) promissory estoppel; (6) unjust enrichment; (7) accounting; and (8) correction of patent inventorship—35 U.S.C. § 256.[2]

Defendants moved for summary judgment dismissing Quintel's claims for misappropriation of trade secrets (Count II), fraud (Count IV), and correction of inventorship (Count VIII). Regarding Quintel's misappropriation of trade secret claim, Defendants assert Quintel has alleged Defendants misappropriated trade secrets in the form of the concept it calls "Per User Tilt" ("PUT"), certain simulation results showing how the concept performed, and a block diagram sometimes referred

---

in his declaration are more in the nature of advocacy than expert testimony." (Dkt. #190 at p. 30 n.15). In their objections, Defendants ask the Court to strike Dr. Jensen's Declaration and clarify the Magistrate Judge's recommendation as to what portions of Dr. Jensen's Declaration seem to constitute advocacy and may be inadmissible as evidence at trial (Dkt. #210 at pp. 7–8). The Court denies this request.

[2] On September 27, 2016, Judge Davidson dismissed the accounting claim for failure to state a claim, and the breach of contract claim against Dr. Ma in his individual capacity was dismissed as conceded by Quintel (Dkt. #42 at p. 39).

as a "schematic." According to Defendants, the alleged trade secrets consist of a concept that was undisputedly known prior to September 2009 when Quintel and Huawei began their discussions, and the simulation results are certain PowerPoint slides that Quintel provided to third parties—before and after September 2009—without confidentiality restrictions. Defendants contend the block diagram/schematic was a simple diagram that Huawei did not copy. Thus, Defendants assert the alleged trade secret information was not secret, and there was no misappropriation.

Regarding Quintel's correction of inventorship claim, Defendants assert summary judgment is warranted because the alleged contribution of David Barker consists of the Per User Tilt concept—which was in the public domain since at least 1999—and there is no credible evidence of collaboration between Mr. Barker and Dr. Ma as required. Finally, Defendants assert Quintel's claim of fraud and fraud in the inducement fails because there is no credible evidence to support the essential elements of the claim.

**REPORT AND RECOMMENDATION**

On December 18, 2017, the Magistrate Judge issued a 65-page Report and Recommendation, recommending Defendants' motion be granted as to Quintel's correction of inventorship claim. Otherwise, the Magistrate Judge recommended Defendants' motion be denied.

With regard to Quintel's claim for misappropriation of trade secrets, the Magistrate Judge found Quintel had presented sufficient evidence to create a genuine issue of material fact that the information at issue constituted trade secrets. The Magistrate Judge also found sufficient evidence in the record to create a genuine issue of material fact as to whether Defendants used Quintel's information without authorization. Therefore, the Magistrate Judge recommended this part of Defendants' motion for summary judgment be denied.

The Magistrate Judge also recommended Defendants' motion for summary judgment

regarding Quintel's claim of fraud and fraud in the inducement be denied, finding sufficient evidence in the record to create a genuine issue of material fact as to each element of fraud.

However, the Magistrate Judge recommended Quintel's claim of correction of inventorship be dismissed. Assuming there is sufficient evidence to determine that Mr. Baker conceived of some significant portion of the invention, the Magistrate Judge found insufficient evidence to satisfy the Federal Circuit's collaboration requirement for co-inventorship (Dkt. #190 at p. 57).

## OBJECTIONS

Defendants filed objections to the Report and Recommendation. First, Defendants object to the Magistrate Judge's finding that Defendants are not entitled to summary judgment on Quintel's misappropriation of trade secrets claim. According to Defendants, Quintel did not maintain the secrecy of the three claimed trade secrets, and the concept of PUT was incontrovertibly fully disclosed in a 1999 article. Second, Defendants object to the Magistrate Judge's recommendation that Quintel's fraud claim be denied. The Magistrate Judge found that "there is sufficient evidence in the record to create a genuine issue of material fact as to each element of Quintel's fraud claim." (Dkt. #190 at p. 64). According to Defendants, Quintel made conclusory statements followed by string citations, rather than matching evidence to the elements of the claim.

Quintel filed objections to the part of the Report and Recommendation which recommends dismissal of Quintel's correction of inventorship claim. According to Quintel, there is sufficient evidence that David Barker made an inventive contribution to at least one claim or one aspect of the '647 Patent.

