IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| QUINTEL TECHNOLOGY LTD., <br><br> PLAINTIFF, <br><br> v. <br><br> HUAWEI TECHNOLOGIES USA, INC., FUTUREWEI TECHNOLOGIES, INC., HUAWEI TECHNOLOGIES CO., LTD., AND ZHENGXIANG MA, <br><br> DEFENDANTS. | NO. 4:15-cv-00307-ALM-CMC <br><br> **FILED UNDER SEAL** |

**DEFENDANTS' EMERGENCY MOTION TO EXCLUDE EVIDENCE OR ARGUMENT REGARDING UNPRODUCED FINANCIAL DOCUMENTS**

**INTRODUCTION**

Defendants file this motion to preclude Quintel from using at trial or otherwise referring to financial documents and information that have not been timely produced in this case. Quintel has continued to withhold highly relevant financial documents and information shared or created in the context of its recent acquisition by Cirtek. Quintel should not be permitted to use the withheld information to its advantage during trial after having shielded it from scrutiny by Huawei during the discovery and pretrial phases of this case.

On January 23, 2018, after Quintel had resisted discovery of internal business forecasts and projections for more than six months, the Court ordered Quintel to supplement its production of documents relating to the Cirtek acquisition and to make its Chief Financial Officer, Robert Fishback, available for deposition. Dkt. #250 at pp. 17-18. In response to the Court's Order, Quintel produced five additional documents and made Mr. Fishback available for deposition on February 14, 2018.

Quintel's productions and the deposition of Mr. Fishback make clear that Quintel has withheld and continues to withhold extensive materials relevant to the valuation of Quintel, its PUT technology, and the SONWav product at issue in this litigation. This material includes ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████, including its CFO. In addition, Quintel has withheld a large chunk of its own internal forecasting materials.

There are also missing Cirtek documents. Even though a senior Cirtek executive heavily involved in the acquisition is now *Quintel's Chief Executive Officer*, Quintel has withheld all but two documents created by ███████████████████████████, as well as all Cirtek internal

1

emails and correspondence with ▮▮▮▮▮▮▮ about Quintel's value. These documents should have been produced in response to the Court's Orders, which found that because Cirtek's key decision-makers are now Quintel officers, "Cirtek's valuations of Quintel are now in Quintel's possession, custody, and control." Dkt. #250 at p. 12; Dkt. #263 at pp. 6-7. Despite this finding by the Court, Quintel has not produced these documents.

The Court should prevent Quintel from using this material as a sword at trial. Quintel should be precluded from having its witnesses refer to unproduced valuations or forecasts. For example, attempting to blunt the effect of ▮▮▮▮▮▮▮▮▮▮ at his deposition, Chief Financial Officer Robert Fishback made references to additional unproduced projections and forecasts that Huawei has not had the opportunity to review, challenge, or use for its own purposes. Quintel should not be permitted to use the discovery process as a sword and a shield in this fashion, and the Court should bar any references to unproduced forecasting valuation documents to refute documentary evidence that has now been produced.

## BACKGROUND

On November 22, 2017, Magistrate Judge Craven held that Cirtek acquisition-related financial documents were highly relevant to damages. Dkt. #179 at p. 16. Judge Craven ordered production of three categories of documents:

> (1) documents reflecting communications between Quintel and Cirtek regarding the Cirtek acquisition, this litigation, or Quintel's Per User Tilt technology;
> (2) all valuations of Quintel relating to the Cirtek acquisition, including any valuation of this litigation, Per User Tilt, or SONWav; and
> (3) all forecasts of Quintel's future revenues regarding Quintel's Per User Tilt Technology or SONWav and supporting data.

Dkt. #179 at pp. 16-17.

As Judge Craven and this Court have found, Quintel did not produce all documents required by the Court's Order. Quintel did not collect or produce the information communicated

to Cirtek through either the data room or Quintel's Google documents site. *See* Dkt. #232-11. Nor did Quintel collect or produce valuations that Quintel or Cirtek created as part of the acquisition process. Dkt. #232-1 ¶ 3. Defendants moved to compel this and related information, and to enforce the Court's November 22, 2017 Order. *See* Dkt. #232.