## APPLICABLE LAW

Summary judgment is appropriate when the movant is able to demonstrate that the pleadings, affidavits, and other evidence available to the court establish there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. FED R. CIV. P. 56(c). The movant bears the initial burden to demonstrate the absence of any material fact. *Celotex v. Catrett,* 477 U.S. 317, 332 (1986). If the movant meets that burden, the nonmovant must point to admissible evidence demonstrating there is a genuine issue for trial. FED. R. CIV. P. 56(e). In assessing the proof, the court views the evidence in the light most favorable to the nonmovant. *Matshusita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574 (1986).

## *DE NOVO* REVIEW

*Defendants' Objections*

**Quintel's misappropriation of trade secrets claim**

Defendants' first object to the Magistrate Judge's finding that Defendants are not entitled to summary judgment on Quintel's misappropriation of trade secrets claim. "'The existence of a trade secret is properly considered a question of fact to be decided by the judge or jury as fact-finder.'" *Wellogix, Inc. v. Accenture, L.L.P.*, 716 F.3d 867, 874 (5th Cir. 2013) (quoting *Gen. Universal Sys., Inc. v. Lee,* 379 F.3d 131, 150 (5th Cir.2004)). A trade secret is "any formula, pattern, device or compilation of information which is used in one's business and presents an opportunity to obtain an advantage over competitors who do not know or use it." *In re Bass*, 113 S.W.3d 735, 739 (Tex. 2003) (internal quotation marks omitted).

As set forth by the Magistrate Judge, Texas courts consider the Restatement's six factors to determine whether a trade secret exists, weighed in the context of the surrounding circumstances: (1) the extent to which the information is known outside of his business, (2) the extent to which it

is known by employees and others involved in his business, (3) the extent of the measures he took to guard the secrecy of the information, (4) the value of the information to him and his competitors, (5) the amount of effort or money he expended in developing the information, and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others. *Keane v. Fox Television Stations, Inc.*, 297 F. Supp. 2d 921, 939 (S.D. Tex. 2004), *aff'd*, 129 F. App'x 874 (5th Cir. 2005) (citing *Chapa v. Garcia,* 848 S.W.2d 667, 670 (Tex.1992) (Doggett, J., concurring) (internal quotations omitted)); *see also Wellogix*, 716 F.3d at 874–75. After weighing the factors, the Magistrate Judge concluded Quintel had presented sufficient evidence to create a genuine issue of material fact that the information at issue constituted trade secrets (Dkt. #190 at pp. 34–43).

In their objections, Defendants first address the extent to which the alleged trade secrets were known. Specifically, Defendants assert it is undisputed a paper presented at a 1999 Institute of Electrical and Electronics Engineers ("IEEE") conference (the "VTC Paper") was "readily available by independent investigation, as even Quintel's own technical expert, Dr. Jensen, admitted that the paper was 'available' and in the 'public domain.'" (Dkt. #210 at p. 2) (quoting Declaration of David L. Hecht in support of Defendants' motion, Exhibit 6 (Jensen Depo. at 90:21–22 & 162:16–23)). Defendant argues the PUT concept was fully disclosed in the 1999 VTC Paper which "discusses dynamic down tilting an antenna to individual users and simulated capacity gain." *See* Declaration of Constantine Balanis in support of Defendants' motion, at ¶ 2.

The Court is not convinced the PUT concept was generally known or readily available by independent investigation as urged by Defendants. In the Report and Recommendation, the Magistrate Judge outlined Quintel's evidence and position that the VTC Paper did not disclose

Quintel's PUT concept or its relevance, detail, or value[3] (Dkt. #190 at p. 35). The Magistrate Judge further discussed the USPTO's failure to cite the VTC Paper in connection with the prosecution of the '647 Patent as well as the differences between the information provided by Quintel to Huawei and that found in the VTC Paper (Dkt. #190 at pp. 35–36). The Magistrate Judge also noted that "Quintel's trade secrets are not just the concept of Per User Tilt standing alone, 'but include Quintel's verification and demonstration that this particular implementation of vertical beamforming was commercially valuable (as shown by Quintel's simulation results), as well as a diagram depicting how a cellular base station could implement Per User Tilt technology in a reduced-complexity and lower-cost radio architecture,'" which Defendants admit were lacking from the VTC Paper (Dkt. #190 at pp. 36–37) (quoting Dkt. #171 at pp. 2–3).