On January 23, 2018, the Judge Craven granted Defendants' motion. *See* Dkt. #250. Judge Craven agreed with Defendants that even "valuations of Quintel that do not place any value on PUT or SONWav are discoverable and might be admissible at trial to show PUT's value or the lack thereof." *Id.* at pp. 11-12. Judge Craven also found that a valuation referred to by Mr. Fishback in a declaration, prepared by Quintel's investment banker, was responsive and should have been produced. *Id.* at p. 12. Quintel was ordered to produce:

> (1) any data room documents or documents from the Google Docs site which cover 'valuations of Quintel' as part of the acquisition process that led to the Cirtek purchase (These valuations are not limited to Per User Tilt or SONWav);
>
> (2) the valuation 'which [Quintel's] investment banker created in August 2016';
>
> (3) any Cirtek documents (or documents originating from any other source) within Quintel's possession, custody or control reflecting a 'valuation of Quintel' as part of the acquisition process that led to the Cirtek purchase;
>
> (4) Quintel's 2017 actual sales numbers (monthly inventory and sales information for 2017 and the 'three year Revenue Forecast, PnL, Cash Flow and Break even analysis'); and
>
> (5) a 'comprehensive' after-visit report with AT&T and Verizon related to the Cirtek acquisition."

*Id.* at p. 17. Quintel was further ordered to make its Chief Financial Officer, Mr. Fishback, available for deposition. *Id.* at p. 18. Quintel objected to the January 23, 2018 Order, *see* Dkt. #253, and each of those objections was overruled. Dkt. #263 at p. 10.

Quintel made its Court-ordered supplemental production on February 2, 2018. Ex. 1. That production consisted of five documents:

1) ███████████████████████████████████████
███████████████████████████████████████
2) ███████████████████████████████████████
███████████████████████████████
3) ███████████████████████████████████████
███████████████████████████
4) 2017 Quintel sales data by product (Ex. 5); and

5) 2017 inventory data (Ex. 6).

Defendants deposed Mr. Fishback, on February 14, 2018. At the deposition, Mr. Fishback acknowledged that he is the person at Quintel with primary responsibility for financial projections and forecasts. Ex. 7 (Fishback Depo Tr.) at 19:17-24, 128:17-20. He also testified that a substantial amount of information covered by the Court's November 22, January 23, and February 2 Orders has not been produced by Quintel.

*Data Room Documents:* During his deposition, Mr. Fishback testified that, at a certain point in time, Quintel's data room became the primary mode of communicating financial information to Quintel's suitors, including Cirtek. Ex. 7 (Fishback Depo Tr.) at 80:14-17. Mr. Fishback further testified that he maintains a copy of the data room, and provided all of the documents in the data room to his attorneys. *Id.* at 82:10-17. Judge Craven ordered Quintel to produce communications between Quintel and Cirtek regarding the acquisition, Dkt. #179 at p. 16, and "any data room documents or documents from the Google Docs site which cover 'valuations of Quintel' as part of the acquisition process that led to the Cirtek purchase," without limitation to PUT or SONWav. Dkt. #250 at p. 17. Despite submitting a declaration avowing compliance with Magistrate Judge Craven's Order, *see* Dkt. #242-4, Mr. Fishback testified that he did not know whether all of the material in the data room had been produced. Ex. 7 (Fishback Depo Tr.) at 79:25-80:3, 82:10-83:2.