After detailing this evidence, the Magistrate Judge cited case law to further conclude that, "even if the VTC Paper mentioned elements similar to some of those in Quintel's PUT concept, this would not necessarily disqualify Quintel's information from trade secret protection." (Dkt. #190 at p. 37) (citing *Cataphote Corp. v. Hudson*, 422 F.2d 1290, 1293–94 (5th Cir. 1970) (noting that while "[a]n item or process of public or general knowledge in an industry cannot be appropriated by one as his own secret," trade secret protection does not require "the kind of novelty and invention which is a requisite of patentability")). Whether a trade secret is "generally known by others in the same business []or readily ascertainable by an independent investigation" is also a question of fact. *Zoecon Indus., Div. of Zoecon Corp. v. Am. Stockman Tag Co.*, 713

---

[3] According to Dr. Jensen, the VTC Paper cannot be fairly characterized as well-known or even generally known. Jensen Decl. at ¶¶ 26–53. In Dr. Jensen's opinion, it is an "obscure, vague article, which has been very rarely cited" (only 13 times as of September 18, 2017), "a notion supported by the complete lack of any evidence that Defendants used or relied upon (or even knew about) this article at the time in question." *Id.* at ¶¶ 30, 32, 38. Dr. Jensen states no one involved in this case—not Defendants, Quintel, Quintel's technical expert, or either of Defendants' technical experts—has claimed to have been aware of the VTC Paper prior to the present litigation. *Id.*, at ¶¶ 29, 40–46; Declaration of Kyra T. Keller ("Keller Decl.") attached to Quintel's response, Exhibit 3 (Balanis Depo. at 128:10-24; 224:15-225:3; 225:5-12); Exhibit 21 (Long Depo. at 60:24-61:2; 62:5-10; 159:25-160:9; 165:18-22).

F.2d 1174, 1179 (5th Cir. 1983). Substantial evidence demonstrates that Quintel's Per User Tilt technology was not "generally known or readily available by independent investigation" at the time of disclosure to Huawei.

Quintel's position and the Jensen Declaration are not an attempt "to inject a new definition of the trade secrets into the case as a means of avoiding summary judgment."[4] (Dkt. #210 at p. 2). The Court agrees with Quintel that Jensen's Declaration is consistent with the detailed description of Quintel's trade secrets provided in response to Defendants' interrogatories in March of 2016, the deposition testimony of Quintel's corporate designee and the inventor of the technology, and Dr. Jensen's expert reports and testimony.

Regarding the third Restatement factor, Defendants assert Quintel did not maintain the secrecy of the three claimed trade secrets. However, as found by the Magistrate Judge, sufficient evidence establishes that Quintel took reasonable precautions to protect the confidential nature of its alleged trade secrets (Dkt. #190 at pp. 37–42). This evidence includes the declaration of Quintel's VP of Sales, Mr. Veni, Quintel's interrogatory responses describing these precautions, the existence of numerous written non-disclosure agreements (including the NDA with Huawei), deposition testimony by Quintel's corporate designee and by Mr. Veni, deposition testimony by Defendant Dr. Ma (including his admission that Quintel's Per User Tilt technology was confidential), email correspondence with third parties, notations on Quintel materials indicating that they were proprietary and confidential, and deposition testimony by one of Defendants' technical experts.

---

[4] According to Defendants, in his Declaration attached to Quintel's response to the motion for summary judgment, Dr. Jensen seeks to ignore the definition set out in his expert report and disclosed by Quintel throughout this litigation. Defendants assert "[o]ne could only conclude that the PUT Concept qualifies for trade secret protection if one were to ignore the definition of the PUT Concept that Quintel supplied in its Complaint, in its disclosures, and in applicable discovery responses and credit the improper, belated and self-contradictory opinions of Quintel's expert, which have been modified for purposes of advocacy." (Dkt. #210 at p. 2).

Moreover, as pointed out by the Magistrate Judge, "even where a plaintiff voluntarily discloses the trade secret without the benefit of a confidentiality agreement, the requisite secrecy is retained if the 'disclosure occurs in a context that would not ordinarily occasion public exposure, and in a manner that does not carelessly exceed the imperatives of a beneficial transaction.'" (Dkt. #190 at p. 40) (citing relevant authorities). In *Wellogix Inc. v. Accenture, LLP*, 823 F. Supp. 2d 555 (S.D. Tex. 2011), *aff'd* 716 F.3d 867 (5th Cir. 2013), discussed extensively by the Magistrate Judge, Wellogix made voluntary disclosures to customers or potential customers that were "to further economic interests and would not, by themselves, expose any substantive information . . . to the public," and transmittal emails contained confidentiality notices (Dkt. #190 at p. 41) (quoting *Wellogix*, 823 F. Supp. 2d at 564). Under such circumstances, the jury was not unreasonable in concluding that the trade secrets had retained the requisite secrecy. (*See* Dkt. #190 at p. 41). There is sufficient evidence here that the disclosures to third parties were made in the context of exploring potential business opportunities, where the parties understood that Quintel's information was confidential.