In fact, it has not all been produced. For example, Mr. Fishback testified that Quintel has audited financials and that those financials were provided to Cirtek via Quintel's data room. *Id.* at 95:8-17. Mr. Fishback also testified that he provided monthly financial close information to Cirtek. *Id.* at 94:2-95:7. Yet, no such audited financial statements have been produced to Defendants.[1]

*Cirtek Documents Possessed by Jojo Dispo:* Jojo Dispo has been President and Vice Chair of Cirtek since 2016. Ex. 8; Ex. 9. According to Mr. Fishback, Mr. Dispo is now also Chief Executive Officer of Quintel. Ex. 7 (Fishback Depo Tr.) at 64:13-14. He played a central role in Cirtek's due diligence in connection with the Quintel acquisition, *see, e.g.*, Ex. 10, and is one of two Cirtek individuals to whom notice is required to be directed under Quintel and Cirtek's merger agreement. Ex. 11 § 8.2. His name appears on a number of internal Cirtek-█████████ communications that were produced to Defendants because they were later forwarded to legacy Quintel custodians. *E.g.*, Ex. 12. But Quintel has not produced internal communications between Mr. Dispo and █████████ that do not include Quintel legacy custodians, such as internal confidential valuation discussions between Cirtek and █████████. These types of communications were required by the Court's November 22, 2017 and January 23, 2018 Orders. Dkt. #179 at p. 16; Dkt. #250 at p. 17. In overruling Quintel's objections, the Court agreed with Magistrate Judge Craven that because Cirtek's key decision-makers are now Quintel officers, Cirtek's valuations of Quintel "are now in Quintel's possession, custody, and control." Dkt. #263 at pp. 6-7. Yet, no documents that identify Dispo as the custodian have been produced by Quintel even though he is now Quintel's Chief Executive Officer.

---

[1] Defendants cannot tell if the referenced monthly close information has been produced.

Quintel has produced two documents from Cirtek's investment bank, ▮▮▮▮▮▮ – a valuation analysis and a financial projection. But it has not produced any underlying ▮▮▮▮▮▮ documentation, any correspondence between ▮▮▮▮▮▮ and Cirtek, or any internal Cirtek documents relating to the value of Quintel, SONWav, or PUT.

▮▮▮▮▮▮ *and Related Financial Information and Emails:* Mr. Fishback testified that Quintel provided financial data, including financial models, ▮▮▮▮, its investment banker, in connection with the Cirtek acquisition. Ex. 7 (Fishback Depo Tr.) at 35:5-36:7, 37:7-19. Mr. Fishback further testified that ▮▮▮▮ prepared its own financial model, that he has a copy, that he provided it to his attorneys, *id.* at 52:24-53:6, 53:21-54:11, 56:9-24, and that he and others at Quintel had email correspondence with ▮▮▮ regarding these models and valuations. *Id.* at 36:13-18. Yet, none of these models, underlying documents, or emails has been produced.[2] Instead, Quintel has produced only one "Valuation Update." Ex. 4.

*Raw Quintel Forecasting Data:* Mr. Fishback said that he relied upon SONWav sales projections provided by Quintel's Vice President of Sales, Joe Veni, and former Chief Executive Officer Alastair Westgarth when he prepared the financial forecasting spreadsheets that were used in the context of a potential sale of Quintel. *See* Ex. 7 (Fishback Depo Tr.) at 31:10-33:18. Mr. Fishback testified that this information was provided to him in "spreadsheet form." *Id.* at 32:22-33:4. To the best of Defendants' knowledge, the underlying data and communications between Messrs. Veni, Westgarth, and Fishback have not been produced, only Mr. Fishback's resulting models and forecasts.

---

[2] Mr. Fishback testified that PUT and/or SONWav were mentioned in some of the information provided to ▮▮▮, Ex. 7 (Fishback Depo Tr.) at 38:6-9, and that he likely still has the information provided to ▮▮▮ on a shared drive within the finance organization. *Id.* at 38:20-39:8.

*Post-August 2017 SONWav Sales Projections:* Mr. Fishback testified that he has created financial forecast spreadsheets since August 2017, some of which contain specific SONWav projections. Ex. 7 (Fishback Depo Tr.) at 269:2-10. Yet, Quintel did not produce any forecasting spreadsheets created after August 2017, except as described below.