Regarding the fourth Restatement factor, Defendants assert the Magistrate Judge's position is unclear. The Magistrate Judge noted Quintel has not sold a single SONWav product (Dkt. #190 at p. 42). However, she also noted that although Quintel has not yet commercially sold its SONWav product that incorporates PUT technology, the product has been successful in trials, potential customers have expressed interest, and sales are expected soon (Dkt. #190 at p. 42) (citing Keller Decl., Exhibit 35 (Quintel 30(b)(6) Depo. at 169:5-171:9); Keller Decl., Exhibit 35 (Quintel 30(b)(6) Depo. at 169:5-171:9)). She also noted value "may be inferred based on 'commercial success' of a defendant's product using the trade secret." (Dkt. #190 at p. 42) (citation omitted). Quintel has provided sufficient evidence indicating its PUT concept is valuable to both

Quintel and its competitors.

Regarding the final relevant Restatement factor, the ease or difficulty with which the information could be properly acquired or duplicated by others, Defendants assert there is no credible evidence how anything Quintel supplied resolved any "uncertainty" or "difficulty" experienced by Defendants (Dkt. #210 at p. 5). According to Defendants, the evidence reveals Defendants developed their own technology independently. The Court agrees with the Magistrate Judge that there is sufficient evidence regarding this factor upon which a jury could find the information at issue constitutes a trade secret.

The Court also finds sufficient evidence in the record to create a genuine issue of material fact as to whether Defendants used Quintel's information without authorization. In their objections, Defendants assert the Court's inquiry should focus on whether any Quintel information was actually used in the patent. According to Defendants, the Quintel information that was included in the provisional patent application (a simulation results slide) was included inadvertently and was never discussed in the narrative portion of the application or in the non-provisional patent application or the '647 Patent that issued from it. Defendants contend the AAU 3902 product incorporates the technology covered by the '647 Patent, for which there is no evidence of use of or reliance on any Quintel information (Dkt. #210 at p. 6).

As urged by Quintel, however, other evidence of Defendants' use includes Huawei emails and internal presentations, Dr. Ma's lab notebooks, the '647 Patent and non-provisional application, Dr. Ma's deposition testimony, Defendants' responses to interrogatories and requests for admission, and the technical analysis provided by Dr. Jensen (as well as statements made by Defendants' technical experts). According to Quintel, this evidence "substantiates that Defendants' misappropriation was far from limited to an allegedly 'inadvertent' inclusion of a Quintel simulation

results slide in a provisional patent application. Rather, Quintel's trade secrets provided Huawei motivation, assisted or accelerated its research and development, and gave Huawei critical pieces of the technology that Huawei subsequently relied upon, incorporated, and used in applying for and obtaining a patent and developing its AAU 3902 product line." (Dkt. #235 at p. 5).

The Court overrules Defendants' objections to the Magistrate Judge's recommendation that Quintel's trade secret misappropriation claim be denied.

**Quintel's fraud claim**

Defendants also object to the Magistrate Judge's recommendation that Quintel's fraud claim be denied. The Magistrate Judge found that "there is sufficient evidence in the record to create a genuine issue of material fact as to each element of Quintel's fraud claim." (Dkt. #190 at p. 64). According to Defendants, Quintel made conclusory statements followed by string citations, rather than matching evidence to the elements of the claim.

The Magistrate Judge relied on a May 2010 communication and a September 2010 communication, communications which Defendants assert were long after the September 2009 information exchange that forms the basis for Quintel's claims. According to Defendants, there is no credible evidence that Quintel relied on any May 2010 or September 2010 statements. Nor is there credible evidence that Quintel provided any additional information in reliance on any such statement. Defendants assert "the relevant inquiry is whether statements were made to Quintel *in September 2009* that the speaker either knew were false or were recklessly made without regard for whether they were true." (Dkt. #210 at p. 7) (emphasis in original).