During his deposition, Mr. Fishback was asked what Quintel's 2017 operating profits or losses were. Mr. Fishback initially refused to provide an answer, saying he did not have the information. *Id.* at 114:25-115:12. Asked to give an approximation, Mr. Fishback said, "I don't have the information directly in front of me." *Id.* at 115:19-25. Asked whether he knew "in his head" what Quintel's profit or loss was in 2017, Mr. Fishback responded, "Reasonably, yes. But I would like to kind of look at a full P&L for the company before I answer." *Id.* at 116:2-6. Asked again whether he had an estimate of Quintel's operating losses in 2017, Mr. Fishback testified that he would "need to refer to [his] financial results." *Id.* at 127:5-9. Asked whether the operating losses were more or less ▬▬▬▬▬▬, Mr. Fishback responded, "I don't recall." *Id.* at 127:10-11. After counsel for plaintiffs refused to have Mr. Fishback look at the relevant documents during lunch, *id.* at 118:11-19, counsel for Defendants had to invoke the District's hotline procedure, during which Judge Hawthorne ordered Mr. Fishback to review his information during lunch and provide an answer. *Id.* at 133:13-139:24.

To answer Huawei's question, Mr. Fishback reviewed Quintel's latest budgeting documents, which included the company's latest (January 2018) financial results and SONWav sales forecasts. Quintel ultimately produced this document during the deposition. When Huawei asked Mr. Fishback questions about this document and the SONWav sales forecasts ▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬, Mr. Fishback repeatedly attempted to soften the impact of his answers with references to yet other

supposedly contradictory sales forecasts that have not been produced. Ex. 7 (Fishback Depo Tr.) at 282:17-283:19, 284:9-21, 287:14-18, 288:18-23. Defendants now seek to exclude the introduction of or reference to any other such undisclosed documents or forecasts at trial.

**ARGUMENT**

The deposition of Quintel's Chief Financial Officer, Robert Fishback, shows that Quintel continues to withhold at least five categories of material financial documents that were ordered to be produced.

First, Quintel still has not produced the entire data room although the Court found and Mr. Fishback confirmed that this was the primary means by which financial information was transmitted to Cirtek and other bidders during the acquisition process. Dkt. #250 at pp. 9, 11-12; Ex. 7 (Fishback Depo Tr.) at 80:14-17. After Quintel failed to produce this material in response to the Judge Craven's November 22 Order, Judge Craven expressly found that "Quintel's December 2017 production was not in full compliance." Dkt. #250 at p. 11; *see also id*. at pp. 9-12. At his deposition, Mr. Fishback testified that he maintains a copy of the data room that was made available to Cirtek, but that he did not know which of the documents in the data room had been produced. Ex. 7 (Fishback Depo Tr.) at 82:10-83:2. He further testified that Quintel's audited financials were among the documents placed in the data room. *Id.* at 95:11-17. Despite falling within the scope of the November 22 Order, Quintel has not produced the contents of the data room, including the audited financials that were provided to Cirtek.

Second, Quintel was ordered to produce "any Cirtek documents . . . within Quintel's possession, custody or control reflecting a 'valuation of Quintel' as part of the acquisition process." Dkt. #250 at p. 12. As this Court explained in overruling Quintel's objections on this score, "Magistrate Judge Craven, agreeing with Defendants, found that because Cirtek's key decision-makers are now Quintel officers, 'Cirtek's valuations of Quintel are now in Quintel's

possession, custody, and control.'" Dkt. #263 at pp. 6-7 (quoting Dkt. #250 at p. 12). The Court found that "Magistrate Judge Craven correctly ordered and appropriately limited production of such documents" according to this principle. *Id.*

It is now clear from subsequent discovery that Cirtek did obtain valuations of Quintel from its investment bank, ▮▮▮▮. Ex. 2 (Fishback Depo Ex. 24); Ex. 3 (Fishback Depo Ex. 23). Further, Mr. Fishback testified that Jojo Dispo, a Cirtek "senior executive" at the time of the acquisition is now "CEO of Quintel." Ex. 7 (Fishback Depo Tr.) at 64:10-65:4. Mr. Dispo was on a host of emails with Quintel relating to the acquisition and is named as a "required attendee" on a conference call with ▮▮▮▮ about the acquisition. *See, e.g.*, Ex. 13 (Fishback Depo Ex. 11). But Quintel has not produced any documents for which Mr. Dispo is named as the custodian. Nor has Quintel produced *any* internal Cirtek documents concerning valuations, forecasts, or ▮▮▮▮. Quintel appears to have entirely failed to comply with this aspect of the Court's Orders.

Third, Quintel was ordered to produce "documents originating from any other source[] reflecting a valuation of Quintel as part of the acquisition process that led to the Cirtek purchase." Dkt. #263 at pp. 6-7 (quoting Dkt. #250 at p. 12). That would include documents from Quintel's investment banker ▮▮. The Court previously found that an "internal" ▮▮ valuation "prepared prior to discussions with Cirtek" was part of the acquisition process and ordered it produced after Quintel failed to do so in response to the November 22 Order's instruction that it produce "all valuations of Quintel relating to the Cirtek acquisition." Dkt. #263 at pp. 5-6; Dkt. 250 at p.12; Dkt. 179 at p. 16.

That document, when produced, turned out to be an August 2016 valuation "update," thereby indicating that additional ▮▮ valuations exist. Ex. 4 (Fishback Depo Ex. 1). In

addition, Mr. Fishback testified that there was an underlying "███████" that was shared with him, that he has it in his possession, and that he shared it with his attorneys in this litigation. Ex. 7 (Fishback Depo Tr.) at 52:24-53:6, 53:21-54:8, 56:9-23. Mr. Fishback also testified that he engaged in email correspondence with ███ and that he supplied financial data to ███ for use in its model. *Id.* at 51:5-53:6, 54:12-14. With the exception of the August 2016 valuation "update," none of this ███ material has been produced.

Finally, it appears based on Mr. Fishback's testimony that not all of Quintel's internal forecasting documents have been produced. With the exception of the document produced at Mr. Fishback's deposition, the latest produced financial forecasting spreadsheet was from August 2017. Yet, Mr. Fishback testified that he had continued to create forecasting spreadsheets after that date. Ex. 7 (Fishback Depo Tr.) at 269:2-10. In addition, Mr. Fishback testified that the data to create his forecasting spreadsheets was supplied to him by Messrs. Veni and Westgarth, *id.* at 31:10-33:18, but only Mr. Fishback's forecasting spreadsheets and not the underlying data transmissions have been produced.

This outstanding material is highly relevant and responsive to the Court's orders. It goes directly to the valuation issues that are critical to the damages aspects of this case, particularly in light of Professor Magee ███████████ sales projection. Nonetheless, it is too late to take additional discovery at this point given that trial is less than a month away.[3]

Therefore, Defendants request that Quintel be precluded from making use of the withheld material itself. In particular, Quintel's witnesses should not be permitted to make reference to

---

[3] Although beyond the scope of this motion, Quintel's violations of this Court's Orders with respect to financial discovery are sanctionable under the Federal Rules, federal statutory law, and the Court's inherent authority. *See* Fed. R. Civ. P. 11; 28 U.S.C. § 1927 (permitting the imposition of sanctions against an attorney who "so multiplies the proceedings in any case unreasonably and vexatiously"); *Blanco River, LLC v. Green*, 457 Fed. App'x 431, 438 (5th Cir. 2012) (referring to a federal court's "inherent authority" to impose sanctions upon a finding of bad faith).

any valuation or forecasting document that has not been produced during the course of this litigation. It would be fundamentally unfair to allow Quintel to make use of materials – even by reference – that Defendants have had no opportunity to review or use for their own purposes. Fed. R. Civ. P. 37(c)(1); *Barrett v. Atlantic Richfield Co.*, 95 F.3d 375, 381-82 (5th Cir. 1996) (district court did not abuse its discretion in striking expert testimony as sanction for "repeated dilatory behavior even in the face of explicit warnings"); *Tobias v. Davidson Plywood*, 241 F.R.D. 590, 593-94 (E.D. Tex. 2007) (excluding workers' compensation policy, effectively striking affirmative defense, as sanction for the failure to timely produce the policy and for defendant's misrepresentations regarding the existence of the policy); *Batson v. Neal Spelce Assoc., Inc.*, 112 F.R.D. 632, 638 (W.D. Tex. 1986) (precluding plaintiff from offering proof of her lost income where plaintiff maintained account ledgers, did not produce them, and presented no credible explanation for the failure). "A party is not allowed to lie in wait behind a log and then ambush the other party with a key piece of evidence after extensive discovery and expenses have been incurred." *Tobias*, 241 F.R.D. at 594.

This is not a hypothetical concern. At his own deposition, when asked about the latest forecast document, Mr. Fishback made reference to alternative, non-produced forecasts for 2019 and 2020, suggesting that they might project larger sales totals. Ex. 7 (Fishback Depo Tr.) at pp. 282:17-283:19 (); *id.* at 284:13-15 (" "); *id.* at p. 287:14-18 (Q. " ."); *id.* at 288:18-23 ("*This model* just shows in SONWav sales.") (emphasis added). Quintel's witnesses should not be able to evade questioning through

- 11 -

reference to documents that Defendants have not seen and that should have been produced. The Court should strike the references to alternative forecasts from Mr. Fishback's deposition answers and preclude Quintel from referencing non-produced forecasts and valuations at trial.

WHEREFORE, PREMISES CONSIDERED, Defendants respectfully request that the Court grant its motion and preclude Quintel from using, or otherwise referring to at trial, financial documents and information that have not been produced in this case. Defendants further request that the Court grant Defendants any additional relief to which it may be entitled.

DATED this 27th day of February, 2018.

Respectfully submitted,

*/s/ Clyde M. Siebman*
**CLYDE MOODY SIEBMAN**
Texas Bar No. 18341600
**ELIZABETH S. FORREST**
Texas Bar No. 24086207
**SIEBMAN, BURG, PHILLIPS & SMITH LLP**
300 North Travis
Sherman, Texas 75090
(903) 870-0070
(903) 870-0066 (fax)
Email: clydemoody@siebman.com
Email: elizabethforrest@siebman.com

**TIMOTHY BICKHAM – Lead Attorney**
**JAMES F. HIBEY**
**MICHAEL E. STOLL**
**STEPTOE & JOHNSON LLP**
1330 Connecticut Avenue, NW
Washington, D.C. 20036
(202) 429-5517
(202) 429-3902 (fax)
Email: tbickham@steptoe.com
Email: jhibey@steptoe.com
Email: mstoll@steptoe.com

**ATTORNEYS FOR DEFENDANTS**

## **CERTIFICATION OF CONFERENCE**

Counsel has complied with the meet and confer requirement in Local Rule CV-7(h). I certify that on February 26-27, 2018, counsel for Defendants had telephonic discussions with Counsel for Plaintiff regarding the relief requested in the motion. Counsel for Plaintiff indicated that the relief requested herein is opposed by Plaintiff. Thus, discussions have conclusively ended in an impasse, leaving an open issue for the Court to resolve.

>                   */s/ Clyde M. Siebman*
>                   Clyde M. Siebman

## **CERTIFICATION OF SERVICE**

The undersigned certifies that on this 27th day of February, 2018, all counsel of record are being served with a copy of this document via email under Local Rule CV-5(a)(3).

*/s/ Clyde M. Siebman*
Clyde M. Siebman

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

This Motion is filed under seal pursuant to Local Rule CV-5(a)(7) and the Protective Order entered in this case on January 11, 2016 (Dkt. #29). The Motion refers to and incorporates documents labeled "Highly Confidential" and "Attorneys' Eyes Only" pursuant to the Protective Order. Doc. No. 29 ¶ 10.

*/s/ Clyde M. Siebman*
Clyde M. Siebman