Defendants further argue Quintel has failed to identify any manner in which it relied to its detriment in sharing information with Defendants. Additionally, Defendants assert Quintel repeatedly shared the same information with third parties without any confidentiality agreement in

place, thus requiring Quintel to show how it was hurt by entering into the NDA, a showing that Quintel has never even attempted to make. As such, Defendants request the Court rule that, as a matter of law, Quintel's claim for fraudulent inducement should be dismissed.

As the Magistrate Judge discussed, there is evidence in the record sufficient to create a genuine issue of material fact that Huawei and Dr. Ma promised not to use or disclose Quintel's information provided under the NDA; they made those promises both in the NDA and in subsequent communications; the statements were intended to induce Quintel to provide confidential information, which Quintel then relied on to provide that information; Defendants led Quintel to believe that they were acting honestly and were interested in exploring a cooperation; yet, while Huawei and Quintel were purportedly exploring a cooperation, Defendants were misusing Quintel's confidential information for their own commercial benefit; and Defendants never informed Quintel but in fact took steps to conceal their wrongdoing (Dkt. #190 at p. 62) (citing evidence). For reasons previously discussed by the Court, Defendants' claim that Quintel could not have been harmed by Defendants' alleged fraud given other third party disclosures of the PUT concept also lacks merit.

Defendants' objections to the Magistrate Judge's recommendation that Quintel's fraud claim be denied are overruled.

*Quintel's Objections*

In its objections, Quintel objects to the Magistrate Judge's recommendation that its correction of inventorship claim be dismissed. According to Quintel, the evidence of record (including the testimony of Mr. Barker, David Piazza, Quintel's Rule 30(b)(6) corporate designee, and Dr. Jensen, Quintel's technical expert, as well as corroborating documentary evidence) reveal Mr. Barker made specific inventive contributions to independent claims 1, 8, 16, and 21 of the '647 Patent, along with their dependent claims. Among other things, Dr. Jensen has described how the radio architecture

illustrated in Figure 2B in the '647 Patent and described in Claim 21 incorporates Mr. Barker's inventive contributions and is not more similar to undated Huawei block diagrams.

According to Quintel, the Magistrate Judge also erred in concluding "there is no evidence Dr. Ma and Mr. Barker had direct discussions during the time that Dr. Ma developed his patent," and that therefore Quintel's claim for co-inventorship fails as a matter of law (Dkt. #190 at p. 59). Quintel asserts Mr. Barker collaborated with Dr. Ma in Dr. Ma's work related to what became the '647 Patent, both directly and via intermediaries. According to Quintel, "although Mr. Barker and Dr. Ma did not collaborate in the conventional sense or always communicate directly, they had 'some open line of communication during or in temporal proximity to their inventive efforts' sufficient for inventorship purposes." (Dkt. #209 at p. 7) (quoting Dkt. #190 at p. 57).

In the parties' Joint Final Pre-Trial Order filed four days after the September 18, 2017 Report and Recommendation, Quintel proposed for the first time that it would be "appropriate for the Court to decide this cause of action in a separate hearing following the jury trial on Quintel's other causes of action," stating the parties had agreed to defer proposed findings of fact and conclusions of law until after the jury trial (Dkt. #192 at pp. 11–12). This suggestion is reasonable to the Court. As noted by the Magistrate Judge, inventorship is a question of law (Dkt. #190 at p. 50) (citing *Cummins-Allison Corp. v. SBM Co.*, No. 9:07CV196, 2010 WL 11468779, at *4 (E.D. Tex. Aug. 11, 2010)). However, it is based on "underlying questions of fact." (Dkt. #190 at p. 50) (citing *Eli Lilly and Co. v. Aradigm Corp.*, 376 F.3d 1352, 1362 (Fed. Cir. 2004); *Shum v. Intel Corp.*, 499 F.3d 1272, 1277 (Fed. Cir. 2007)).

Therefore, the Court stays its consideration of this part of the Magistrate Judge's December 18, 2017 Report and Recommendation until such time as the jury trial has been resolved.

**CONCLUSION**

The Court has carefully reviewed the relevant briefing, the Report and Recommendation, and the objections, and adopts the Magistrate Judge's report regarding Quintel's trade secret misappropriation and fraud claims as the findings and conclusions of the Court. The Court stays consideration of Quintel's objections at this time. It is therefore **ORDERED** that Defendants' Motion for Summary Judgment on Trade Secret Misappropriation, Correction of Inventorship, and Fraud (Dkt. #143) is **DENIED** as specified herein.

**SIGNED this 18th day of January, 2018.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE